# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

LISA LEE, et al.,

      Plaintiffs,                    **Case No. 2:07-cv-1230**

                                      **JUDGE GREGORY L. FROST**

      v.                            **Magistrate Judge Norah McCann King**

THE CITY OF COLUMBUS, OHIO, et al.,

      Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiffs' Motion for Preliminary Injunction (Doc. # 7), Defendants' memorandum in opposition[1] (Doc. # 13), and Plaintiffs' reply memorandum (Doc. # 15).  The reasons that follow, this Court finds the motion well taken.

## I. Background

The following facts briefly summarize the evidence submitted to the Court.  Any findings of fact and conclusions of law made herein in connection with the request for injunctive relief are not binding at a trial on the merits.  *See United States v. Edward Rose & Sons*, 384 F.3d 258,

---

[1] The Court notes that Defendant the City of Columbus submitted its over twenty-page brief with an accompanying table of contents and table of authorities in an apparent attempt to satisfy the local civil rules.  See S.D. Ohio Civ. R. 7.2(a)(3) ("In all cases in which memoranda exceed twenty pages, counsel must include a combined table of contents and a succinct, clear and accurate summary, not to exceed five pages, indicating the main sections of the memorandum, the principal arguments and citations to primary authority made in each section, as well as the pages in which each section and any sub-sections may be found.").  For future reference, counsel should place this material at the beginning of its memorandum and not, curiously, at pages thirty-one through thirty-three at the end of the memorandum.  Logic, common sense, and the spirit of the local rule compel providing the roadmap before and not after the substantive briefing.

261 (6th Cir. 2004) (citing *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981)).

Plaintiffs Carrie Best and Cheri Bowman are both currently employed as communication technicians, or police dispatchers, in the radio room of Defendant the City of Columbus Division of Police.[2]  They assert that as employees, they are subject to two allegedly impermissible city policies, Division Directive 3.06 and 3.07, which relate to the procedures for when an employee seeks to take sick leave prior to the start of his or her shift.  Both directives are apparently incorporated into the city's collective bargaining agreements with the unions that represent its civilian and sworn (i.e., police) workers.

Directive 3.06, the first directive involved in this litigation, provides that any employee who has exhausted sufficient accrued leave to cover an absence is considered "absent without leave and [is] subject to discipline and loss of pay."  Directive 3.06 § I(D).  Before taking absence without leave, the directive requires the employee to follow specific procedures. Directive 3.06 § I(E).  Under these procedures, the absent-without-leave employee must "[f]orward an Application for *Vacation Leave of Absence indicating* absence without leave, with a letter of explanation through the chain of command to the Chief of Police.  Failure to gain approval *prior to using absence without leave* may result in discipline."  Directive 3.06 § II(B)(1).  This means that the employee must present his or her supervisor with the application and accompanying explanatory letter.  The directive states that the supervisor must "[s]ign the application and forward it *and the letter of explanation* through the chain of command to the Chief."  Directive 3.06 § II(B)(2).

---

[2]  The Court notes that although Plaintiffs Best and Bowman seek to proceed both individually and as class representatives in this action, they concede that they alone have standing to move for injunctive relief.  (Doc. # 15, at 6 n.2.)

2

After the application and letter are passed to the Chief of Police, the directive provides that the Chief of Police will then "[f]orward approved applications to the Payroll Unit," Directive 3.06 § II(B)(3)(a), or "[r]eturn disapproved applications to the appropriate bureau commander," Directive 3.06 § II(B)(3)(b).  The directive then charges the Payroll Unit with processing the approved application, documenting absence without leave as directed by the employee's deputy chief, and forwarding the application to the appropriate bureau commander. Directive 3.06 § II(B)(4)(a)-(c).  The Bureau Commander in turn forwards the approved application to the timekeeper and causes the employee to be notified of the approval or disapproval of his or her application.  Directive 3.06 § II(B)(5).  Finally, the timekeeper is charged with attaching the employee's application to the timesheet.  Directive 3.06 § II(B)(6).

The second directive involved in this case relates to mandated procedures governing the employee's return to regular duty following sick leave, injury leave, or restricted duty.  Under the provisions of Directive 3.07(H), an employee who is returning to regular duty must under specified circumstances forward a note from his or her attending physician to the Employee Benefits Unit ("EBU").  Directive 3.07 § III(H)(1)(b).  The directive provides that "[t]he physician's note must state the nature of the illness and that [the employee is] capable of returning to **regular duty**" if the employee was off for more than three days of sick leave or was previously notified by a commander to do so.  Directive 3.07 § III(H)(1)(b)(1), (2).  If "[m]ore than two days of sick leave were used due to illness in the immediate family," then "[t]he physician's note must state the nature of the family member's illness and that [the employee was] required to care for the family member."  Directive 3.07 § III(H)(1)(b)(3).  In all instances, the directive tells the employee to "[s]ubmit a copy of the physician's note **to your immediate**

*supervisor*."  Directive 3.07 § III(H)(1)(c).

Upset by the foregoing mandated disclosures of health information to various personnel, the current and former city employees who constitute the plaintiffs initiated the instant action on December 4, 2007.  (Doc. # 2.)  In an amended complaint, they assert class and individual claims under 42 U.S.C. § 1983 alleging First, Fifth, and Fourteenth Amendment violations, as well as individual claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. § 790 *et seq.*, Ohio Rev. Code § 4112.99, Ohio's common law for defamation, and the Declaratory Judgment Act, 28 U.S.C. § 2201.  (Doc. # 21 ¶¶ 27-222.)

On March 27, 2008, Plaintiffs also filed a motion for a preliminary injunction.  (Doc. # 7.)  This Court therefore held an informal preliminary conference pursuant to S.D. Ohio Civ. R. 65.1(a) on that same day.  As a result of discussions held at the conference and by agreement of the parties, the Court set a briefing schedule; the parties had agreed that neither discovery nor an oral hearing were needed in regard to the preliminary injunction motion.  The parties have since completed briefing on the preliminary injunction motion, which is now ripe for disposition.

## II.  Discussion[3]

In their memorandum in support of their motion for a preliminary injunction, Plaintiffs Best and Bowman broadly state that "[t]he very terms of Directives 3.06 and 3.07 constitute violations of the ADA and, along with the mishandling of employee confidential medical

---

[3] In citing to the parties' briefing in this section, the Court uses the page number assigned by the electronic filing system (*e.g.*, "Page 8 of 32").  Therefore, because the system counts a document as a whole beginning with the first page filed, even if that page is a cover sheet, what the parties numbered as the third substantive page of the original copy of a brief may be referenced here as the eighth page of the electronically filed version of the brief.

information, should be enjoined from further application, enforcement and/or violation by the Division." (Doc. # 7, at 37.)  They indicate that they "seek in this Motion injunctive relief from enforcement of Directive Numbers 3.06 and 3.07 by the City of Columbus Division of Police [the 'Division'] and injunctive relief prohibiting the Division from enforcement [*sic*] of its 'Sick Leave Abuse' policy." (Doc. # 7, at 7.)  Without explanation, Best and Bowman then surprisingly narrow the injunctive relief they seek in their reply memorandum, stating, "Make no mistake.  This Motion seeks one thing and one thing only – that this Court enjoin the City, pending the determination of the merits, from enforcing a single provision of Division Directive 3.07 – Section 3.07 § III(H)(1)(c)." (Doc. # 15, at 1.)  Left with only the narrow request for relief as the last word on the matter, the Court assumes that Best and Bowman have some strategic reason for limiting the scope of their motion that might elude the Court, such as an evasion of (if not concession to) some portion of the memorandum in opposition.  It may, for example, be in response to the city's argument that Best and Bowman have not produced evidence of how medical information is maintained in regard to their attack on Division Directive 3.06.[4]  This Court therefore will credit Best and Bowman as knowing what they are doing and proceed to address the as-limited motion.

 The Sixth Circuit Court of Appeals has explained the inquiry involved in addressing such

---

[4] The Court would be inclined to regard the narrowing reply memorandum language as an unintended error–especially given that the brief inexplicably later states that "the Division Directives . . . are unlawful and their implementation should be stopped by the issuance of a preliminary injunction" (Doc. # 15, at 15)–except for the unmistakable clarity of the narrowing language and its accompanying admonition by Best and Bowman to "[m]ake no mistake" about the scope of the relief they seek (Doc. # 15, at 1).  Because it is so unlikely that it would be almost impossible for the moving plaintiffs to make such an egregious mistake as to what relief they seek, the Court must accept the elective limitation, even if the Court admittedly does not necessarily understand it.

a motion for a preliminary injunction:

> "When ruling on a motion for [injunctive relief], a district court must consider and balance four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction."

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004) (quoting *Blue Cross & Blue Shield Mut. of Ohio v. Columbia/HCA Healthcare Corp.,* 110 F.3d 318, 322 (6th Cir.1997) (citations omitted)).  *See also Edward Rose & Sons*, 384 F.3d at 261 (quoting *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994)).  That court has also explained that a district court should not consider the foregoing factors as prerequisites to be met; rather, these factors are to be balanced in a weighing of the equities involved.  *Edward Rose & Sons*, 384 F.3d at 261.  The moving party must demonstrate a right to injunctive relief by clear and convincing evidence.  *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 969 (6th Cir. 2002); *Honeywell, Inc. v. Brewer-Garrett Co.*, 145 F.3d 1331, 1998 WL 152951, at *3 (6th Cir. 2002) (unpublished table decision).  Guided by this standard, the Court shall proceed to address each factor in turn, as well as the parties' arguments as to whether the movants can seek an injunction and, if they can, the scope of that injunction.

A threshold issue before the Court is whether the City of Columbus is correct in asserting that Best and Bowman lack standing to pursue preliminary injunctive relief.  The city argues that neither has demonstrated an actual or imminent threat of harm.  Absent an injury in fact, the city posits, the motion targets only hypothetical harm.  Best and Bowman disagree.  They contend that because they could need to take leave for medical reasons at any time, they are suffering an actual or imminent injury in fact.

6

This Court concludes that Best and Bowman have sufficient standing to pursue the injunctive relief sought.  Unlike those cases in which the possible injury is too speculative to be deemed actual or imminent, *see, e.g., Los Angeles v. Lyons*, 461 U.S. 95, 101-06  (1983), the two plaintiffs seeking injunctive relief here can point to Directives 3.06 and 3.07, which are official statements of policy directing all supervisors and employees to act in a proscribed manner.  Best and Bowman have therefore "credibly allege[d] that [they] face[] a realistic threat from the future application of the City's policy."  *Id.* at 106 n.7.

The City of Columbus next argues, however, that Best and Bowman cannot obtain Division-wide preliminary injunctive relief because no class has been certified.  To support this argument, the city direct this Court to the non-binding *McKenzie v. City of Chicago*, 118 F.3d 552 (7th Cir. 1997).  In *McKenzie*, the Seventh Circuit addressed a scenario in which individual named plaintiffs sought to enjoin a city's program for demolishing dangerous or abandoned buildings.  The district court had granted a preliminary injunction stopping the entire program. *Id.* at 554-55.  The court of appeals reversed, explaining that "[t]he fundamental problem with this injunction is that plaintiffs lack standing to seek–and the district court therefore lacks authority to grant–relief that benefits third parties."  *Id.* at 555.  Thus, the City of Columbus argues, the Court similarly cannot grant Division-wide injunctive relief here based on this rationale.

Best and Bowman seek to distinguish *McKenzie* based on its following statement: " '[N]either declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs.' " *Id.* (quoting *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931 (1975)).  The moving plaintiffs assert that because

the instant case does not involve either a statute or an ordinance, the rationale of *McKenzie* is inapplicable here.

What Best and Bowman overlook, however, is the deeper–and broader–motivating animus underlying the quoted statement from *McKenzie*. That court of appeals explained that "[b]ecause a class has not been certified, the only interests at stake are those of the named plaintiffs." *Id.* Therefore, the pivotal issue is whether it is "possible to award effective relief to the plaintiffs without altering the rights of third parties," not whether a statute or ordinance is involved. *Id.*

Examining this issue, some courts have granted injunctive relief that benefits non-parties even in the absence of class certification. *See, e.g., Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501-02 (9th Cir. 1996) ("While injunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification, 'an injunction is not necessarily made overbroad by extending benefit or protection to persons other than prevailing parties in the lawsuit-even if it is not a class action- *if such breadth is necessary to give prevailing parties the relief to which they are entitled*.' " (first citation omitted; quoting *Bresgal v. Brock*, 843 F.2d 1163, 1170-71 (9th Cir. 1987))). And this litigation does not appear to present a case where the directives at issue can or should be applied differently to current employees whose particularized circumstances are not in the record. *See Hurley v. Ward*, 584 F.2d 609, 611-12 (2d Cir. 1978) (declining in absence of class certification to issue a broad preliminary injunction covering more than named plaintiff where the record failed to address potentially critical differences among those whom a broad injunction would cover).

Having recognized the possibility of a Division-wide injunction under the appropriate

8

circumstances, the Court concludes that such possible relief is not appropriate here.  The posture of today's decision is a preliminary injunction order and not a final decision on the merits resulting in permanent injunctive relief as in *Easyriders*.  That latter case's rationale is not applicable here to permit Best and Bowman to pursue Division-wide relief; unlike in *Easyriders*, extending the benefit of any preliminary injunction so broadly is not necessary to afford the two moving plaintiffs the relief to which they are entitled.  *See also Bresgal*, 843 F.2d at 1170-71 (upholding broad injunction in order to grant named plaintiffs complete relief); *Zepeda v. U.S. INS*, 753 F.2d 719, 727-28 & n.1 (9th Cir.1985) (concluding that a preliminary injunction that benefitted non-parties must be limited only to the individual plaintiffs in the absence of class certification).  It is possible to grant effective relief the individual plaintiffs, Best and Bowman, without inevitably covering those within the possible class.

In other words, it is not necessary to demand a change in how non-parties are treated in order to change how the named moving parties are treated.  The breadth of any possible injunction can be reasonably limited, despite the conclusory and essentially undeveloped assertion by Best and Bowman that "[c]learly here no relief can be granted to the Plaintiffs with regard to Directives 3.06 and 3.07 without affecting third-parties, *i.e.*, everyone subject to the Directives."  (Doc. # 15, at 7.)  Moreover, the argument by Best and Bowman that they doubt any other employees would object to not being required to disclose medical information to their supervisors is not relevant; the scope of an injunction does not logically turn on whether non-parties will object, but on whether a broader injunction is *necessary* to afford named parties effective relief.

Having thus concluded that standing exists and that only an appropriately narrow or

limited injunction can issue, the Court now turns to the preliminary injunction factors.  The first factor this Court must weigh in determining whether preliminary injunctive relief is warranted is whether Plaintiffs have established a substantial likelihood or probability of success on the merits.  Having considered the written submissions in this case and the exhibits entered into the record, the Court concludes that Best and Bowman have demonstrated a substantial likelihood of prevailing on the merits.

The moving plaintiffs' first argument is that Division Directive 3.07 § III(H)(1)(c) violates the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 790 *et seq.*, to which Best and Bowman posit the substantive standards of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111 *et seq.*, apply for determining whether there has been a violation of the former act.  The parties also argue over whether a supervisor can receive the medical information at issue pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.

The ADA provides in relevant part that a covered employer "shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity," 42 U.S.C. 12112(d)(4)(A), but the employer "may make inquiries into the ability of an employee to perform job-related functions," 42 U.S.C. § 12112(d)(4)(B).  Additionally, § 12112(d)(4)(C) provides the information that can be obtained under the preceding provision regarding the medical condition or history of any employee is subject to the following requirements: (1) the "information obtained regarding the medical condition or history of the applicant [must be] collected and maintained on separate forms and in

10

separate medical files and is treated as a confidential medical record," 42 U.S.C. §

12112(d)(3)(B), and (2) the results of any examination must be used only in accordance with the

ADA, 42 U.S.C. § 12112(d)(3)(C).

There is one potentially applicable exception to the first requirement set forth above,

which is that "supervisors and managers may be informed regarding necessary restrictions on the

work or duties of the employee and necessary accommodations."  42 U.S.C. § 12112(d)(3)(B)(i).

Relying on this provision, the City of Columbus argues that "Plaintiffs cannot reasonably dispute

the City is entitled to require its employees to substantiate their use of sick leave in certain

situations by producing a doctor's note or slip upon returning to work."  (Doc. # 13, at 10.)  But

no party disputes this principle.  What Best and Bowman assert is that requiring an employee to

give the note or slip to his or her supervisor is what is impermissible, not having to produce the

note or slip to human resources.[5]

The City of Columbus asserts that the Rehabilitation Act does not incorporate those

portions of the ADA concerned with medical information, but only addresses medical record

confidentiality in the context of preemployment examinations.  Even assuming such

incorporation, however, the city also argues that because a supervisor is an agent of the

employer, he or she is a "covered entity" or "employer" within the meaning of the ADA (and

therefore the Rehabilitation Act).

In regard to the latter argument, this Court agrees with Best and Bowman.  The ADA and

its implementing rules explicitly provide for disclosure of such medical information to a

---

[5] Of course, not every employer will have human resources personnel.  The City of
Columbus does, however, which creates a distinction and a confidentiality barrier between these
personnel, whose jobs consist of handling medical information, and supervisors.

supervisor only in select circumstances, and by so expressly limiting disclosure, the statutory

scheme implicitly forecloses disclosure to supervisors for purposes that fall outside that narrow

and specific purposes. If the ADA were intended to allow full disclosure to a supervisor in all

instances, then there would be no need for the specific disclosure to a supervisor language. *See,*

*e.g.*, 42 U.S.C. § 12112(d)(3)(B)(i). The city's view would mean that the explicit exception for

supervisors was mere surplusage, but there is no basis to reach the conclusion that Congress did

not intend for the specific language concerning supervisors to constitute a substantive provision.

The key question, then, is whether the Rehabilitation Act incorporates the ADA's

concerns regarding the confidentiality of employee medical information and records. As the

parties note, the Sixth Circuit has recognized that provisions of the ADA inform the

Rehabilitation Act "because the purpose, scope, and governing standards of the 'acts are largely

the same, cases construing one statute are instructive in construing the other.' " *McPherson v.*

*Michigan High School Athletic Ass'n, Inc.*, 119 F.3d 453, 460 (6th Cir. 1997) (quoting *Doe v.*

*Woodford County Bd. of Educ.*, 213 F.3d 921, 925 (6th Cir. 2000)). The City of Columbus

argues, however, that such incorporation involves the substantive discrimination provisions of

the statutes and not the confidential medical information provisions.

What this argument overlooks is that the limited disclosure protection furthers the anti-

discrimination thrust of both statutory schemes. The restriction on broad disclosure is a

protection against undue dissemination of sensitive information that could lead to

discrimination.[6] Thus, the confidentiality provision is part and parcel of the statutory anti-

---

[6] The City of Columbus argues that the Sixth Circuit has held that the ADA does not
include the right to privacy that Best and Bowman assert. The appellate court has declined to
recognize a general statutory right of privacy in regard to the confidential handling of employee

12

discrimination package. Reaching an opposite conclusion would call into question why such a disclosure provision even exists in an anti-discrimination statutory scheme.

Given the applicability of the confidentiality protection, the issue becomes whether the City of Columbus has explained away the directive targeted by the as-limited preliminary injunction motion. But the city has presented no evidence that disclosure to a supervisor of the underlying medical diagnosis of an employee is necessary as a general, across-the-board practice. The only disclosure to a supervisor that is necessary or permissible is that information that targets necessary restrictions or accommodations for an employee. *See Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 94 (2d Cir. 2003) (upholding decision that an employer's overly broad requirement of medical information under its return-to-work sick leave policy violated the ADA because "a general diagnosis is not a narrowly tailored inquiry into the employee's ability to carry out her job-related functions"). Unless there are necessary accommodations or restrictions, a supervisor need not know that an employee has HIV, had an abortion, or has venereal disease, to cite but a few of numerous pieces of highly personal information that may be irrelevant to the performance of employment duties but that could in some instances result in workplace embarrassment or outright discrimination.

---

medical records. *See Yoder v. Ingersoll-Rand Co.*, 172 F.3d 51, 1998 WL 939885 (6th Cir. 1998) (unpublished table decision) (citing with approval aspects of *Yoder v. Ingersoll-Rand Co.*, 31 F. Supp. 2d 565 (D. Ohio 1997)). But neither *Yoder* decision addressed mandated disclosures to a supervisor, a class of worker to which the ADA has specifically limited disclosure for accommodation and restriction purposes. *See* 42 U.S.C. § 12112(d)(3)(B)(i). This is important because today's decision implicates disclosure of inquiries purportedly made to ascertain an employee's ability to return to work, *i.e.*, to perform job-related functions. This involves the application of 42 U.S.C. § 12112(d)(4)(C) to § 12112(d)(4)(B), which pulls in the limitations set forth in § 12112(d)(3)(B)(i). Thus, *Yoder*'s holding that § 12112(d)(4)(C) does not apply to § 12112(d)(4)(A) is of no preclusive effect here. *Yoder*, 1998 WL 939885, at *2 ("[I]t is clear that the confidentiality requirement of subparagraph (C) does not cover subparagraph (A).").

This same rationale similarly undercuts the city's aggressively intrusive policy of mandating disclosure to a supervisor of the medical information of family members, a curious practice that is even less related to any permissible justification.  Supervisors, who are not fungible in this case with human resource personnel, are on a need-to-know basis, and the directive at issue improperly provides supervisors with otherwise confidential medical information even when they have no reason to possess such knowledge.  This Court concludes that Best and Bowman have presented a compelling case that they are likely to prevail over the city's defense of business necessity.

In addition to the statutory component of this case, some courts have regarded similar conduct as that at issue here as involving the unwarranted invasion of a constitutionally protected right to privacy.  *See O'Connor v. Pierson*, 426 F.3d 187, 201 (2d Cir. 2005).  Thus, if such constitutional protection is valid and applicable here, Best and Bowman may be entitled to preliminary injunctive relief even if the Court is incorrect that the foregoing ADA provisions carry over into the Rehabilitation Act.  The Court will now address these distinct constitutional claims.

The City of Columbus asserts that the Sixth Circuit refuses to recognize a constitutional right to confidentiality of information in this context.  The cases to which the city directs this Court present a different context than today's right to privacy in the employment context.  *See, e.g., J. P. v. DeSanti*, 653 F.2d 1080, 1088 (6th Cir. 1981) (addressing "constitutional right to nondisclosure of juvenile court records").  But while declining to recognize a general constitutional right to nondisclosure in those specific circumstances, the Sixth Circuit noted in *DeSanti* the larger issue of whether the right to privacy extends to other situations, which could

14

include the context surrounding the facts *sub judice*. *See id*. at 1089 ("Absent a clear indication from the Supreme Court we will not construe isolated statements in *Whalen* and *Nixon* more broadly than their context allows to recognize a general constitutional right to have disclosure of private information measured against the need for disclosure.") & 1090 n.5 ("We are not alone in our inability to limit or define the right of privacy."). The appellate court ultimately concluded that "the Constitution does not encompass a general right to nondisclosure of private information." *Id.* at 1090. *See also Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 574 (6th Cir. 2002) ("Since *DeSanti,* this Court has not strayed from its holding, and continues to evaluate privacy claims based on whether the interest sought to be protected is a fundamental interest or an interest implicit in the concept of ordered liberty.").

The City of Columbus posits that the foregoing Sixth Circuit precedent, which imposes a "fundamental liberty interest" requirement not shared by other some other circuits, defeats the argument by Best and Bowman that they are likely to prevail on the merits of their due process claims. This precedent does not necessarily defeat, however, the moving plaintiff's assertion of a constitutional right. It remains open whether Best and Bowman can prove that their interest in nondisclosure is of a constitutional dimension. *See Overstreet*, 305 F.3d at 575 (explaining that " 'fundamental' interests include the privacy interest one has in matters relating to marriage, procreation, contraception, family relationships, child rearing, and education"). They may be able to demonstrate that the mandated disclosure does or at least can implicate concerns similar to those designated as protected in *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (recognizing constitutional right to informational privacy protecting the release of information of a sexual, personal, and humiliating nature). The city's across-the-board mandated disclosure to

15

supervisors may indeed implicate these concerns.

Best and Bowman in fact direct this Court to Circuit precedent in which the appellate court has recognized medical information as constitutionally protected under the informational right to privacy.  *See Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998).  In *Bloch*, the Sixth Circuit addressed a situation in which a crime victim and her husband sued a sheriff for violating their right to privacy by publicly revealing confidential and highly personal details of the victim's rape.  *Id.* at 676.  In assessing whether a constitutional violation had occurred, the court of appeals explained that "[o]ur decision in *DeSanti* . . . leaves room for finding that the dissemination of private information may implicate a constitutional right to privacy."  *Id.* at 684. The court then went on to explain:

> Crimes of sexual violence necessarily include a nonconsensual sexual act. The crime of rape, for example, cannot be separated from the sexual act itself. For this reason, a historic social stigma has attached to victims of sexual violence. In particular, a tradition of "blaming the victim" of sexual violence sets these victims apart from those of other violent crimes.  Releasing the intimate details of rape will therefore not only dissect a particularly painful sexual experience, but often will subject a victim to criticism and scrutiny concerning her sexuality and personal choices regarding sex.  This interest in protecting the victims of sexual violence from humiliation, among other injuries, has prompted states to pass rape shield laws and to advocate against the publication of rape victims' names.  *See* Panel Discussion, *Men, Women and Rape,* 63 Fordham L.Rev. 125 (1994) (discussing "Why Rape is Different" and outlining some of the legal reforms in place and those reforms needed to be implemented); Morrison Torrey, *When Will We Be Believed? Rape Myths and the Idea of a Fair Trial in Rape Prosecutions,* 24 U.C. Davis L.Rev. 1013 (1991) (discussing rape prosecution reforms, including rape shield laws).
>
> Our sexuality and choices about sex, in turn, are interests of an intimate nature which define significant portions of our personhood.  Publically revealing information regarding these interests exposes an aspect of our lives that we regard as highly personal and private.  Indeed, for many of these reasons, a number of our sister circuits have concluded that information regarding private sexual matters warrants constitutional protection against public dissemination.  *See, e.g., Eastwood v. Dep't of Corrections,* 846 F.2d 627, 631 (10th Cir. 1988) ("This

16

constitutionally protected right [to privacy] is implicated when an individual is forced to disclose information regarding personal sexual matters."); *Mangels v. Pena,* 789 F.2d 836, 839 (10th Cir. 1986) ("Information is constitutionally protected when a legitimate expectation exists that it will remain confidential while in the state's possession . . . . The legitimacy of an individual's expectations depends, at least in part, upon the intimate or otherwise personal nature of the material which the state possesses." (internal citations omitted)); *Thorne v. City of El Segundo,* 726 F.2d 459, 468 (9th Cir. 1983) ("The interest [the plaintiff] raises in the privacy of her sexual activities are within the zone protected by the constitution. This conclusion follows from the cases holding that such basic matters as contraception, abortion, marriage, and family life are protected by the constitution from unwarranted government intrusion."); *United States v. Westinghouse Electric Corp.,* 638 F.2d 570, 577 (3d Cir.1980) ("Information about one's body and state of health is a matter which the individual is ordinarily entitled to retain within the private enclave where he may lead a private life." (internal quotation marks and citations omitted)); *see also* Peter B. Edelman, *Free Press v. Privacy: Haunted by the Ghost of Justice Black,* 68 Tex. L.Rev. 1195, 1208 n.69 (1990) (quoting Professor Anita Allen as stating: "Rape is an act of physical violence which by its very nature is an affront to privacy. It represents forcible exposure of aspects of oneself that are protected by conventions of limited access. These conventions are normally adhered to out of regard for well-being and respect for personal privacy.").

*Id.* at 685. Thus, the appellate court concluded, the nondisclosure at issue in *Bloch* fell within the narrow right of privacy this Circuit has recognized.

Two conclusions reasonably arise from the rationale employed in the line of cases leading to *Bloch.* First, although declining to recognize a general constitutional right to nondisclosure of medical information, the Sixth Circuit has expressly recognized a cognizable right to privacy when medical information regarding select private matters is involved. *Bloch* did not turn simply on the fact that rape was involved, a public interest, but on the fact that the sexual nature of the crime pulled in constitutionally protected information. *Id.* at 685-86 ("The fact that the crime of rape occurred in this case implicates both a private and a public interest, but the details of the rape primarily implicate a private interest until such time as the public interest in prosecution predominates."). Second, information that falls within this right against

17

nondisclosure therefore includes at least private sexual matters warranting constitutional protection against public dissemination. It implicates a fundamental right. *Id.* at 686 ("Having concluded that the right to prevent the dissemination of confidential and intimate details of a rape implicates a fundamental right, we must now balance the Blochs' privacy interest against the state's interest in releasing the details.").

Thus, applying the *Bloch* rationale here, the Court is left with a directive that does not accommodate the constitutional rights of Best and Bowman. Division Directive 3.07 § III(H)(1)(c) does not call for specific or narrowed disclosure to a supervisor; rather, it mandates disclosure to a supervisor of medical information in all cases, regardless of the content or nature of that information. Certainly, the privacy right recognized in *Bloch* is not absolute. *Bloch* in fact cited with approval *In re Zuniga*, 714 F.2d 632 (6th Cir. 1983), in which the court of appeals explained that disclosure of personal medical information only to the minimal extent necessary to promote a proper interest is permitted. But Division Directive 3.07 § III(H)(1)(c) is an across-the-board mandate that does not consider minimal disclosure (*i.e.*, disclosure of information to human resources and, only when and as necessary, to a supervisor for accommodation or restriction purposes). And the city's purported interest supporting the disclosure to a supervisor–staffing and ascertaining return-to-work fitness–fails to cure the unnecessarily intrusive constitutional violation. There is no indication that disclosure to a supervisor satisfies these needs or is otherwise necessary. Determining staffing or the ability to dispatch police do not involve ascertaining whether an employee has genital warts, to cite one obvious if unseemly hypothetical example. Consequently, Division Directive 3.07 § III(H)(1)(c) is an overly broad provision that sweeps into its unlimited scope both disclosures that the Sixth Circuit may deem

18

permissible and disclosures that the Sixth Circuit would condemn.  Best and Bowman are therefore likely to succeed on their constitutional challenge because the city's mandated disclosure encompasses unwarranted intrusion into all areas of an employee's personal medical information without a sufficiently exculpatory animus.

The City of Columbus' next argument that collective bargaining agreements provide a refuge for its conduct fails to carry the day.  It is debatable whether these agreements are even relevant to today's inquiry given that the policies at issue are in the directives, not the agreements.  The provisions of the collective bargaining agreements that have been submitted to this Court allow for Division Directives, but they do not contain the substantive content of Division Directive 3.07 § III(H)(1)(c).  (Docs. # 13-7, 13-8.)  But even assuming *arguendo* that there is some relevance, this is not an instance in which the statutory or constitutional privacy rights of Best and Bowman have been bargained away.  *See O'Hara v. Mt. Vernon Bd. of Educ.*, 16 F. Supp. 2d 868, 879 (S.D. Ohio 1998).

Given the foregoing, the Court must conclude that Best and Bowman are likely to succeed on their challenge to Division Directive 3.07 § III(H)(1)(c)–in addition to the other provisions and practices that the moving plaintiffs have abandoned in their reply memorandum–on at least some if not all of their claims.  This means that the first factor in the preliminary injunction inquiry weighs in favor of issuing the injunction.

The second factor the Court must consider is whether Plaintiffs have demonstrated a risk of  irreparable harm.  It is axiomatic that, once made, impermissible disclosure of confidential medical information to inappropriate personnel cannot be undone.  Additionally, "when reviewing a motion for a preliminary injunction, if it is found that a constitutional right is being

19

threatened or impaired, a finding of irreparable injury is mandated." *American Civil Liberties Union of Kentucky v. McCreary County, Kentucky*, 354 F.3d 438, 445 (6th Cir. 2003) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  *See also McDonell v. Hunter*, 746 F.2d 785, 787 (8th Cir. 1984) (finding that a privacy violation constitutes an irreparable harm under preliminary injunction analysis).  The second factor therefore also favors issuance of the preliminary injunction.

It is well settled that "a district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are determinative of the issue." *Nat'l Hockey League Players' Assn. V. Plymouth Whalers Hockey Club*, 325 F.3d 712, 717 (6th Cir. 2003).  Because the first two factors weigh heavily in favor of injunctive relief, the Court need not discuss the remaining factors in much detail.  The Court notes, however, that neither remaining factor disfavors issuance of the injunction.

The third factor that the Court must consider is whether issuance of the requested injunction will cause substantial harm.  The City of Columbus' parade of horribles argument–that the policy at issue is necessary for proper staffing and the protection of the public, and that an injunction would harm both goals–is not persuasive because there is no evidence to support such strained causal allegations.  The notably limited scope of today's injunction, which prohibits enforcement of one directive toward just Best and Bowman, affects only two single employees.  Neither the city nor the public will be harmed by such a narrow injunction.

The fourth and final factor to consider is whether issuance of an injunction is in the public interest.  The Sixth Circuit has explained that " 'it is always in the public interest to prevent violation of a party's constitutional rights.' "  *Deja Vu of Nashville, Inc. v. Metro. Gov't*

*of Nashville and Davidson County, Tennessee*, 274 F.3d 377, 400 (6th Cir. 2001) (quoting *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994)).  Given the uncertainty surrounding whether a constitutional right as well as statutory protection is involved here, the Court recognizes that even if *Deja Vu* does not apply, adherence to federal law is also in the public interest.

The preliminary injunction factors therefore weigh in favor of issuing preliminary injunctive relief here.  Having reached this conclusion, the Court now turns to the issue of whether to require a security bond.

Federal Rule of Civil Procedure 65(c) provides that "[n]o . . . preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined."  Although this language would appear to mandate a bond, the Sixth Circuit has explained that whether to require a bond is within the discretion of the Court.  *See Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995).  It is well settled that in light Rule 65(c) and "the inherent equitable power [of the Court] to condition an injunction on certain undertakings, including the posting of a security bond by the party seeking the injunction," *Division No. 1, Detroit, Bhd. of Locomotive Eng'rs v. Consol. Rail Corp.*, 844 F.2d 1218, 1225 (6th Cir. 1988) (citation omitted), the Court can require the posting of a security bond even if no party requests it.

Neither the moving plaintiffs nor the City of Columbus address the issue of a bond in their briefing.  For its part, the Court cannot discern how granting the requested preliminary injunctive relief poses a risk of economic harm to the city.  Thus, having considered the

equitable circumstances of this case, the Court in its discretion concludes that no posting of a bond is warranted.

### III.  Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for a preliminary injunction.  (Doc. # 7.)  The Court therefore **ORDERS** that Defendant the City of Columbus is hereby **ENJOINED** and shall refrain from enforcing Division Directive 3.07 § III(H)(1)(c) against Best and Bowman until further order of this Court.  Pursuant to Fed. R. Civ. P. 65(c), the Court in its discretion does not require Plaintiffs to post a bond with the Clerk of Courts of the United States District Court for the Southern District of Ohio.

**IT IS SO ORDERED**.

_____/s/ Gregory L. Frost_____
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE