IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LISA LEE,                          :          Case No. 2:07 cv 1230
Individually and as class
Representatives on behalf
Of those similarly situated, et. al

    Plaintiffs,                    :          Judge Frost

-vs-                               :          Magistrate Judge King

THE CITY OF COLUMBUS, OHIO, *et al.,* :

    Defendants.                    :
_____

**THIRD AMENDED AND SUPPLEMENTAL COMPLAINT FOR CLASS AND
INDIVIDUAL RELIEF AND COMPLAINT FOR DECLARATORY JUDGMENT**
_____

## I.    <u>INTRODUCTION AND JURISDICTION</u>

1.    At all times pertinent hereto, Plaintiffs were employees of the Defendant The City of Columbus, Ohio [hereafter "The City"], assigned to the Division of Police radio room and Plaintiffs Bowman and Best are still so employed and assigned;

2.    At all times pertinent hereto, the individual Defendants were in the chain of command over Plaintiffs. Their actions and omissions were willful and wanton, though authorized by, and within the scope and course of their employment with The City;

3.    This Complaint seeks relief for violations of federal law, specifically, the Rehabilitation Act of 1973, as amended, 29 U.S.C. §790, *et. seq.*; the Family & Medical Leave Act, 29 U.S.C. 2601, *et. seq.*; the First, Fifth and Fourteenth Amendments to the Constitution of the United States through 42 U.S.C. §1983; and Ohio law;

4.      Jurisdiction over the federal law violation Claims is proper under 28 U.S.C. §1331. Pendent jurisdiction of the state law claims is proper under 28 U.S.C. §1367;

5.      Venue is proper in this Court under 28 U.S.C. §1391;

## II.      CLASS/INDIVIDUAL ALLEGATIONS UNDER THE REHABILITATION ACT

6.      Plaintiffs reallege Paragraphs 1 through 5 as if fully set forth herein;

7.      Before 2004, Defendants, excepting Defendant Valentino, promulgated and put into execution Division Directive 3.07(G)2.b.3 ["The Directive"];

8.      The Directive provides, in part, that upon return from absence due to illness or injury, a division employee must obtain from his or her health care provider a document, signed by the provider, which must include a description of the nature of the medical condition which caused the employee to be absent;

9.      Defendants, from at least 2004 to present, implement The Directive by requiring the employee to deliver the document to the direct supervisor in the chain of command;

10.      Defendants, from at least 2004 to the present, enforce compliance with The Directive by refusing to return any employee to work whose document does not provide the information, by charging the employee with unexcused absences and by disciplining the employee by suspension and termination;

11.      To Plaintiffs' knowledge and belief, The Directive, its implementation and enforcement, apply to all members of the Division of Police, numbering hundreds of employees;

12.      Section 794(a) of the Rehabilitation Act ["The Act"], provides, in part, that no employee of an employer receiving federal funds shall be subject to discrimination on the basis of disability;

13.      The City is an entity covered by The Act;

14.     The Act further provides that the standards to be applied by the Courts in construing the Act shall be the substantive standards of Title I ["employment"] of the Americans with Disabilities Act, 29 U.S.C. §12001, *et. seq.* ["The ADA"];

15.     Subsection (d)(1) of §12112 of the ADA prohibits covered employers from discrimination in certain medical inquiries, which, except in specific circumstances set out by the ADA, will tend to elicit information about a possible disability;

16.     Subsection 12112(d)(4) provides, in part, that any medical information collected by the employer from a medical inquiry shall be segregated and treated as a confidential medical record;

17.     Supervisory personnel in the employee's chain of command are not authorized by the statute to have access to confidential medical information;

18.     The Directive, and it implementation, violates the prohibitions of the Act in that the demand for a description of the nature of the medical condition of the returning employee constitutes a prohibited medical inquiry;

19.     Further, the requirement that the medical information be disclosed to those within the chain of command is a further violation of the Act;

20.     All the individual Plaintiffs herein were subject to The Directive, and, upon returning from absence, repeatedly required to disclose confidential medical information to unauthorized personnel by the Defendants' implementation and enforcement of the Directive;

21.     Plaintiffs assert the existence of a class of employees composed of all Division employees who, from 2004 to present, who have, like each of them, been required to disclose confidential medical information pursuant to the Defendants' implementation and enforcement of the Directive;

22.     Plaintiffs assert that the class is so numerous that joinder of all members is impractical;

23.     There are questions of law and fact common to all members of the class;

24.     The claims of Plaintiffs are typical of the class claims;

25.     Plaintiffs will fairly and adequately protect the interests of the class;

26.     A class action should be maintained in this case because (1) separate actions by individual members of the class would create the risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants, and (2) the Defendants have acted on grounds generally applicable to each member of the class, therefore making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole;

**IIII.    CLASS/INDIVIDUAL ALLEGATIONS: 42 U.S.C. §1983: FIRST, FIFTH, AND FOURTEENTH AMENDMENT VIOLATIONS**

27.     Plaintiffs reallege Paragraphs 1 through 26 as if fully set forth herein;

28.     Information concerning a citizen's medical condition is among the most intimate, sensitive and potentially harmful of any type of personally-identifiable information;

29.     A citizen's medical records and medical condition is protected by the privacy provisions of the First and Fifth Amendments to the Constitution of the United States, and violation of that protected status by an instrumentality of government is actionable under 42 U.S.C. §1983;

30.     The implementation and enforcement of the Directive by these Defendants, excepting Defendant Valentino, was and is a violation of the rights of Plaintiffs and all employees of the Division subjected to it;

31.     Plaintiffs assert that there exists a class of employees of the Division similarly situated composed of all Division employees who, from 2004 to present, have, like each of them, been required to disclose confidential medical information pursuant to the Defendants' implementation and enforcement of the Directive;

32.     Plaintiffs assert that the class is so numerous that joinder of all members is impractical;

33.     There are questions of law and fact common to all members of the class;

34.     The claims of Plaintiffs are typical of the class claims;

35.     Plaintiffs will fairly and adequately protect the interests of the class;

36.     A class action should be maintained in this case because (1) separate actions by individual members of the class would create the risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants, and (2) the Defendant have acted on grounds generally applicable to each member of the class, therefore making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole;

## IV.    INDIVIDUAL CLAIMS: LISA LEE

### A.    FIRST INDIVIDUAL CLAIM: FMLA VIOLATIONS

37.     Plaintiffs reallege Paragraphs 1 through 36 as if fully set forth herein;

38.     This Claim is brought pursuant to 29 U.S.C. §2617(1); to vindicate rights guaranteed Plaintiff under §2615(a) and §2615(b) of the United States Code;

39.     At all times pertinent hereto, The City was a qualifying "employer" under §2611(4)(A)(i);

40.     At all times pertinent hereto, Plaintiff was an "eligible employee" as that term is defined under §2611(2)(A);

41.     The claims for relief are brought pursuant to 29 U.S.C. §2617(a)(2)(B);

42.     29 U.S.C. §2313 provides for certification of the health care provider of the employee's need for leave of absence for a serious health condition;

43.     §2613(c) provides the vehicle for the employer's determination of the adequacy and validity of the issuing health care provider's certification, and specifically provides that if validity is doubted, the lawful course for the employer to follow is to obtain a second opinion from a health care provider not regularly employed by the employer;

44.     29 C.F.R. §825.307(a) elaborates on the employer's option, stating that the employer's health care provider may contact the employee's health care provider, "for purposes of clarification and authenticity of the medical certification;"

45.     29 U.S.C. §2613(e) provides that an employer can "require that the eligible employee obtain subsequent recertifications on a reasonable basis;"

46.     29 C.F.R. §825.308(b)(1), which augments §2613(e), provides, in part, that "[I]f the minimum duration of the period of incapacity on a certification furnished by the health care provider is more than 30 days, the employer may not request recertification until that minimum period has passed…." Under the regulation, the employer may only disregard the minimum period of certification if fact-specific changes in the conditions of the leave occur;

47.     Under the statutory and regulatory scheme, certification of a need for intermittent leave for a permanent, chronic condition, in the absence of circumstances set out in §825.308(c), must be granted for the full 12 month period available under 29 U.S.C. §2612(b)(1);

48.     In 2003, Plaintiff was diagnosed with a serious health condition. Her health care provider concluded that her condition was permanent;

49.     Beginning in 2003, Plaintiff applied for, and was approved for, FMLA intermittent leave for this serious health condition;

50.     In or around 2004, Defendants the City, Jackson and Dunlap adopted the policy and practice of requiring employees whose health care providers certified were suffering from long term, chronic serious health conditions requiring intermittent leave to recertify intermittent leave every 30 days without consideration to the prerequisites for requiring recertification set out in 825.308(c);

51.     Beginning in or around 2003, Defendants the City, Jackson and Dunlap adopted a practice and policy of listing individuals such as Plaintiff in a "sick leave abuse" category, and including approved FMLA leaves within that category;

52.     Defendants' policy, in requiring recertification every 30 days, interfered with Plaintiff's rights under the FMLA, and violated §2315(a). Defendants' policy of categorizing Plaintiff as a "sick leave abuser" also interfered with Plaintiff's rights under §2315(a);

53.     Beginning in or around April, 2005, Defendants began reporting performance deficiencies in Plaintiff's work because she was taking FMLA approved leaves;

54.     The actions described above, and others, were taken by Defendants with the purpose of severing Plaintiff's employment because of her serious health condition and need to take FMLA qualifying leave;

55.     On or about May 1, 2006, Plaintiff was constructively discharged by Defendants;

56.     Defendants' termination of Plaintiff was in violation of the FMLA and interfered with her rights under the FMLA under §2615(a);

57. Defendants' termination of Plaintiff was willful and malicious;

58. As a direct and proximate result, Plaintiff has suffered loss of income and incurred medical and other expense, lost benefits, and will incur such additional losses in the future;

**B.     SECOND INDIVIDUAL CLAIM: FMLA INTERFERENCE IN PROSPECTIVE EMPLOYMENT**

59. Plaintiffs reallege Paragraphs 1 through 58 as if fully set forth herein;

60. Following her termination, Plaintiff Lisa Lee sought employment at, among other employers, the Ohio State Highway Patrol;

61. On or around January 12, 2007, Defendants the City, Jackson, Dunlap and Graumlich reported to that agency that Plaintiff left The City's employ not in good standing because of "excessive abuse of sick leave and FMLA";

62. As a direct and proximate result of the report, Plaintiff was denied employment with the Ohio State Highway Patrol;

63. The report was made willfully and maliciously, and was intended to, and did, prevent Plaintiff from obtaining gainful employment;

64. The report both interfered with Plaintiff's rights under the FMLA and was taken in retaliation for Plaintiff having opposed the unlawful practices described above;

65. As a direct and proximate result, Plaintiff has suffered loss of income and incurred medical and other expense, lost benefits, and will incur such additional losses in the future;

**C.     THIRD IDIVIDUAL CLAIM: CONSTITUTIONAL VIOLATION: DUE PROCESS**

66. Plaintiffs reallege Paragraphs 1 through 65 as if fully set forth herein;

67.    The actions taken by the individual named Defendants, described above, were taken under color of law and in conformance with the policy, practice and custom of The City;

68.    This Claim is brought pursuant to 42 U.S.C. §1983 to vindicate rights under the Fifth and Fourteenth Amendments to the Constitution;

69.    While employed by The City, Plaintiff Lisa Lee enjoyed a right under the collective bargaining agreement to have due process in the event the Defendants contemplated adverse employment action against her;

70.    In April, 2006, Defendants intended to discipline Plaintiff for alleged "sick leave abuse" and attendance issues by terminating her employment;

71.    In April, 2006, Defendants and other agents of The City lied to Plaintiff, informing her that if she resigned, she would leave The City under good standing, but if she chose to come back to work after her last leave of absence, she would be subject to termination. Plaintiff was informed that if she returned, Defendant Dunlap would continue to refuse her requests until he could terminate her;

72.    Relying upon the representations of the Defendants, Plaintiff submitted a letter of resignation;

73.    Notwithstanding the promises made, Defendants created records that identified Plaintiff as an abuser of sick leave and designated her termination in bad standing;

74.    Under the Fifth and Fourteenth Amendments, Plaintiff was entitled to due process before the state could impose on her the designations identified above;

75.    Plaintiff was denied procedural and substantive due process, in that the actions of the Defendants were arbitrary and capricious and shocking to the conscience;

76.     As a direct and proximate result, Plaintiff has suffered injury to her property rights under the contract and to her profession that she is unemployable in that profession;

77.     As a direct and proximate result, Plaintiff has suffered loss of income and incurred medical and other expense, lost benefits, and will incur such additional losses in the future; has suffered permanent loss of earning capacity and has and will endure extreme emotional distress, humiliation and loss of reputation;

**D.      FOURTH INDIVIDUAL CLAIM: LIBERTY INTEREST CONSTITUTIONAL VIOLATION**

78.     Plaintiffs reallege Paragraphs 1 through 77 as if fully set forth herein;

79.     This Claim is brought to vindicate Plaintiff Lisa Lee's right to liberty under the Fifth and Fourteenth Amendments;

80.     Defendants' actions, in constructively discharging Plaintiff and making public record which impairs her from working in her profession has deprived her of liberty without due process;

81.     As a direct and proximate result, Plaintiff has suffered loss of income and incurred medical and other expense, lost benefits, and will incur such additional losses in the future; has suffered permanent loss of earning capacity and has and will endure extreme emotional distress, humiliation and loss of reputation;

**E.      FIFTH INDIVIDUAL CLAIM: FIRST AMENDMENT RETALIATION**

82.     Plaintiffs reallege Paragraphs 1 through 81 as though fully set forth herein;

83.     This Claim is brought pursuant to the First and Fourteenth Amendment to vindicate Plaintiff Lisa Lee's right of free expression;

84.     When Defendants began abusing Plaintiff's rights under the FMLA, and under the Rehabilitation Act, she contacted, among others, the United States Department of Labor and brought to that agency's attention the violations of law occurring in The City;

85.     Agents of the Department of Labor contacted the Defendants and made known Plaintiff's concerns regarding the policy and practices;

86.     Defendants retaliated against Plaintiff, by, among other things, lying to her regarding her status with The City, constructively discharging her, and placing false and defamatory material in her public file;

87.     As a direct and proximate result, Plaintiff has suffered loss of income and incurred medical and other expense, lost benefits, and will incur such additional losses in the future; has suffered permanent loss of earning capacity and has and will endure extreme emotional distress, humiliation and loss of reputation;

## F.     SIXTH INDIVIDUAL CLAIM: DISABILITY DISCRIMINATION

88.     Plaintiffs reallege Paragraphs 1 through 87 as if fully set forth herein;

89.     This Claim is brought pursuant to The Rehabilitation Act and R.C. 4112.99 to vindicate rights guaranteed under R.C. 4112.02(A);

90.     At all times pertinent hereto, Plaintiff was a person with a disability as that term is defined by the Act and R.C. 4112.01(A)(13);

91.     Defendants discriminated against Plaintiff, in violation of §794 and R.C. 4112.99, when they, among other acts, denied her reasonable accommodation, and constructively discharged her;

92.     The discriminatory conduct was intentional and malicious;

93.     As a direct and proximate result, Plaintiff has lost income and benefits, suffered extreme emotional distress, humiliation and loss of enjoyment of life, and will continue to experience such losses in the future;

G.      **SEVENTH INDIVIDUAL CLAIM: RETALIATION**

94.     Plaintiffs reallege Paragraphs 1 through 93 as if fully set forth herein;

95.     This Claim is brought pursuant to The Rehabilitation Act and R.C. 4112.99, to vindicate rights under R.C. 4112.02(I);

96.     Defendants retaliated against Plaintiff for having opposed what she reasonably believed to be conduct made unlawful by the Act and by R.C. 4112.02(A);

97.     The retaliation was intentional and malicious;

98.     As a direct and proximate result, Plaintiff has suffered loss of income and incurred medical and other expense, lost benefits, and will incur such additional losses in the future; has suffered permanent loss of earning capacity and has and will endure extreme emotional distress, humiliation and loss of reputation;

H.      **EIGHTH INDIVIDUAL CLAIM: DEFAMATION**

99.     Plaintiffs reallege Paragraphs 1 through 98 as if fully set forth herein;

100.    Defendants Jackson, Dunlap and Graumlich defamed Plaintiff Lisa Lee when they publicized false allegations of "sick leave abuse" and abuse of the FMLA. Defendants' statements were *per se* defamatory, in that they accused her of a crime, theft, and of conduct that directly injured her in her occupation and profession;

101.    Defendants' conduct was willful, wanton and intentional;

102.     As a direct and proximate result, Plaintiff has lost income and benefits, suffered extreme emotional distress, humiliation and loss of enjoyment of life, and will continue to experience such losses in the future;

## V.     INDIVIDUAL CLAIMS: PAULA LEE

### A.     FACTS

103.     Plaintiffs reallege Paragraphs 1 through 102 as if fully set forth herein;

104.     Plaintiff Paula Lee was hired by Defendant City of Columbus on May 7, 1997;

105.     From childhood, Plaintiff suffered from intermittent episodes of migraine headaches;

106.     Before December, 2003, Plaintiff had received approval of Defendants for intermittent leave under the FMLA;

107.     Beginning in December, 2003, Plaintiff suffered migraine episodes of increasing frequency and severity;

108.     As a result of the increased incidents, Plaintiff began to reduce her voluntary overtime;

109.     Defendants began assigning Plaintiff to mandatory overtime pursuant to its policy, which included demands to return to work for overtime without sufficient rest to recover from the previous work periods;

110.     Plaintiff, as a result, was required to use more and more FMLA leave. On August 19, 2004, Defendant Dunlap issued an order that those who had an "FMLA approved disability" were required to work overtime and that any mark off for FMLA would be charged against the employee's allotted FMLA leave time;

111.     By 2005, Plaintiff had exhausted her intermittent FMLA leave;

112.    Plaintiff was placed by Defendants on the "sick leave abuse" list for absences caused by her FMLA-qualifying condition;

113.    By 2005, Plaintiff's serious health condition was characterized by multiple weekly episodes of cluster migraine headaches, accompanied by hypertension, vascular disease, osteoarthritis, obesity, situational depression, and chronic venous insufficiency of the left leg;

114.    Plaintiff repeatedly sought accommodation for her disabilities from Defendants. The requests included, among others, two letters from her treating physicians dated November 3, 2005 and June 9, 2006, in which the doctor sought accommodation of no overtime, stating the imposition of mandatory overtime "has severely affected my ability to provide her with relief from the pain which she suffers....;"

115.    Defendants ignored Plaintiff's requests for accommodations;

116.    Defendants began to subject Plaintiff to disciplinary actions for absences caused by her serious health conditions.

117.    On June 20, 2006, Plaintiff was issued a suspension of 10 days for absences caused solely by the serious health conditions;

118.    Defendants informed Plaintiff that she would continue to be subject to increasing discipline if she failed to work the mandatory overtime, such discipline up to and including termination;

119.    On August 31, 2006, Plaintiff was terminated by Defendants;

**B.      FIRST INDIVIDUAL CLAIM: DISABILITY DISCRIMINATION; FAILURE TO ACCOMMODATE AND TERMINATION**

120.    Plaintiffs reallege Paragraphs 1 through 119 as if fully set forth herein;

121.    This Claim is brought pursuant to The Rehabilitation Act and R.C. 4112.99 to vindicate rights guaranteed under R.C. 4112.02(A);

14

122.    At all times pertinent hereto, Plaintiff Paula Lee was a person with a disability as that term is defined by the Act and R.C. 4112.01(A)(13);

123.    Defendants discriminated against Plaintiff, in violation of §794 and R.C. 4112.99, when they, among other acts, denied her reasonable accommodation, and constructively discharged her;

124.    The discriminatory conduct was intentional and malicious;

125.    As a direct and proximate result, Plaintiff has lost income and benefits, suffered extreme emotional distress, humiliation and loss of enjoyment of life, and will continue to experience such losses in the future;

### C.    SECOND INDIVIDUAL CLAIM: RETALIATION

126.    Plaintiffs reallege Paragraphs 1 through 125 as if fully set forth herein;

127.    This Claim is brought pursuant to The Rehabilitation Act and R.C. 4112.99, to vindicate rights under R.C. 4112.02(I);

128.    Defendants retaliated against Plaintiff for having opposed what she reasonably believed to be conduct made unlawful by the Act and by R.C. 4112.02(A);

129.    The retaliation was intentional and malicious;

130.    As a direct and proximate result, Plaintiff has suffered loss of income and incurred medical and other expense, lost benefits, and will incur such additional losses in the future; has suffered permanent loss of earning capacity and has and will endure extreme emotional distress, humiliation and loss of reputation;

### D.    THIRD INDIVIDUAL CLAIM: LIBERTY INTEREST CONSTITUTIONAL VIOLATION

131.    Plaintiffs reallege Paragraphs 1 through 130 as if fully set forth herein;

15

132.    This Claim is brought to vindicate Plaintiff Paula Lee's right to liberty under the Fifth and Fourteenth Amendments;

133.    Defendants' actions, in constructively discharging Plaintiff and making public record which impairs her from working in her profession has deprived her of liberty without due process;

134.    As a direct and proximate result, Plaintiff has suffered loss of income and incurred medical and other expense, lost benefits, and will incur such additional losses in the future; has suffered permanent loss of earning capacity and has and will endure extreme emotional distress, humiliation and loss of reputation;

## VI.    INDIVIDUAL CLAIMS: TERESA RUBY

### A.    FACTS

135.    Plaintiffs reallege paragraphs 1 through 134 as if fully set forth herein;

136.    Plaintiff was hired as a Communications Technician on March 3, 1991, and assigned to the Division of Police radio room;

137.    During 2003, Plaintiff began to experience symptoms of sleep deprivation, anxiety and stress, contributed to by having to work the assigned mandatory overtime schedule set up by Defendants;

138.    During the year 2004, Plaintiff's health care provider wrote requests to the City to reduce Plaintiff's hours of work to accommodate her. Defendants ignored the requests;

139.    Beginning in December, 2004, Plaintiff sought approval of the City for FMLA intermittent leave because of her medical condition;

140.    Plaintiff was placed by the City on the "sick leave abuse" list because of absences caused by her medical condition;

141.    Through June, 2005, the Defendants refused to accept Plaintiff's applications, and her health care providers' certifications, stating that the information provided was "insufficient." The Defendants obstructed Plaintiff's efforts to obtain approval, including demands that she commence the certification process again, even though Plaintiff had provided the information that had been demanded. Further, the City continuously delayed responding to her requests and questions;

142.    In 2005, Plaintiff contacted the United States Department of Labor, complaining about the Defendants' treatment of her FMLA requests. An agent of the DOL contacted the City;

143.    On November 3, 2005, Plaintiff was issued discipline for "insubordination" arising from her repeatedly opposing Defendants' Directive requiring her to disclose her medical condition to the chain of command. Plaintiff was assessed a total of thirty-one (31) days' suspension from work;

144.    On November 11, 2005, Plaintiff submitted to a psychological examination by Ronald Fathman, Ph.D., as required by the City. At around the same time, unknown to Plaintiff, Defendants retained Richard Clary, M.D. to conduct a second review of Plaintiff's mental and emotional condition. Both examiners were directed by Defendants to render opinions concerning Plaintiff's mental and emotional condition in February, 2005, and to opine upon her qualifications for leave under the FMLA;

145.    Subsequently, Defendants refused to approve FMLA leave;

146.    Plaintiff was constructively discharged on January 6, 2006;

**B.      FIRST INDIVIDUAL CLAIM: FMLA INTERFERENCE AND DISCRIMINATION**

147.    Plaintiffs reallege Paragraphs 1 through 146 as if fully set forth herein;

148.    This Claim is brought pursuant to 29 U.S.C. §2617(1); to vindicate rights guaranteed Plaintiff Teresa Ruby under §2615(a) and §2615(b) of the United States Code;

149.    At all times pertinent hereto, The City was a qualifying "employer" under §2611(4)(A)(i);

150.    At all times pertinent hereto, Plaintiff was an "eligible employee" as that term is defined under §2611(2)(A);

151.    The claims for relief are brought pursuant to 29 U.S.C. §2617(a)(2)(B);

152.    29 U.S.C. §2313 provides for certification of the health care provider of the employee's need for leave of absence for a serious health condition;

153.    §2613(c) provides the vehicle for the employer's determination of the adequacy and validity of the issuing health care provider's certification, and specifically provides that if validity is doubted, the lawful course for the employer to follow is to obtain a second opinion from a health care provider not regularly employed by the employer;

154.    §2613(c)(2) provides that any health care providers so retained by the employer shall not be employed on a regular basis by the employer;

155.    29 C.F.R. §825.307(a) provides that the employer who requires clarification of a certification may, with the employee's permission, retain an independent health care provider to communicate with the employee's certifying doctor to obtain clarification. That health care provider may not be regularly employed by the employer;

156.    Defendants' conduct, in obstructing the FMLA approval process, in demanding that Plaintiff commenced the process a second time, in retaining two examiners to review Plaintiff's medical condition, and in employing examiners the City regularly employs to conduct

examinations and reviews of employee's mental/emotional conditions, all violated §2315(a), and constituted interference with Plaintiff's efforts to certify her condition;

157.    Further, Defendants' conduct constituted actions prohibited under §2315(b);

158.    Defendants' conduct was intentional and malicious;

159.    As a direct and proximate result, Plaintiff has suffered loss of income and incurred medical and other expense, lost benefits, and will incur such additional losses in the future;

### C.    SECOND INDIVIDUAL CLAIM: RETALIATION IN VIOLATION OF THE REHABILIATION ACT

160.    Plaintiffs reallege Paragraphs 1 through 159 as if fully set forth herein;

161.    This Claim is brought by Plaintiff Teresa Ruby to vindicate rights under §794 of the Act;

162.    Defendants retaliated against Plaintiff because she opposed the unlawful policy of requiring disclosure of her medical condition to unauthorized persons;

163.    As a direct and proximate result, Plaintiff has suffered loss of income and incurred medical and other expense, lost benefits, and will incur such additional losses in the future; has suffered permanent loss of earning capacity and has and will endure extreme emotional distress, humiliation and loss of reputation;

### D.    THIRD INDIVIDUAL CLAIM: CONSTITUTIONAL VIOLATION

164.    Plaintiffs reallege Paragraphs 1 through 155 as if fully set forth herein;

165.    This Claim is brought by Plaintiff Teresa Ruby pursuant to 42 U.S.C. §1983 to vindicate rights to due process and privacy guaranteed her under the First, Fifth and Fourteen Amendments of the Constitution of the United States;

166.     Defendants violated Plaintiff's First Amendment rights in retaliating against her for opposing what she reasonable believed to be the unlawful practice of requiring disclosure of private medical information;

167.     Defendants denied Plaintiff due process in creating a hostile, abusive and intimidating work environment and constructively discharging her after she made known her opposition to the unlawful procedures;

168.     As a direct and proximate result, Plaintiff has suffered loss of income and incurred medical and other expense, lost benefits, and will incur such additional losses in the future; has suffered permanent loss of earning capacity and has and will endure extreme emotional distress, humiliation and loss of reputation;

**VII.     INDIVIDUAL CLAIMS: CHERI BOWMAN**

    **A.     FIRST CLAIM: DISABILITY DISCRIMINATION**

169.     Plaintiffs reallege Paragraphs 1 through 168 as if fully set forth herein;

170.     This claim is brought to vindicate rights guaranteed Plaintiff by the Rehabilitation Act, 29 U.S.C. §794, as amended; and O.R.C. 4112.99 to vindicate rights guaranteed by O.R.C. 4112.02(A) and O.R.C. 4112.01(A)(13).  At all times pertinent hereto, Plaintiff was a person with a disability as defined by the statutes;

171.     Plaintiff has long suffered from a serious medical condition that has periods of exacerbation;

172.     In or around 2004, as a result of progressive exacerbations caused by the Defendants' demands to work excessive overtime, Plaintiff applied for, and was approved for, intermittent leave under the FMLA;

173.   Despite this, Plaintiff's condition continued to deteriorate until she was experiencing substantial impairments in her ability to think, concentrate, care for herself, and work;

174.   By the year 2007, Plaintiff was a qualified individual with a disability, as that term is defined by statute;

175.   Beginning in the spring of 2007, Defendants began to accommodate Plaintiff's substantial impairments by assigning her to the "backchannel" position in the Radio Room, a position for which she was capable of performing all essential functions;

176.   However, on May 14, 2007, Defendants, without explanation, ordered Plaintiff from the job, and subsequently stated to her that she could not return to the Radio Room unless she had no restrictions;

177.   Plaintiff repeatedly requested that Defendants engage in an interactive process to allow her to return to work;

178.   In November, 2007, Defendants advised Plaintiff of an open position, Office Assistant II, which she would receive if her treating physician confirmed she could perform the essential functions;

179.   Within one day, Plaintiff's physician authorized her to accept the position. When Plaintiff informed the Defendants of the acceptance, the position was withdrawn;

180.   Since May, 2007, Defendants have refused to return Plaintiff to the Radio Room, and refused to engage in an interactive process to provide her with accommodations;

181.   Defendants have demanded that Plaintiff apply for disability retirement. Having no other option, Plaintiff is now in the process of such application;

182.    Defendants' conduct has been taken maliciously, and with reckless indifference to the certainty of the violation of federal law;

183.    As a direct and proximate result of the discriminatory conduct, Plaintiff has lost income and benefits, has suffered extreme emotional distress, humiliation, loss of self-esteem, damage to credit, impairment of earning capacity, and will continue to experience damages in the future;

**B.** **SECOND CLAIM: FMLA VIOLATION: INTERFERENCE**

184.    Plaintiffs reallege Paragraphs 1 through 183 as if fully set forth herein;

185.    This Claim is brought pursuant to 29 U.S.C. §2617(1); to vindicate rights guaranteed Plaintiff under §2615(a) and §2615(b) of the United States Code;

186.    At all times pertinent hereto, The City was a qualifying "employer" under §2611(4)(A)(i);

187.    At all times pertinent hereto, Plaintiff was an "eligible employee" as that term is defined under §2611(2)(A);

188.    The claims for relief are brought pursuant to 29 U.S.C. §2617(a)(2)(B);

189.    Plaintiff's intermittent leave for a chronic serious health condition qualified under §825.114(a)(2)(iii) and §825.203 of the Code of Federal Regulations;

190.    Plaintiff complied with the certification requirements of The City authorized under, among other provisions, §825.306;

191.    Under §825.114(e), absences taken for a qualifying condition, even if the employee does not receive treatment from a health care provider, and even though the absence does not last for more than three days, are covered FMLA absences;

192.    For intermittent leave taken under §825.203, an employer, under §825.310(g) may not demand a return to work excuse or certification from the employee;

193.    Beginning in 2004, Plaintiff began to take intermittent leave for exacerbations of her serious health condition;

194.    Each time Plaintiff took such leave for more than three days, Defendants demanded Plaintiff provide a medical certification of Plaintiff's ability to return to work;

195.    As a result, Plaintiff was required in many instances to make an appointment with her doctor, to visit that doctor, with the expense associated with such a visit, simply to obtain the certification;

196.    Subsequently, Defendant began aggregating Plaintiff's FMLA "mark offs" under its "Sick Leave Abuse" policy, and listed Plaintiff as a potential sick leave "abuser" on the basis, at least in part, of FMLA-qualifying absences;

197.    Once listed as a potential sick leave "abuser," Defendants demanded return-to-work certifications of Plaintiff for every intermittent absence under the FMLA, including those of less than four day's duration;

198.    As a direct and proximate result, Defendants have continuously interfered with Plaintiff's FMLA rights, and caused her expense, all without justification under the FMLA;

## VIII.   INDIVIDUAL CLAIMS OF VERONICA CONLEY

199.    Plaintiffs reallege Paragraphs 1 through 198 as if fully set forth herein;

200.    At all times pertinent hereto, Plaintiff was, and is, a civilian employee of the Division, with the position of Communications Technician in the Radio Room;

201.    Plaintiff applied for, and was approved for FMLA leave in 2007;

202.    In December, 2007, Plaintiff marked off on approved FMLA leave;

A.      **FIRST INDIVIDUAL CLAIM: RETALIATION IN VIOLATION OF THE REHABILIATION ACT**

203.    Plaintiffs reallege Paragraphs 1 through 1202 as if fully set forth herein;

204.    This Claim is brought by Plaintiff Veronica Conley to vindicate rights under §794 of the Act;

205.    Defendants retaliated against Plaintiff because she opposed the unlawful policy of requiring disclosure of her medical condition to unauthorized persons;

206.    As a direct and proximate result, Plaintiff has suffered loss of income and incurred medical and other expense, lost benefits, and will incur such additional losses in the future; has suffered permanent loss of earning capacity and has and will endure extreme emotional distress, humiliation and loss of reputation;

B.      **SECOND INDIVIDUAL CLAIM: CONSTITUTIONAL VIOLATION**

207.    Plaintiffs reallege Paragraphs 1 through 206 as if fully set forth herein;

208.    This Claim is brought by Plaintiff Veronica Conley pursuant to 42 U.S.C. §1983 to vindicate rights to due process and privacy guaranteed her under the First, Fifth and Fourteen Amendments of the Constitution of the United States;

209.    Defendants violated Plaintiff's First Amendment rights in retaliating against her for opposing what she reasonable believed to be the unlawful practice of requiring disclosure of private medical information;

210.    Defendants denied Plaintiff due process in creating a hostile, abusive and intimidating work environment and suspending her without pay after she made known her opposition to the unlawful procedures;

211.    As a direct and proximate result, Plaintiff has suffered loss of income and incurred medical and other expense, lost benefits, and will incur such additional losses in the

24

future; has suffered permanent loss of earning capacity and has and will endure extreme emotional distress, humiliation and loss of reputation;

### C.    THIRD INDIVIDUAL CLAIM: FMLA INTERFERENCE

212.    Plaintiffs reallege Paragraphs 1 through 211 as if fully set forth herein;

213.    This Claim is brought pursuant to 29 U.S.C. §2617(1); to vindicate rights guaranteed Plaintiff under §2615(a) and §2615(b) of the United States Code;

214.    At all times pertinent hereto, The City was a qualifying "employer" under §2611(4)(A)(i);

215.    At all times pertinent hereto, Plaintiff was an "eligible employee" as that term is defined under §2611(2)(A);

216.    The claims for relief are brought pursuant to 29 U.S.C. §2617(a)(2)(B);

217.    Defendants' conduct interfered with Plaintiff's rights under the FMLA and discriminated against her for having taken qualifying FMLA leave;

218.    As a direct and proximate result, Plaintiff has lost income, incurred expense, suffered damage to her good standing and reputation and will experience additional damages in the future;

### IX.    CLAIM FOR DECLARATORY RELIEF

219.    Plaintiffs reallege Paragraphs 1 through 219 as if fully set forth herein;

220.    This Claim is brought pursuant to 28 U.S.C. §2201, which provides, in part, that this Court may declare the rights and legal relations of any interested party seeking such relief, whether or not further relief is or could be sought;

221.    Defendants' maintenance of the policies and practices under the Directive have violated, and, if allowed to continue, will violate Plaintiffs' rights if not declared to be in violation of the law and halted by this Court;

222.    Further, Defendants' maintenance of the policies and procedures that violate employees' rights under the FMLA, as set forth in claim VII(B), if allowed to continue, will further interfere with employees' rights to qualifying leave, and continue to cause harm to employees;

## X.    CLAIMS OF PAULA LEE, TERESA RUBY, AND CHERI BOWMAN: DUE PROCESS VIOLATION

223.    Plaintiffs reallege Paragraphs 1 through 222 as if fully set forth herein;

224.    The actions taken by the individual named Defendants, described above, were taken under color of law and in conformance with the policy, practice and custom of The City;

225.    This Claim is brought pursuant to 42 U.S.C. §1983 to vindicate rights under the Fifth and Fourteenth Amendments to the Constitution;

226.    These Claims are enumerated, respectively, as Claim V(E) of Paula Lee, Claim VI(E) of Teresa Ruby, and Claim VII (C) of Cheri Bowman;

227.    While employed by The City, Plaintiffs enjoyed a right under the collective bargaining agreement to have due process in the event the Defendants contemplated adverse employment action against them;

228.    As a consequence of the separation of the three Plaintiffs from employment with the City, the Division created personnel records available to the public that described the Plaintiffs as having separated "in bad standing;"

229.    The "bad standing" designations resulted from the Division's enforcement of Directive 3.07 against each Plaintiff;

26

230.    Under the Fifth and Fourteenth Amendments, each Plaintiff was entitled to due process before the state could impose on her the designations identified above;

231.    Plaintiffs were denied procedural and substantived due process, the actions of the Defendants being arbitrary and capricious and shocking to the conscience;

232.    As a direct and proximate result, each Plaintiff has suffered injury to her property rights under the contract and to her profession that she is unemployable in that profession;

233.    As a direct and proximate result, each Plaintiff has suffered loss of income and incurred medical and other expense, lost benefits, and will incur such additional losses in the future; has suffered permanent loss of earning capacity and has and will endure extreme emotional distress, humiliation and loss of reputation;

## XI.    CLAIMS OF PAULA LEE, TERESA RUBY AND CHERI BOWMAN: LIBERTY INTEREST VIOLATION

234.    Plaintiffs reallege Paragraphs 1 through 233 as if fully set forth herein;

235.    These Claims are  brought pursuant to 42 U.S.C. §1983 to vindicate rights guaranteed Plaintiffs under the First, Fifth and Fourteenth Amendments to the Consitution of the United States;

236.    These Claims are enumerated, respectively as Claim V(F) of Paula Lee, VI(F) of Teresa Ruby and Claim VII(D) of Cheri Bowman;

237.    The actions taken by Defendants, enumerated above, violated each Plaintiff's right to liberty;

238.    As a direct and proximate result, each Plaintiff has suffered loss of income and incurred medical and other expense, lost benefits, and will incur such additional losses in the future; has suffered permanent loss of earning capacity and has and will endure extreme emotional distress, humiliation and loss of reputation;

XII.    **FIRST AMENDED AND SUPPLEMENTAL CLAIM OF PLAINTIFF LISA LEE:
CLAIM AGAINST DEFENDANTS THE CITY OF COLUMBUS, JAMES
JACKSON, GARY DUNLAP AND MARK GRAUMLICH: TORTIOUS
INTERFERENCE WITH CONTRACT**

239.    Plaintiffs reallege Paragraphs 1 through 238 as if fully set forth herein;

240.    In or around December, 2007, Plaintiff Lisa Lee applied for a position with the Franklin County Sheriff as a communications technician;

241.    A representative of the Franklin County Sheriff made inquiry with the Division regarding Plaintiff's work history;

242.    In response to the inquiry in or around January, 2008, and pursuant to the policy and practice established by the named Defendants, Defendant Graumlich repeated the defamatory material to the the Sheriff addressed in Claim IV(B). As with the previous disclosures to the representative of the Highway Patrol, the actions were taken willfully, wantonly and recklessly;

243.    As a direct and proximate result, the Sheriff discontinued processing Plaintiff for the communications technician position;

244.    The Defendants tortiously interfered with Plaintiff Lisa Lee's prospective employment agreement with both the Ohio State Highway Patrol and the Franklin County Sheriff;

245.    As a direct and proximate result, Plaintiff has suffered loss of income and incurred medical and other expense, lost benefits, and will incur such additional losses in the future; has suffered permanent loss of earning capacity and has and will endure extreme emotional distress, humiliation and loss of reputation;

**XIII.** **FIRST SUPPLEMENTAL CLAIM OF PLAINTIFF LISA LEE: CLAIM AGAINST DEFENDANTS THE CITY OF COLUMBUS, JAMES JACKSON, GARY DUNLAP AND MARK GRAUMLICH : DEFAMATION**

246.    Plaintiffs reallege Paragraphs 1 through 245 as if fully set forth herein;

247.    The disclosures made by Graumlich to the Franklin County Sheriff constituted defamation *per se*;

248.    The policy and practice was put in place in a reckless, willful, wanton and malicious state of mind, and Graumlich's repetition of the falsehoods were done in such as state of mind;

249.    As a direct and proximate result, Plaintiff has suffered loss of income and incurred medical and other expense, lost benefits, and will incur such additional losses in the future; has suffered permanent loss of earning capacity and has and will endure extreme emotional distress, humiliation and loss of reputation;

**XIV.** **SECOND SUPPLEMENTAL CLAIM OF PLAINTIFF LISA LEE: FMLA INTERFERENCE AND RETALIATION**

247.    Plaintiffs reallege Paragraphs 1 through 246 as if fully set forth herein;

248.    This Claim is brought pursuant to 29 U.S.C. §2617(1); to vindicate rights guaranteed Plaintiff under §2615(a) and §2615(b) of the United States Code;

249.    At all times pertinent hereto, The City was a qualifying "employer" under §2611(4)(A)(i);

250.    At all times pertinent hereto, Plaintiff was an "eligible employee" as that term is defined under §2611(2)(A);

251.    The claims for relief are brought pursuant to 29 U.S.C. §2617(a)(2)(B);

252.    The actions of the Defendants, in republicizing the falsehoods as asserted in the First Supplemental Claim, above, were taken in retaliation against Plaintiff having asserted rights under the FMLA, and interfered with Plaintiff's rights under that law;

253.    As a direct and proximate result, Plaintiff has suffered loss of income and incurred medical and other expense, lost benefits, and will incur such additional losses in the future; has suffered permanent loss of earning capacity and has and will endure extreme emotional distress, humiliation and loss of reputation;

WHEREFORE, Plaintiffs demand judgment of Defendants, jointly and severally, as follows:

1.    An Order pursuant to Civil Rule 23(c), made as soon as practicable after discovery directed to the issue, certifying the class under The First Class Claim, The Rehabilitation Act; and the class under The Second Class Claim, the Constitutional Claims;

2.    A declaration, under 28 U.S.C. §2201, that Defendants are prohibited from enforcing the policies or following the practices set forth above with regard to Directive 3.07(G)2.b.3, as they are in violation of The Rehabilitation Act and the Constitution;

3.    An Order directing Defendants to bring the Division policies and procedures into compliance with the law within a time period set by the Court;

4.    An Order creating a common fund from which to pay compensation to  all class members and appointing a special master to administer such payments and;

5.    An award of damages to Plaintiffs and to all members of the classes, in such amounts as the jury deems just;

6.    Equitable relief, under §2617(a)(1)(B), including, but not limited to (a) injunctive relief prohibiting Defendant from enforcing the policies and following the practices set forth

30

above relating to treatment of FMLA qualifying absences as "sick leave abuse," and the policy of demanding return-to-work certifications; (b) redaction from the records of Plaintiffs disciplinary actions taken against them in violation of the FMLA; (c) reinstatement and restoration of benefits or pay, if any, lost because of disciplinary actions taken by Defendants in violation of the FMLA;

7.      For Plaintiff Lisa Lee, an award of back pay, front pay, benefits lost, and liquidated damages under the FMLA; an award of compensatory and punitive damages for the constitutional and state law violations in the amount the jury deems just;

8.      For Plaintiff Paula Lee, an award of compensatory and punitive damages in such amounts as the jury deems just in compensation of constitutional violations; an order requiring Defendants to accommodate Plaintiff; and an award of back pay, front pay, benefits lost and liquidated damages;

9.      For Plaintiff Teresa Ruby, an award of back pay, front pay, benefits lost, and liquidated damages under the FMLA; an award of compensatory and punitive damages for the constitutional violations in the amount the jury deems just;

10.     For Plaintiff Cheri Bowman, an award of such compensatory and punitive damages as the jury deems just; an order compelling Defendants to provide accommodation; and an award of back pay, front pay, benefits lost, and liquidated damages;

11.     For Plaintiff Veronica Conley, an award of back pay, front pay, benefits lost, and liquidated damages under the FMLA; an award of compensatory and punitive damages for the constitutional violations in the amount the jury deems just;

12.     An Order appointing a Special Master to, among other things: (1) make determinations of economic damages to class members and setting compensation; (2) monitor and report to the Court the compliance of the Defendants with this Court's Order requiring the

City to remove the illegal policies and procedures; (3) monitor and report to the Court the

Defendants' compliance with the Order requiring Defendants to accommodate Plaintffs Paula

Lee and Cheri Bowman;

   13. An award of attorney fees, interest and costs pursuant to 42 U.S.C. §1988 and the

common law;

   14. Under the FMLA Claims, such monetary damages as proved, and liquidated

damages; pursuant to §2617(a)(3), 42 U.S.C. §1988 and state law;

   15. Such other relief as the Court deems just.


         Respectfully submitted,

         CHORPENNING, GOOD & PANDORA CO., LPA

         /s/ Michael W. DeWitt   4/24/2009
         Michael W. DeWitt (0066896)
         585 South Front Street
         Suite 250
         Columbus, Ohio 43215
         (614) 469-1301
         (614) 469-0122 (fax)
         mdewitt@chorgood.com

         LAW OFFICES OF MIKE MOORE

         /s/ Michael Garth Moore 4/24/2009
         Michael Garth Moore (0025047)
         585 South Front Street
         Suite 250
         Columbus, Ohio 43215
         Telephone: 614/443-0554
         Facsimile: 614/469-0122 mike@mgmoorelaw.com

         Attorneys for Plaintiffs

## **JURY DEMAND**

Plaintiff demands trial by jury of twelve (12) persons as to all issues.

Respectfully submitted,

CHORPENNING, GOOD & PANDORA CO., LPA

/s/ Michael W. DeWitt   4/24/2009
Michael W. DeWitt (0066896)
585 South Front Street, Suite 250
Columbus, Ohio 43215
(614) 469-1301
(614) 469-0122 (fax)
mdewitt@chorgood.com

LAW OFFICES OF MIKE MOORE

/s/ Michael Garth Moore 4/24/2009
Michael Garth Moore (0025047)
585 South Front Street, Suite 250
Columbus, Ohio 43215
Telephone: 614/225-0554
Facsimile: 614/469-0122
mike@mgmoorelaw.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

      I hereby certify that a true and accurate copy of the foregoing was filed electronically on April 24, 2009.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                          /s/ Michael W. DeWitt  4/24/2009
                          Michael W. DeWitt (0066896)
                          585 South Front Street
                          Suite 250
                          Columbus, OH 43215
                          (614) 469-1301