# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

LISA LEE, et al.,

      Plaintiffs,                     **Case No. 2:07-cv-1230**
                                           **JUDGE GREGORY L. FROST**
      v.                             **Magistrate Judge Norah McCann King**

THE CITY OF COLUMBUS, OHIO, et al.,

      Defendants.

## OPINION AND ORDER

This matter is before the Court on Plaintiff Classes' motion for partial summary judgment ("Plaintiff Classes' Motion") (Doc. # 103), Defendant the City of Columbus' ("the city" or "Defendant") memorandum in opposition to Plaintiff Classes' Motion (Doc. #127), and Plaintiff Classes' reply memorandum (Doc. # 150); Defendant's motion for summary judgment ("Defendant's Motion") (Doc. # 142), Plaintiffs' memorandum in opposition to Defendant's Motion (Doc. # 156), and Defendant's reply memorandum (Doc. # 172); and, Defendant's Motion to Strike Declarations (Doc. # 127). For the reasons that follow, the Court **DENIES** both Defendant's Motion and Defendant's Motion to Strike Declarations, and **DENIES IN PART and GRANTS IN PART** Plaintiff Classes' Motion.

## I. Background

This case was brought by several employees of the City of Columbus, Division of Police. Plaintiffs allege that Columbus Police Division Directive ("Directive") 3.07 § III(H)(1)(c) violates the Rehabilitation Act of 1973, 29 U.S.C. § 790 *et seq.* ("Rehabilitation Act") and the privacy provisions of the First, Fifth and Fourteenth Amendments to the Constitution of the

United States through 42 U.S.C. §1983 ("Section 1983").[1]  (*See* Doc. # 109, Third Amended Complaint).  Plaintiffs request a permanent injunction prohibiting enforcement of Directive 3.07 § III(H)(1)(c) and Plaintiffs request damages for alleged harm caused to them by the enforcement of that Directive them.

Directive 3.07 § III(H) relates to the procedures for when an employee seeks to take sick leave prior to the start of his or her shift and provides in relevant part:

> H. Returning to Regular Duty Following Sick Leave, Injury Leave, or Restricted Duty
>
> 1. *All* Personnel
>
> a. Notify the Information Desk *to mark up prior to* returning to *regular* duty.
>
> b. If any of the following conditions apply, forward a note from the attending physician to [the Employee Benefits Unit] upon returning to *regular* duty:
>
>> (1) More than three days of sick leave were used.
>> The physician's note must state the nature of the illness and that you are capable of returning to *regular duty*.
>>
>> (2) Previously notified by a commander to do so.
>> The physician's note must state the nature of the illness and that you are capable of returning to *regular duty*.
>>
>> (3) More than two days of sick leave were used due to illness in the immediate family.
>> The physician's note must state the nature of the family member's illness and that you were required to care for the family member.
>
> Note: Consult the applicable work agreement for the definition of immediate family.

---

[1]The individually named Plaintiffs also allege that they have individual claims for relief under these and other federal and state laws.  Those claims are not currently before the Court.

(4) You were assigned to restricted duty.
                    The physician's note must state that you are capable of
                    returning to regular duty.

c. Submit a copy of the physician's note *to your immediate supervisor*.

(Doc. # 103-2 at 8) (emphasis in original).

Under these provisions, an employee who is returning to regular duty must under specified circumstances provide a note from his or her attending physician to his or her immediate supervisor. The physician's note must state the nature of the illness and that the employee is capable of returning to regular duty if the employee was off for more than three days of sick leave or was previously notified by a commander to do so. Directive 3.07 § III(H)(1)(b)(1), (2). If more than two days of sick leave were used due to illness in the immediate family, then the physician's note must state the nature of the family member's illness and that the employee was required to care for the family member. Directive 3.07 § III(H)(1)(b)(3). In all instances, the Directive requires the employee to submit a copy of the physician's note to his or her immediate supervisor. Directive 3.07 § III(H)(1)(c).

Two of the individually named Plaintiffs, Carrie Best and Cheri Bowman, moved this Court for preliminary injunctive relief against enforcement of Directive 3.07 § III(H)(1)(c) against them. (Doc. # 7.) That motion was fully briefed and on June 24, 2008, this Court granted these two Plaintiffs' motion and issued a preliminary injunction, holding that Best and Bowman were substantially likely to succeed on the merits of their Rehabilitation Act claim and their constitutional challenges to Directive 3.07 §III(H)(1)(c). (Doc. # 32.)

On May 21, 2008, Plaintiffs filed a motion to certify two plaintiff classes. (Doc. # 26.) That motion was fully briefed and on August 22, 2008, this Court granted class certification.

(Doc. # 39.)  Defendants subsequently filed a motion to modify the definition of one of the classes, which this Court granted.  (Docs. # 59, 66.)  The classes are defined as follows:

> CLASS I
> All employees of the City of Columbus, Division of Police, subject to the enforcement of Division Directive 3.07, who, since December 4, 2005 through present, pursuant to the Directive, have been required to disclose confidential medical information to supervisory personnel.
>
> CLASS II
> All current employees of the City of Columbus, Division of Police, subject to the enforcement of Division Directive 3.07.

(Doc. # 66 at 1, 6.)

On September 9, 2008, Plaintiffs filed a motion requesting that the preliminary injunction prohibiting enforcement of Directive 3.07 § III(H)(1)(c) against Best and Bowman be extended to the Plaintiff Classes.  (Doc. # 40.)  This Court granted that motion on October 8, 2008.  (Doc. # 48.)

Defendant and Plaintiff Classes now present the issue of the legality of Directive 3.07 § III(H) to the Court for determination on the merits.

## II.  Standard

Fed. R. Civ. P. 56 provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).  In determining whether there is a genuine issue as to any material fact, the evidence "must be viewed in the light most favorable" to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a

verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

However, summary judgment is appropriate if the opposing party "fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "mere existence of a scintilla of evidence in support of the [opposing party's] position will

be insufficient; there must be evidence on which the jury could reasonably find for the [opposing

party]." *Anderson*, 477 U.S. at 252. The Court, however, may not make credibility

determinations or weigh the evidence. *Anderson*, 477 U.S. at 255.

### III. Analysis[2]

Plaintiff Classes and Defendant both request summary judgment on the class claims for

injunctive relief and Defendant also requests summary judgment on the Class I claims for

compensatory damages.

The Court initially notes that throughout Defendant's briefing of its motion and its

supporting memoranda, as well as in its memorandum opposing Plaintiff Classes' Motion,

Defendant brings issues before the Court upon which this Court has already definitively ruled.

However, instead of indicating that it believes that this Court's previous rulings were incorrect,

submitting argument as to why the rulings were incorrect, and/or how these decisions should be

amended or vacated, or why Defendant should be granted relief from them, Defendant simply

puts forth page after page of argument as if it were before the Court for the first time. The Court

frowns upon this course of action because of the waste of time and resources it has necessitated.

---

[2]In citing to the parties' briefing, the Court uses the page number assigned by the electronic filing system (*e.g.*, "Page 8 of 32").

There are a appropriate vehicles by which a party my request reconsideration of an order or gain relief from an order of this Court. Re-argument on dispositive motions is not one of them.

The Court will first address the issues upon which it has previously ruled. The Court next considers Defendant's Motion to Strike Declarations. Last, the Court will address the remaining issues that are appropriately brought before it on the parties' motions for summary judgment.

**A. Defendants' Previous Arguments**

Defendant argues the following issues upon which this Court has already ruled: (1) whether the class representatives appropriately represent the class; (2) whether the collective bargaining agreements to which class members are subject prevent this Court from ruling on the legality of Directive 3.07 § III(H); and (3) whether the evidence of harm before the Court is sufficient to uphold injunctive and/or declaratory relief.

**1. The class representatives appropriately represent Plaintiff Classes.**

Defendant contends that the class representatives' claims are not typical of the class claims because the classes include a diverse array of employees and the employees are members of four different bargaining units covered by four different collective bargaining agreements. On August 22, 2008, this Court issued an Opinion and Order which granted Plaintiffs' request to certify this action as a class action and to define two classes of individuals to whom any relief granted would benefit. (Doc. # 39.) In that decision, the Court specifically held that the individually named Plaintiffs' claims were typical of those of the putative class.

> In this case, Plaintiffs will necessarily advance the interests and the claims of the absent members of the class. Plaintiffs maintain exactly the same causes of action on their own behalf as they do on behalf of the putative class. The proofs that are required for their own claims to prevail are those necessary for the putative class

to prevail. That is, all interests are advanced by attempting to prove that the portion of Directive 3.07 that requires disclosure of personal medical information to an immediate supervisor is unconstitutional and/or violates the Rehabilitation Act. Thus, as go Plaintiffs' claims, so go the claims of the class. Plaintiffs have unquestionably satisfied the typicality requirement of [Federal] Rule [of Civil Procedure] 23(a)(3).

*Id.* at 9-10. The city's current incarnation of its arguments regarding this issue does nothing to call into question this conclusion.

Defendant next argues that there is a conflict of interest between the class representatives and the class members because the class members are also members of one of four bargaining units that represent Division of Police employees. This Court has already rejected this same argument twice:

Defendants argue that this lawsuit may somehow cause a conflict with the operative collective bargaining agreements. This Court addressed this argument in its June 24, 2008 Opinion and Order, stating that "it is debatable whether these [collective bargaining] agreements are even relevant to today's inquiry given that the policies at issue are the directives, not the agreements." (Doc. # 32 at 19.) This same opinion is directly applicable to Defendants' argument here. The Court finds that Plaintiffs interests,( *i.e.*, "the protection offered by the Rehabilitation Act and Section 1983") are identical to the interests of every other class member. There is no antagonism between Plaintiffs' claims and those of the class. If Directive 3.07 is found to violate the law, those who have been subjected to it, Class I, all request damages for these violations and protection from being subjected to the directive in the future. Whereas those individuals in Class II request protection from being subjected to Directive 3.07 in the future. Plaintiffs and the putative class all have an equal interest in preventing the alleged illegal acts. Thus, any declaratory or injunctive relief will benefit all members of the class.

*Id.* at 11-12. Again, Defendant's current resurrection of its argument regarding this issue does nothing to call into question this Court's previous conclusions. Accordingly, even when viewing the evidence in the light most favorable to Defendant, there is no genuine issue of material fact as to whether Plaintiff Classes are appropriately represented, and therefore, the Court **DENIES**

Defendant's request for summary judgment on that basis.

## 2. The relevant collective bargaining agreements do not prohibit this action.

Defendant contends that this case should be dismissed because the procedures for the administration of sick leave do not exist independent of the collective bargaining agreements to which Division of Police employees are subject and that this somehow prevents Plaintiffs from maintaining the instant action. This Court has already addressed this argument in its Opinion and Order that granted Plaintiffs preliminary injunctive relief:

> The City of Columbus' next argument that collective bargaining agreements provide a refuge for its conduct fails to carry the day. It is debatable whether these agreements are even relevant to today's inquiry [whether a preliminary injunction should issue to prevent enforcement of Directive 3.07 § III(H)(1)(c)] given that the policies at issue are in the directives, not the agreements. The provisions of the collective bargaining agreements that have been submitted to this Court allow for Division Directives, but they do not contain the substantive content of Division Directive 3.07 § III(H)(1)(c). (Docs. # 13-7, 13-8.) But even assuming *arguendo* that there is some relevance, this is not an instance in which the statutory or constitutional privacy rights of [Plaintiffs] have been bargained away. *See O'Hara v. Mt. Vernon Bd. of Educ.*, 16 F. Supp. 2d 868, 879 (S.D. Ohio 1998).

(Doc. # 32 at 19.) Defendant has not given the Court any reason to revisit its previous decision on this issue, and the Court finds no reason to do so. Thus, the Court concludes that there is no genuine issue of material fact with regard to whether the collective bargaining agreements prohibit this action–they do not. The Court, therefore, **DENIES** Defendant's request for summary judgment based upon this argument.

## 3. The alleged lack of evidence of harm before the Court does not prevent this Court from granting injunctive or declaratory relief.

Defendant argues that there is no justiciable controversy before the Court because Plaintiffs have failed to provide admissible evidence of harm. Defendant concludes that the

"hypothetical possibility" of some future harm is insufficient to provide this Court the power to issue injunctive or declaratory relief. (Docs. # 127 at 80 of 91, # 142 at 73-74 of 84, and # 172 at 3 of 7.) This is the exact same argument Defendants made in opposition to Plaintiffs' request for injunctive relief that this Court considered and rejected:

> The city argues that neither [Plaintiff] has demonstrated an actual or imminent threat of harm. Absent an injury in fact, the city posits, the motion targets only hypothetical harm. [Plaintiffs] disagree. They contend that because they could need to take leave for medical reasons at any time, they are suffering an actual or imminent injury in fact.
>
> This Court concludes that [Plaintiffs] have sufficient standing to pursue the injunctive relief sought. Unlike those cases in which the possible injury is too speculative to be deemed actual or imminent, *see, e.g., Los Angeles v. Lyons*, 461 U.S. 95, 101-06 (1983), the two plaintiffs seeking injunctive relief here can point to Directives 3.06 and 3.07, which are official statements of policy directing all supervisors and employees to act in a proscribed manner. [Plaintiffs] have therefore "credibly allege[d] that [they] face[] a realistic threat from the future application of the City's policy." *Id.* at 106 n.7.

(Doc. # 32 at 6-7.) Once again, Defendant resurrects an issue already ruled upon by this Court without any explanation as to why the Court's previous decision on the issue should be vacated or amended. Accordingly, the Court concludes that there is a justiciable controversy before it, and therefore **DENIES** Defendant's request for summary judgment based upon this issue.

## B. Defendant's Motion to Strike Declarations

Defendant moves to strike the declarations of four individually named plaintiffs because the declarations do not declare that their content is true under penalty of perjury, which is required under 28 U.S.C. § 1746. (*See* Docs. # 51, 52, 53, 54.) Defendant is correct. However, Plaintiffs have remedied that problem re-filed the corrected declarations. (*See* Doc. # 130, 131, 132, 133.) The Court accepts the declarations as corrected.

Defendant also argue that the declarations "consist mainly of hearsay, conclusory

allegations, and subjective beliefs, none of which can be considered by the Court" as support for a motion for summary judgment. (Doc. # 127 at 13 of 91 citing Fed. R. Civ. P. 56(e)). While Defendant's general statement is correct, in order for any part of the declarations to be stricken the movant must be specific as to the paragraphs that are inadmissible and the reasons for their inadmissibility. A general statement like that made by Defendant is insufficient to strike the entire declaration. *See United States v. Hodges X-Ray*, Inc., 759 F.2d 557, 561 ("on a motion for summary judgment a court will disregard only the inadmissible portions of a challenged affidavit offered in support of or opposition to the motion and will consider the admissible portions in determining whether to grant or deny the motion.").

Accordingly, the Court **DENIES** Defendant's Motion to Strike Affidavits. (Doc. # 127.)

**C. The Parties' Motions for Summary Judgment**

Plaintiff Classes and Defendant both move for summary judgment on Plaintiff Classes' claims for injunctive relief under the Rehabilitation Act and under Section 1983. Defendant also moves for summary judgment on Plaintiffs' claims for damages. The parties also dispute the scope of the request for injunctive relief, the viability of the Plaintiff Classes, and whether the Division of Police employees' unions must be joined for this Court to grant relief. The Court will address the parties' arguments as follows: (1) which subsections of Directive 3.07 are before the Court for consideration; (2) whether Class II claims are still viable because only one named Plaintiff is currently employed by the city; (3) whether the case can go forward without the interests of the class members' bargaining units ("unions") represented; (4) whether summary judgment will be granted or denied on Plaintiffs Rehabilitation Act claim for injunctive relief; (5) whether summary judgment will be granted or denied on Plaintiffs' Section 1983 claim for

10

injunctive relief; and (6) whether Defendants are entitled to summary judgment on Plaintiffs claims for compensatory damages.

**1. Only Directive 3.07 § III(H)(1)(c) is before the Court for consideration.**

Plaintiff Classes contend that before the Court is the issue of the legality of Directive 3.07 §§ III(E)(1)(b), III(E)(2)(a), III(H)(1)(c), III(J)(2)(g) and III(J)(3)(b).  Plaintiff Classes argue that, although Directive 3.07 § III(H)(1)(c) was the subject of this Court's preliminary injunction, "the allegations contained in the Complaint, as well as the discovery conducted in this case, have been (*sic*) much broader than that single provision."  (Doc. # 150 at 4 of 18.) Defendant disagrees with Plaintiff Classes' assessment, arguing that the only provision before the Court is Directive 3.07 § III(H)(1)(c).  This Court agrees with Defendant.

Previously, the Court granted a preliminary injunction with respect to "Directive 3.07 § III(H)(1)(c)" (Doc. # 32 at 22) and also granted class certification in reliance upon the allegations that the class claims were related to Directive 3.07 § III(H)(1)(c) (Doc. # 39). Plaintiffs twice amended the complaint after these two orders and did not include any of the provisions Plaintiff now claims are before the Court.  Indeed, the Third Amended Complaint specifies that Plaintiffs challenge "Directive 3.07(G)2.b.3 ['The Directive']."  (Doc. # 109 ¶ 7.) It is not disputed that Directive 3.07(G)2.b.3 has been revised so that the information covered in it is now covered by "Directive 3.07 § III(H)."  (*See* Doc. # 127 at 22 of 91; Doc. # 150.)  To understand the impact of subsection (H)(1)(c), that subsection must be viewed in the context of subsection (H) as a whole.

Plaintiff Classes further argue that paragraphs 18, 19, 30, and 31 of the Third Amended Complaint are broad enough to encompass these other subsections of Directive 3.07 § III they

now claim are before the Court.  This Court disagrees.  Two of those paragraphs refer to the "Directive" which Plaintiffs defined as Directive 3.07 § III(H).  With regard to the other two, they, like the complaint as a whole, simply do not put the reader on notice that Plaintiff Classes are seeking relief under any subsection other than subsection (H).  *See also* Fed. R. Civ. P 8(a) (need a short plain statement of claim for purpose of notice).  Thus, considering any Directive other than Directive 3.07 § III(H) would in effect be allowing amendment to the complaint, which will not be permitted at this stage of these proceedings.

Accordingly, the even when viewing the evidence in the light most favorable to Plaintiff Classes, the Court **DENIES** their motion for summary judgment with regard to all Directives other than Directive 3.07 § III(H).

### 2.  Class II claims are viable even if there is only one remaining named Plaintiff.

Defendant argues that because only one named Plaintiff, Veronica Conley, is currently employed with the city, Class II claims are now defective.  The city's argument cites no authority and has no merit.

As Plaintiff Classes correctly note, it is accepted law that once standing is established for a single named plaintiff, standing is established for the class as a whole.  *See, e.g, Central States SE & SW Areas Health and Welfare Fund v. Merck-Medco Managed Care*, 504 F.3d 229, 241 (2nd Cir. 2007) ("As a threshold matter, we note that only one of the named Plaintiffs is required to establish standing in order to seek relief on behalf of the entire class." citing Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 2:6 n.3 (4th ed. 2002)).  Thus, Defendant's argument fails to provide support for dismissal of this class action.  Accordingly, the Court **DENIES** Defendants' Motion related to this argument.

**3. That the interests of the respective unions are not represented does not prevent this Court from consideration of this lawsuit**.

In Defendant's Motion it argues that Plaintiff Classes should be prevented from proceeding because the interests of the non-party unions that represent the class members are not represented in this action. In their opposition memorandum, Plaintiff Classes argue that the issue of viability of this action without the non-party unions involved is properly governed by Fed. R. Civ. P. 19, which provides the vehicle to join necessary parties. Plaintiff Classes further contend that the burden to show that joinder is necessary for "complete relief" or that, in the absence of joinder, the claims must be dismissed, rests on Defendant. (Doc. # 156 at 5 of 9) (citing *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990)). Plaintiff Classes conclude that Defendant has failed to present any evidence that a decision by this Court on the provisions of the Directive at issue will have any impact on any union cognizable under subsections (a)(1) or (a)(2) of Rule 19. In its reply memorandum, Defendant does not respond to this argument.

The Court finds Plaintiffs argument well taken and concludes that, even when viewing the evidence in the light most favorable to Defendant, Defendant is not entitled to summary judgment on Plaintiffs' claims based upon the alleged failure to join necessary parties. Accordingly, the Court **DENIES** Defendant's Motion in this regard.

**4. Plaintiff Classes are entitled to summary judgment on their injunctive relief claim brought under the Rehabilitation Act.**

This Court has already determined that Plaintiff Classes are entitled to a preliminary injunction under the Rehabilitation Act, concluding that Plaintiff Classes were substantially likely to succeed on the merits of their request for permanent injunctive relief under that Act. (Doc. # 32.) In Defendant's Motion, Defendant uses no less than fifty pages to argue why

13

Plaintiff Classes are not entitled to relief under the Rehabilitation Act, yet nowhere does Defendant explain why this Court's conclusions regarding Plaintiff Classes substantial likelihood of success on the merits of this claim are in error or why the preliminary injunction should not be transformed into a permanent injunction. *See e.g.,* Plaintiff Classes' Motion at 8-20 of 24 (explaining why the Court's analysis supporting its issuance of the preliminary injunction is correct and should be relied upon for issuance of a permanent injunction on same issues).

### a. Directive 3.07 § III(H)(1)(c) violates the Rehabilitation Act.

Currently in effect is a preliminary injunction which prohibits Defendant from enforcing Directive 3.07 § III(H)(1)(c). This Court held that Plaintiff Classes were substantially likely to succeed on the merits of their Rehabilitation Act claim, *i.e.*, succeed in procuring a permanent injunction from this Court prohibiting enforcement of that Directive. The parties now appropriately bring before the Court the merits of the Rehabilitation Act and of the affirmative defense available to Defendant under that Act.

In its order granting a preliminary injunction to Plaintiffs, and subsequently extending that relief to Plaintiff Classes, this Court held that the Rehabilitation Act incorporates the limitations on disclosure of medical information contained within the Americans with Disabilities Act, 42 U.S.C. § 12112(d) *et seq.* ("ADA") (Doc. # 32 at 10-13.) Thus, the relevant provision before the Court is:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

42 U.S.C. § 12112(d)(4)(A). In response to Defendant's argument that the Rehabilitation Act did not incorporate the medical disclosure limitations found in the ADA, this Court stated:

The key question, then, is whether the Rehabilitation Act incorporates the ADA's concerns regarding the confidentiality of employee medical information and records. As the parties note, the Sixth Circuit has recognized that provisions of the ADA inform the Rehabilitation Act "because the purpose, scope, and governing standards of the 'acts are largely the same, cases construing one statute are instructive in construing the other.' " *McPherson v. Michigan High School Athletic Ass'n, Inc.*, 119 F.3d 453, 460 (6th Cir. 1997) (quoting *Doe v. Woodford County Bd. of Educ.*, 213 F.3d 921, 925 (6th Cir. 2000)). The City of Columbus argues, however, that such incorporation involves the substantive discrimination provisions of the statutes and not the confidential medical information provisions.

What this argument overlooks is that the limited disclosure protection furthers the anti-discrimination thrust of both statutory schemes. The restriction on broad disclosure is a protection against undue dissemination of sensitive information that could lead to discrimination.

*Id.* at 12.

Defendant now argues that the medical disclosure limitations that this Court found to be incorporated and upon which Plaintiff Classes rely "are not encompassed within the purpose or the letter of the Rehabilitation Act." (Doc. # 142 at 25 of 84; Doc. # 127 at 31 of 91.) Defendant cites to no authority to support its proposition nor does it address this Court's previous holding on the issue. Instead, Defendant argues that Plaintiff Classes challenge "the City's procedures for ensuring that employees on sick leave are legitimately entitled to sick leave. There is *no law* that prohibits an employer from ascertaining whether employees are legitimately using sick leave." (Doc. 142 at 36 of 84; Doc. # 127 at 42 of 91) (emphasis in originals). Further, Defendant contends that "[e]ven a summary review of the benefits and assistance available to City employees who need time off work for health concerns belies any theory that the City has violated the spirit or the purpose of the Rehabilitation Act." (Doc. # 127 at 42 of 91.) This line of argument, however, simply has no relevance to the inquiry at hand. That is, the issue is not whether an employer can ascertain whether employees are legitimately using sick leave or

whether Defendant offers benefits and assistance to its employees. The issue is the legality of Directive 3.07 § III(H)(1)(c)'s requirement that an employee provide to his or her immediate supervisor a doctor's note that includes a medical diagnoses of the nature of that individual's illness.

Along this same line of reasoning, Defendant contends that it should be granted summary judgment because the Rehabilitation Act does not prohibit an employer from requiring a doctor's note to verify sick leave or a supervisor's receipt of such a note. Again, Defendant frames the issue incorrectly. The issue is not whether a supervisor can receive a return-to-work medical verification. Neither is the issue whether an employer may require a doctor's note upon returning to work. As this Court just stated, the issue is whether it is permissible to require an employee to give the note or slip containing his or her medical diagnoses to his or her immediate supervisor, when the Division of Police maintains a human resources department. The Court pointed out Defendant's inaccurate assessment of the issue before the Court in its decision issuing preliminary injunctive relief to Plaintiff Classes:

> [T]he City of Columbus argues that "Plaintiffs cannot reasonably dispute the City is entitled to require its employees to substantiate their use of sick leave in certain situations by producing a doctor's note or slip upon returning to work." (Doc. # 13, at 10.) But no party disputes this principle. What [Plaintiffs] assert is that requiring an employee to give the note or slip to his or her supervisor is what is impermissible, not having to produce the note or slip to human resources. [Footnote: Of course, not every employer will have human resources personnel. The City of Columbus does, however, which creates a distinction and a confidentiality barrier between these personnel, whose jobs consist of handling medical information, and supervisors.]

(Doc. # 32 at 11.) It would have behooved Defendant, and saved all involved much time and resources, if it would have confined its arguments to the actual issue before this Court.

Based upon the foregoing, the Court **DENIES** Defendants' Motion as it relates to a

request for summary judgment on the basis that Directive 3.07 § III(H)(1)(c)'s requirement to provide a doctor's note to an immediate supervisor does not violate the spirit, purpose, or letter of the Rehabilitation Act.

Also in its preliminary injunction decision, this Court considered and rejected Defendant's argument that, assuming incorporation of those portions of the ADA concerned with medical information, Directive 3.07 § III(H)(1)(c) is not in violation of the provisions. Defendant argued that the provisions allow a supervisor access to a subordinate's medical records based on the fact that a supervisor is an agent of the employer, and therefore a "covered entity" or "employer" within the meaning of the ADA (and therefore the Rehabilitation Act). This Court rejected Defendant's argument, explaining:

> The ADA and its implementing rules explicitly provide for disclosure of such medical information to a supervisor only in select circumstances, and by so expressly limiting disclosure, the statutory scheme implicitly forecloses disclosure to supervisors for purposes that fall outside those narrow and specific purposes. If the ADA were intended to allow full disclosure to a supervisor in all instances, then there would be no need for the specific disclosure to a supervisor language. *See, e.g.,* 42 U.S.C. § 12112(d)(3)(B)(i). The city's view would mean that the explicit exception for supervisors was mere surplusage, but there is no basis to reach the conclusion that Congress did not intend for the specific language concerning supervisors to constitute a substantive provision.

*Id.* at 11-12. Defendant, again, does not address this Court's analysis and conclusion and merely reargues their previously rejected position, which is no more persuasive now than it was before. Consequently, the Court herein adopts its previous conclusion that the ADA and its implementing rules explicitly provide for disclosure of the type of medical information at issue in this case to a supervisor only in select circumstances and forecloses disclosure to supervisors for purposes that fall outside those narrow and specific purposes. Thus, the Court **DENIES** Defendants' Motion as it relates to this issue.

Next, Defendant argues that Plaintiff Classes are not entitled to pursue their claims because they have not proven that any of the class members are individuals with disabilities to whom the protections of those portions of the ADA concerned with medical information redound.  This Court disagrees.

As a sister district court recently explained with regard to this exact issue:

> As a threshold matter, GM argues that Plaintiff's claim fails because he is not disabled and, therefore, is not protected by the ADA.  Plaintiff need not be disabled, however, to challenge an allegedly improper medical inquiry under the statute.

*Wice v. Gen. Motors Corp.*, No. 07-10662, 2008 U.S. Dist. LEXIS 106727, at *5 (S.D. Mich. Dec. 15, 2008) (citing *Conroy v. New York State Dept. of Correctional Serv.*, 333 F.3d 88, 94-95 (2d Cir. 2003) and *Roe v. Cheyenne Mountain Conf. Resort, Inc.*, 124 F.3d 1221, 1229 (10th Cir. 1997)).  Indeed, *Conroy*, upon which our sister court relies, is directly on point in this regard:

> Therefore, this raises the question whether only those employees with unknown disabilities may challenge an impermissible medical inquiry or examination under the ADA.  Other circuit courts have found that a plaintiff need not prove a disability in order to challenge a medical examination or inquiry under 42 U.S.C. § 12112(d).  *See Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1229 (10th Cir. 1997); *Fredenburg v. Contra Costa County Dep't of Health Servs.*, 172 F.3d 1176, 1182 (9th Cir. 1999); *Cossette v. Minnesota Power & Light*, 188 F.3d 964, 969-70 (8th Cir. 1999); *see also Murdock v. Washington*, 193 F.3d 510, 512 (7th Cir. 1999) (noting the same in dicta); *but cf. Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 558-59 (5th Cir. 1998) (noting that whether an individual without a disability could challenge a preemployment medical examination or inquiry "involved difficult issues of statutory interpretation," but declining to determine the issue since plaintiff had not demonstrated any injury and therefore lacked standing).

> We agree with our sister circuits that a plaintiff need not prove that he or she has a disability unknown to his or her employer in order to challenge a medical inquiry or examination under 42 U.S.C. § 12112(d)(4)(A).  In contrast to other parts of the ADA, the statutory language does not refer to qualified individuals with disabilities, but instead merely to "employees."  42 U.S.C. § 12122(d)(4)(A).  Moreover, we agree with the Tenth Circuit that "it makes little sense to require an

employee to demonstrate that he has a disability to prevent his employer from inquiring as to whether or not he has a disability." *Roe*, 124 F.3d at 1229. We also note that [Equal Employment Opportunity Commission ("EEOC")] enforcement guidance supports this interpretation. *See* Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees Under the [ADA], (EEOC, July 27, 2000), available at http://www.eeoc.gov/docs/ guidance-inquiries.html ("This statutory language makes clear that the ADA's restrictions on inquiries and examinations apply to all employees, not just those with disabilities.").

*Conroy*, 333 F.3d at 94-95.

While neither *Conroy* nor *Wice* is binding upon this Court, the Court finds their analysis persuasive and their conclusions correct on this issue. That is, a plaintiff need not prove that he or she has a disability in order to challenge Directive 3.07 § III(H)(1)(c)'s medical disclosure requirement under 42 U.S.C. § 12112(d)(4)(A). Thus, the Court **DENIES** Defendant's request for summary judgment based on Plaintiff Classes failure to show that any of the class members are individuals with disabilities.

Defendant next argues that it should be granted summary judgment on Plaintiff Classes' Rehabilitation Act claim because "Directive 3.07 § III(H)(1)(c) is consistent with the widespread and legitimate business practice of verifying sick leave." (Doc. # 142 at 44 of 84; Doc. # 127 at 50 of 91.) This argument fails for two glaringly obvious reasons. First, as the Court has already pointed out, Defendant inaccurately frames the issue before the Court. The issue is not whether an employer may verify its employees' sick leave, but whether requiring employees to provide confidential medical information to their immediate supervisor in the circumstances here is permissible.

Second, accepting Defendant's argument as true on its face, *i.e.*, that it is widespread practice to permit employers to require employees to provide confidential medical information to

their immediate supervisor before being permitted to return to work, it does not translate into the proposition that the practice is legal. Thus, the Court **DENIES** Defendants' Motion regarding its request for summary judgment based upon the argument that Directive 3.07 § III(H)(1)(c) is consistent with the widespread practice of verifying sick leave.

Finally, Defendant contends that Directive 3.07 § III(H)(1)(c)'s requirement that class members submit a return to work physician's note containing the nature of their illness is not illegal because the Directive leaves the extent of the information to be contained in the note to the judgment of the physician. Defendant's argument misses the mark. The fact that the Directive itself requires "a general diagnoses is sufficient to trigger the protections of the ADA under this provision [42 U.S.C. § 12112(d)]." *Conroy*, 333 F.3d at 95 (affirming the district court's grant of summary judgment to plaintiff on this point). *See also Pennsylvania State Troopers Ass'n. v. Miller*, No. 1:06-CV-1079, 2008 U.S. Dist. LEXIS 76816 (M.D. Pa. Sept. 30, 2008) (holding that universal policy requiring employee to provide information on "the nature of the injury or illness" was an impermissible disability-related inquiry); *Transp. Workers Union, Local 100 v. N.Y. City Transit Auth.*, 341 F. Supp. 2d 432 (S.D. N.Y. 2004) (same). Defendant's argument that it is not in control of the extent or accuracy of the diagnoses the treating physician chooses to impart on the return to work document is irrelevant to the reasoning behind this conclusion. This Court agrees with the *Conroy* court's conclusion "that since general diagnoses may expose individuals with disabilities to employer stereotypes, the Policy implicates the concerns expressed in these provisions of the ADA" and, by incorporation the Rehabilitation Act. *Conroy*, 333 F.3d at 95-96.

Based on the above legal analysis and viewing the evidence before the Court in the light

most favorable to Defendant, the Court concludes that Directive 3.07 § III(H)(1)(c) violates the

Rehabilitation Act and that Defendant plans to continue to enforce Directive 3.07 § III(H)(1)(c)

absent an injunction prohibiting its enforcement. Thus, Plaintiffs are entitled to permanent

injunctive relief absent success on the available defense of business necessity. *See Conroy v.*

*New York State Dep't of Corr. Servs.*, 333 F.3d 88, 94 (2d Cir. 2003) (an employer may escape

liability by showing that the policy at issue is "job-related and consistent with business

necessity"). Accordingly, the Court **GRANTS** Plaintiff Classes' Motion and **DENIES**

Defendant's Motion on the Rehabilitation Act claim for relief.

### b. Defendant is not entitled to the business necessity defense.

With regard to the business necessity defense, in its decision on preliminary injunctive

relief, this Court explained:

> The only disclosure to a supervisor that is necessary or permissible is that
> information that targets necessary restrictions or accommodations for an
> employee. *See Conroy,* 333 F.3d at 94 (upholding decision that an employer's
> overly broad requirement of medical information under its return-to-work sick
> leave policy violated the ADA because "a general diagnosis is not a narrowly
> tailored inquiry into the employee's ability to carry out her job-related
> functions"). Unless there are necessary accommodations or restrictions, a
> supervisor need not know that an employee has HIV, had an abortion, or has
> venereal disease, to cite but a few of numerous pieces of highly personal
> information that may be irrelevant to the performance of employment duties but
> that could in some instances result in workplace embarrassment or outright
> discrimination.
>
> This same rationale similarly undercuts the city's aggressively intrusive
> policy of mandating disclosure to a supervisor of the medical information of
> family members, a curious practice that is even less related to any permissible
> justification. Supervisors, who are not fungible in this case with human resource
> personnel, are on a need-to-know basis, and the directive at issue improperly
> provides supervisors with otherwise confidential medical information even when
> they have no reason to possess such knowledge. This Court concludes that
> [Plaintiffs] have presented a compelling case that they are likely to prevail over
> the city's defense of business necessity.

*Id.* at 13-14.  Again, however, neither in Defendant's Motion, its memoranda supporting the motion, nor in opposition to Plaintiff Classes' Motion does Defendant address this holding.

Nowhere does Defendant even address *Conroy*–the case upon which this Court relied to conclude that Plaintiffs "presented a compelling case that they are likely to prevail over the city's defense of business necessity."  *Id.* at 14.

Similar to *Conroy's* analysis, discussed *supra*, regarding the content of policies requiring disclosure of medical information, this Court finds *Conroy's* analysis regarding the business necessity defense on point and persuasive:

> We endorse the views of the Ninth Circuit and hold that in proving a business necessity, an employer must show more than that its inquiry is consistent with "mere expediency."  An employer cannot simply demonstrate that an inquiry is convenient or beneficial to its business.  Instead, the employer must first show that the asserted "business necessity" is vital to the business.  For example, business necessities may include ensuring that the workplace is safe and secure or cutting down on egregious absenteeism.  The employer must also show that the examination or inquiry genuinely serves the asserted business necessity and that the request is no broader or more intrusive than necessary.  The employer need not show that the examination or inquiry is the only way of achieving a business necessity, but the examination or inquiry must be a reasonably effective method of achieving the employer's goal.

*Conroy*, 333 F.3d at 97-98 (citing *Cripe v. City of San Jose*, 261 F.3d 877, 890 (9th Cir. 2001)).

It is the employer's burden to demonstrate that the policy is job-related and consistent with business necessity.  *See id.*; *see also Wice*, 2008 U.S. Dist. LEXIS 106727, at *5 (same).

In the instant action, Defendant first argues that it is entitled to the business necessity defense against a Rehabilitation Act violation because Directive 3.07 § III(H)(1)(c) "enables the City to verify whether [the] paid sick leave is legitimate," to deter "abuse of the sick leave benefits," and to monitor the expenditure of public funds" for sick leave.  (Doc. # 127 at 29, 30,

Defendant's stated purpose of curbing sick leave abuse "may be a business necessity,

in some workplaces." *Transp. Workers Union*, 341 F. Supp. 2d at 447-48. To support its

argument that curbing sick leave abuse is a business necessity for the city, which is undeniably

responsible to the public for the expenditure of public funds, Defendant submits affidavit

testimony as to the goals underlying the Directive. However, Defendant presents no evidence as

to the costs of sick leave usage nor as to the facts of any alleged abuse. *See id.* at 440-41

(employer presented "compelling evidence," a mass of statistics and anecdotal evidence of the

costs of sick leave usage and the "significant level of sick leave abuse" among the city workers).

Indeed, as Plaintiff Classes correctly note, the type of evidence necessary is not available

because the city has never undertaken to analyze the incidence of malingering and sick leave

abuse among its employees. (*See* Doc. # 122, Chief James G. Jackson Dep. ("Jackson Dep.") at

67.) Moreover, Defendant has not addressed the sworn testimony of those individuals who

actually carry out the Directive. That testimony establishes that Defendant does not use an

employee's diagnosis contained in return to work doctor's notes as a vehicle for weeding out

abusers. Instead, Defendant requires the employee, upon reasonable suspicion, to submit to a

medical examination. (*See* Doc. # 121, Brooke K. Carnavale Dep. at 96.)

Thus, even when viewing the evidence in the light most favorable to Defendant, the

Court concludes that Defendant has failed to support its contention that Directive 3.07 §

III(H)(1)(c) serves the business necessity of tracking, deterring, and saving the cost of sick leave

abuse.

Defendant next argues that Directive 3.07 § III(H)(1)(c) is necessary for public safety,

because:

> Division employees are required to handle emergencies on a daily basis, including responding to life and death situations. Division employees must be able to exercise good judgment and sound discretion in inherently stressful situations. Exhibit D. ¶ 4; Exhibit B, ¶ 3. Police officers are armed and may be called on to make split second decisions whether or not to use deadly force. They must respond to emergency calls, often involving driving under dangerous conditions. They often work long hours. *Id.*

(Doc. # 127 at 27 of 91) (citing to Exs. attached to Aff. of Director of the Department of Public Safety, Mitchell J. Brown). Thus, Defendant concludes that the medical diagnosis contained in the doctor's note is necessary to ascertain fitness for duty. Again, however, Defendant fails to present any evidence of how a general medical diagnosis provided to a medically untrained supervisor "genuinely serves" that asserted business necessity or is "a reasonably effective method of achieving" Defendant's stated goal. *Conroy*, 333 F.3d at 97-98. Defendant also fails to even try to explain how the request for the medical information is no broader and no more intrusive than necessary to serve that asserted business necessity. Indeed, the Court finds that it is simply not possible to show that the Directive's requirement to submit a medical diagnosis is no broader and no more intrusive than is necessary to show fitness for duty. All that is necessary to allow an employee to safely return to his or her job is a doctor's note indicating that the employee is fit for duty. Moreover, here, like in *Pennsylvania State Troopers Ass'n*, another policy allows for an examination in the event an employee is suspected as being unfit for duty. *See Pennsylvania State Troopers Ass'n*, 2008 U.S. Dist. LEXIS 76816, at *22-23 n.7. Specifically, Directive 3.07 § II(D) provides for an examination if there is any doubt concerning an employee's fitness for duty. (*See* Doc. # 103-2; Jackson Dep. at 22-24.)

Thus, again, even when viewing the evidence in the light most favorable to Defendant, the Court concludes that Defendant has failed to support its contention that Directive 3.07 §

III(H)(1)(c) genuinely serves the business necessity of keeping the public safe by returning to work an employee fit to undertake his or her job duties.

Finally, Defendant asserts that Directive 3.07 § III(H)(1)(c) helps the city determine if an absence is an FMLA-qualifying absence and permits the city to initiate the process of accommodating an employee's potential disability. With regard to the FMLA, Defendant argues that supervisors should be permitted access to confidential medical information of a subordinate because the supervisor is in a better position to determine if an absence is FMLA-qualifying. This argument, however, is belied by the fact that if an employee seeks to have leave designated FMLA, the supervisor has nothing to do with the decision. (*See* Doc. # 123, Gary Dunlap Dep. ("Dunlap Dep.") at 124.) Additionally, if an employee takes FMLA leave, a doctor's note upon return is not required. *Id.* at 127. Moreover, determining whether an absence is FMLA-qualifying is far from being "vital" to Defendant's administration of the Division of Police, and even if it were, Directive 3.07 § III(H)(1)(c) does not genuinely serve that stated purpose.

With regard to the accommodation of disabilities, the testimony before the Court shows that supervisors have nothing to do with the accommodations process. (*See* Dunlap Dep. at 32-34.) Defendant provides not a single instance in which an employee's submission of a doctor's note to a supervisor led to any discussion of an accommodation. Thus, even though accommodating disabilities may in some circumstances be seen as "vital" to the administration of a business, there is absolutely no evidence that Directive 3.07 § III(H)(1)(c) serves that stated purpose.

Accordingly, even when viewing the evidence in the light most favorable to Defendant, the Court concludes that Defendant has failed to support its contention that Directive 3.07 §

25

III(H)(1)(c) genuinely serves the stated business necessities of determining whether an absence was an FMLA-qualifying absence or initiating the process of accommodating an employee's potential disability, that either of these proposed defenses is vital to the administration of the Division, that the defenses are a reasonably effective method of achieving Defendant's stated goal, or that the Directive is no broader or intrusive than necessary to serve these asserted purposes.  Consequently, the Court **DENIES** Defendant's request for summary judgment on Plaintiff Classes' Rehabilitation Act claim based on Defendant's entitlement to the business necessity defense.

### 5.  Plaintiff Classes are entitled to summary judgment on their Section 1983 claim for injunctive relief.

This Court has already determined that Plaintiffs are entitled to a preliminary injunction under Section 1983, concluding that Plaintiffs were substantially likely to succeed on the merits of their request for permanent injunctive relief.  (Doc. # 32 at 14-19.)  Defendant fails to address this Court's previous holding, and except for its first argument, simply re-argues its position which was considered and rejected by this Court in its decision on preliminary injunctive relief.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988);  *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).   Here, Plaintiff Classes allege that Directive 3.07 § III(H)(1)(c) violates the privacy rights encompasses in the First, Fifth and Fourteenth Amendments to the Constitution.

In their request for summary judgment on Plaintiff Classes' Section 1983 claim Defendant first argues that, "to the extent Plaintiffs are claiming their cause of action arises

under the Rehabilitation Act, they do not have an independent § 1983 claim." (Doc. # 142 at 74 of 84 citing *Blake B. v. Council Rock Sch. Dist.*, 2008 U.S. Dist. LEXIS 78329 (E.D. Pa. Oct. 3, 2008)). Defendant expands no further on this argument and Plaintiff Classes do not respond to this argument at all.

The case upon which Defendant relies, *Blake B.*, relies upon a recent *en banc* decision by the United States Court of Appeals for the Third Circuit, *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 803-07 (3d Cir. 2007), which held that the nature of the remedial scheme under the Rehabilitation Act was intended to supplant, as opposed to complement, Section 1983. No court in the Sixth Circuit has cited to *A.W.* However, as the Court in *A.W.* points out, the Sixth Circuit in *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 723 (6th Cir. 1996) held that the remedial scheme in Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688, is not comprehensive and does not supplant a cause of action under Section 1983. *A.W.*, 486 F.3d at 805. As to the *Lillard* decision and a decision from the United States Court of Appeals for the Eighth Circuit, the *A.W.* court opined:

> These courts, however, did not consider the implied private right of action under Title IX as part of the statute's "remedial scheme." We disagree with this approach.

*Id.* (citing *Lillard*, 76 F.3d at 723 and *Crawford v. Davis*, 109 F.3d 1281, 1284 (8th Cir. 1997)). Without any precedent and no argument as to why this Court should adopt the decision of the Third Circuit, which disagreed with the Sixth Circuit's analysis on a case that instructed the *A.W.* decision, this Court finds it prudent to decline an extensive analysis on the subject and to decline to rule in accordance with Third Circuit.

Instead, the Court will discuss briefly, and incorporate fully, is previous holding with

regard to Plaintiff Classes' Section 1983 claim for relief, in which the Court considered and

rejected the arguments Defendant makes currently in its motion, supporting memorandum, and

memorandum opposing Plaintiff Classes' Motion.  (Doc. # 32 at 14-19.)

With regard to the city's first argument:

The City of Columbus asserts that the Sixth Circuit refuses to recognize a constitutional right to confidentiality of information in this context.  The cases to which the city directs this Court present a different context than today's right to privacy in the employment context.  *See, e.g., J. P. v. DeSanti*, 653 F.2d 1080, 1088 (6th Cir. 1981) (addressing "constitutional right to nondisclosure of juvenile court records").  But while declining to recognize a general constitutional right to nondisclosure in those specific circumstances, the Sixth Circuit noted in *DeSanti* the larger issue of whether the right to privacy extends to other situations, which could include the context surrounding the facts *sub judice*.  *See id.* at 1089 ("Absent a clear indication from the Supreme Court we will not construe isolated statements in *Whalen* [*v. Roe*, 429 U.S. 589, 599-600 (1977)] and *Nixon* [*v. Admin. of Gen. Serv.*, 433 U.S. 425, 457 (1977)] more broadly than their context allows to recognize a general constitutional right to have disclosure of private information measured against the need for disclosure.") & 1090 n.5 ("We are not alone in our inability to limit or define the right of privacy.").  The appellate court ultimately concluded that "the Constitution does not encompass a general right to nondisclosure of private information."  *Id.* at 1090.  *See also Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 574 (6th Cir. 2002) ("Since *DeSanti*, this Court has not strayed from its holding, and continues to evaluate privacy claims based on whether the interest sought to be protected is a fundamental interest or an interest implicit in the concept of ordered liberty.").

The City of Columbus posits that the foregoing Sixth Circuit precedent, which imposes a "fundamental liberty interest" requirement not shared by other some other circuits, defeats the argument by [Plaintiffs] that they are likely to prevail on the merits of their due process claims.  This precedent does not necessarily defeat, however, the moving plaintiff's assertion of a constitutional right.

*Id.* at 14-15.  This Court then went on to explain that, "although declining to recognize a general

constitutional right to nondisclosure of medical information, the Sixth Circuit has expressly

recognized a cognizable right to privacy when medical information regarding select private

matters is involved."  *Id.* at 17 (citing *Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998)).  The Court

then concluded, and now concludes in the instant context:

> Thus, applying the *Bloch* rationale here, the Court is left with a directive that does not accommodate the constitutional rights of [Plaintiffs]. Division Directive 3.07 § III(H)(1)(c) does not call for specific or narrowed disclosure to a supervisor; rather, it mandates disclosure to a supervisor of medical information in all cases, regardless of the content or nature of that information. Certainly, the privacy right recognized in *Bloch* is not absolute. *Bloch* in fact cited with approval *In re Zuniga*, 714 F.2d 632 (6th Cir. 1983), in which the court of appeals explained that disclosure of personal medical information only to the minimal extent necessary to promote a proper interest is permitted. But Division Directive 3.07 § III(H)(1)(c) is an across-the-board mandate that does not consider minimal disclosure (*i.e.*, disclosure of information to human resources and, only when and as necessary, to a supervisor for accommodation or restriction purposes). And the city's purported interest supporting the disclosure to a supervisor–staffing and ascertaining return-to-work fitness–fails to cure the unnecessarily intrusive constitutional violation. There is no indication that disclosure to a supervisor satisfies these needs or is otherwise necessary. Determining staffing or the ability to dispatch police do not involve ascertaining whether an employee has genital warts, to cite one obvious if unseemly hypothetical example.

*Id.* at 18-19. The Court adopts this analysis and conclusion here, holding that Directive 3.07 § III(H)(1)(c) "is an overly broad provision that sweeps into its unlimited scope both disclosures that the Sixth Circuit may deem permissible and disclosures that the Sixth Circuit would condemn." *Id.* Therefore, even when viewing the evidence in the light most favorable to Defendant, the Court concludes that Directive 3.07 § III(H)(1)(c) "encompasses unwarranted intrusion into all areas of an employee's personal medical information without a sufficiently exculpatory animus" and, therefore, violates the privacy provisions found in the United States Constitution.

Accordingly, the Court **DENIES** Defendant's Motion as it relates to Plaintiff Classes' Section 1983 claim and **GRANTS** Plaintiff Classes' Motion on that claim.

**6. Defendants are not entitled to summary judgment on Plaintiffs' claims for compensatory damages.**

Defendants argue that because they are entitled to summary judgment on Plaintiffs' claim for injunctive relief, they are necessarily entitled to summary judgment on Plaintiffs' damages claims. However, because the Court finds that not only are Defendants not entitled to summary judgment on Plaintiffs claim for injunctive relief but that Plaintiffs are entitled to the injunctive relief, Defendants' argument has been rendered moot.

Accordingly, the Court **DENIES** Defendant's request for summary judgment on Plaintiff Classes' damages claims.

## IV. Conclusion

Based on the foregoing, the Court **DENIES** Defendants' Motion (Doc. # 142), **DENIES IN PART and GRANTS IN PART** Plaintiff Classes' Motion (Doc. # 103), and **DENIES** Defendant's Motion to Strike Declarations (Doc. # 127). Specifically, the Court **GRANTS** Plaintiffs' request to issue a permanent injunction prohibiting Defendants from enforcing Directive 3.07III(H)(c)(1) and **DENIES** Plaintiffs' request related to the other subsections of Directive 3.07. The Court therefore **DECLARES** that Directive 3.07 § III(H)(1)(c) violates the Rehabilitation Act and Section 1983 and **ORDERS** that Defendant the City of Columbus is hereby **ENJOINED** and shall refrain from enforcing Directive 3.07 § III(H)(1)(c).

**IT IS SO ORDERED.**

**/s/ Gregory L. Frost**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**