# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

LISA LEE, et al.,

      Plaintiff,

v.

CITY OF COLUMBUS, et al.,

      Defendants.

Case No. 2:07-cv-1230
JUDGE GREGORY L. FROST
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff Veronica Conley's Motion for Partial Summary Judgment on the Issues of Interference with Rights Under the Family Medical Leave Act ("Conley's Motion") (Doc. # 112), Defendants' Motion for Summary Judgment as to the Individual Claims of Plaintiff Veronica Conley ("Defendants' Motion") (Doc. # 135), and Conley's request for oral argument on these two motions ("Conley's Request for Oral Argument") (Doc. # 168). For the reasons that follow, the Court **GRANTS** Defendants' Motion, **DENIES** Conley's Motion, and **DENIES** Conley's Request for Oral Argument.

## I. Background

Plaintiff Veronica Conley ("Conley") is a communication technician in the Department of Public Safety, Division of Police, Communications Bureau. Conley claims that her rights with regard to medical leave have been violated by her employer and numerous Division of Police supervisors and employees ("Defendants"). In the Third Amended Complaint, Conley brings claims for relief under the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 790, *et. seq.*, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et. seq.*, the First, Fifth and Fourteenth Amendments to the United States Constitution through 42 U.S.C. § 1983

("Section 1983"). (Doc. # 109.)

On May 6, 2009, Conley filed her motion for partial summary judgment. (Doc. # 112.) On June 1, 2009, Defendants filed their memorandum in opposition to Conley's Motion (Doc. # 159) and on June 8, 2009, Conley filed her reply brief in support or her motion (Doc. # 170).

On May 15, 2009, Defendants filed Defendants' Motion (Doc. # 135) and on June 8, 2009, Conley filed her memorandum in opposition to Defendants' Motion (Doc. # 168), wherein she requests oral argument on Defendants' Motion. On June 22, 2009, Defendants filed their reply brief in support of their motion. (Doc. # 173.)

## II. Standard

Rule 56 of the Federal Rules of Civil Procedure provides for judgment as a matter of law if there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue as to any material fact, the evidence "must be viewed in the light most favorable" to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

In ruling on a motion for summary judgment "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Glover*, *supra* (citing *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)). Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Id.*; Fed. R. Civ. P. 56(c).

### III. Analysis

#### A. The Family Medical Leave Act[1]

"The FMLA entitles qualifying employees to take up to twelve weeks of unpaid leave, without fear of termination, when the leave is taken for, *inter alia*, 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 446 (6th Cir. 2007) (citing 29 U.S.C. §§ 2612(a)(1)(D), 2614(a)(1)). There are two recovery theories available under the FMLA: the interference theory, pursuant to 29 U.S.C. § 2615(a)(1), and the retaliation theory, pursuant to 29 U.S.C. § 2615(a)(2). *Id.* (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006)). Here, Conley alleges claims for relief under both theories.

**1. Conley's FMLA claim based upon the interference theory**

Both Conley and Defendants move for summary judgment on Conley's FMLA claim brought under the interference theory of recovery.

---

[1] The Court notes it considered the supplemental authority Conley submitted in support of her arguments related to her FMLA claims. (*See* Doc. # 187.)

> The FMLA prohibits qualifying employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under th[e] [FMLA]." 29 U.S.C. § 2615(a)(1). To prevail under the interference theory, the employee must establish the following:
>
>> (1) he is an "[e]ligible employee," 29 U.S.C. § 2611(2); (2) the defendant is an "[e]mployer," 29 U.S.C. § 2611(4); (3) the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1); (4) the employee gave the employer notice of his intention to take leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee FMLA benefits to which he was entitled.
>
> *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). The employee must establish these elements by a preponderance of the evidence. *Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 335 (6th Cir. 2005).

*Id.* at 447. The fifth element of the above test can be met by showing that the taking of FMLA leave was a "negative factor" in any adverse employment action by the employer. *Id.* (citing *Pharakone v. Nissan N. Am. Inc.*, 324 F.3d 405, 408 (6th Cir. 2003)).

In the instant action, the parties dispute only the fifth element of the test to establish whether Defendants interfered with Conley's rights under the FMLA. Conley contends that Defendants interfered with her rights under the FMLA by relying upon her FMLA qualifying absences to keep her on the "sick leave abuse list" and by suspending her for failing to properly report an FMLA qualifying absence. This Court disagrees.

### a. Sick leave abuse list

Under the collective bargaining unit to which Conley is subject, employees whose absence records meet certain indicators of abuse are subject to having their absence records reviewed by their supervisor who then recommends whether the employee should be placed on "sick leave verification," *i.e.*, what Conley refers to as the sick leave abuse list. (Doc. # 135-5 ¶ 13.) Once an employee is placed on the sick leave abuse list, he or she is required to provide a

4

doctor's note for all non-FMLA qualifying absences. *Id.* The employee's absence records are reviewed after 120 days and if the records no longer demonstrate indicators of sick leave abuse, the employee will be removed from the sick leave abuse list. *Id.* .

Conley alleges that she was placed on the "sick leave abuse" list at least in part because of her October 16, 2007 FMLA approved absence. Conley avers that being placed on the sick leave abuse list "discouraged" her from using her available FMLA leave and that she would "avoid using FMLA leave to mark off even though [she] would otherwise have marked off FMLA." (Doc. # 113 at 7 of 127.)[2] Conley requests prospective injunctive relief that would prevent Defendants from using any of her FMLA approved absences to place her on the sick leave abuse list in the future. In opposition to Conley's argument, and in support of their own motion for summary judgment, Defendants set forth uncontroverted evidence showing that the Division of Police policy is to use only non-FMLA absences to support an employees placement on the sick leave abuse list and that Conley was not placed on the list based upon FMLA approved absences. Therefore, Defendants argue that they did not interfere with Conley's rights under the FMLA based upon her being placed on the sick leave abuse list. This Court agrees.

First, with regard to Conley's October 16, 2007 absence, the parties agree that it was not approved as FMLA qualifying until October 30, 2007. Further, the uncontroverted evidence shows that the paperwork that Conley's supervisor possessed at the time of her placement on the sick leave abuse list reflected that the absence was a non-FMLA approved absence. Consequently, at the time Conley was placed on the sick leave abuse list it was because of non-

---

[2]In citing to the parties' briefing, the Court uses the page number assigned by the electronic filing system (*e.g.*, "at 8 of 32").

FMLA approved absences. Further, Conley requests only that this Court prohibit Defendants from applying its policy of using FMLA approved leave to place an employee on the sick leave abuse list. Here, even if Defendants made a mistake in not retroactively changing the designation of the October 16, 2007 mark off, such mistake is not evidence of the Division of Police maintaining a policy of relying upon FMLA qualifying leave to place an employee on the sick leave abuse list. To the contrary, the undisputed evidence shows that the current policy, that was in effect for at least a year before this action was filed, is that FMLA qualifying absences are not counted when assessing whether an employee is placed upon the sick leave abuse list. The only evidence to which Conley points that disputes this fact is Plaintiff Paula Lee's affidavit in which Lee testifies about events that occurred to her in 2005, based upon a previous Division of Police policy that is no longer in effect.

Finally, the Court notes that the evidence before it is contrary to Conley's testimony that she was discouraged from using FMLA leave. Indeed, in 2008, after Conley's October 2007 absence and subsequent placement on the sick leave abuse list, Conley used 477.4 hours of her 480 available hours of FMLA leave.

### b. 15-day suspension

The parties do not dispute that on December 4, 2007, Conley marked off work by calling the Division of Police's Information Desk and informing the officer on duty that she was marking off for FMLA leave. The officer pressed Conley for more information related to the nature of the call off and Conley declined to provide any further information. Conley testified that she also informed her supervisor that she was marking off for FMLA leave. On December 26, 2007, Conley was disciplined for marking off incorrectly and was given a 15-day suspension.

6

Conley argues that Defendants interfered with her FMLA rights by suspending her for taking FMLA approved leave.

Defendants, however, present uncontroverted evidence that shows that Conley was not disciplined for taking FMLA leave, but instead was disciplined for not following the Division of Police's mark off policy. The policy at issue is Division of Police Directive 3.07 § 3.07 III(B) which provides:

> B. Reporting Illness or Injury When Off Duty
>
> 1. Notify the Information Desk prior to the start of your tour of duty.
>
> 2. If the mark off is of a personal or sensitive nature:
>
> a. Advise the Information Desk officer to indicate "sick–personal illness" and then,
>
> b. During business hours on the first work day after the mark off, contact [the Employee Benefits Unit] EBU to provide the necessary details.

(Doc. # 135-4 at 11 of 19). Pursuant to this policy, employees who are off duty and wish to call off for another shift must call the Information Desk prior to the start of their shift, which Conley did. If the employee prefers not to tell the Information Desk officer the nature of the sickness, like Conley during her December 4, 2007 call, the employee must call EBU and provide the necessary details of the mark off the next business day, which Conley did not do.

In this regard, Conley argues that she should not have been required to abide by the policy and to call EBU to provide information specifically concerning the December 4, 2007 mark off because Defendants already knew she had an FMLA certified condition. This argument, however, does not support Conley's contention that she should not have been required to comply with the call-in section of the Directive. That is, while it is true that Defendants had

7

certified Conley as having a particular serious health condition that qualified her be on FMLA leave, Defendants would have no way of knowing that Conley was taking FMLA leave for that particular condition on December 4, 2007. When Conley called in on December 4, 2007, saying no more than she was marking off for FMLA, she could have been taking leave for another health condition of her own or a family member's that may or may not have been FMLA qualifying. Defendants could not have known how to properly record Conley's December 4, 2007 absence with the information Conley gave. *See Manns v. ArvinMeritor*, Inc., 291 F. Supp. 2d 655, 659-60, 62 (N.D. Ohio 2003) (employer has duty under the FMLA's implementing regulations to investigate and verify that leave is or is not FMLA qualifying).

Conley next argues that she should not have been required to abide by the Directive because it is a violation of the FMLA to require her to comply with a policy that is a more stringent policy than is provided for under the FMLA. Conley relies upon *Maynard v. Total Image Specialists, Inc.*, 478 F. Supp. 2d 993 (S.D. Ohio 2007), arguing that "this Court has held that 'an employer's internal policies regarding leaves of absence do not apply to an employee to the extent that the policies conflict or are more stringent than the requirements of the FMLA.' " (Doc. # 112 at 8-9 citing *Maynard*, 478 F. Supp. 2d at 1000). Conley, however, misreads *Maynard* by taking this quotation out of context. The issue to which the Court was referring in *Maynard* was whether an employee "needs to comply with the requirements of the FMLA to invoke its protection, even if those requirements conflict with an employer's internal policies." *Maynard*, 478 F. Supp. 2d at 1000. That is, what type of notice is necessary to invoke the protections of the FMLA. Here, there is no dispute that Conley invoked the protection of the FMLA–the December 4, 2007absence was considered FMLA approved. The issue here is

8

whether Conley may be disciplined for failing abide by a sick leave policy that requires a certain procedure for calling off when the illness called off for is an FMLA qualifying absence.

Defendants point the Court to *Callison v. City of Philadelphia*, 430 F. 3d 117, 120 (3rd Cir. 2005), as support for the proposition that its sick leave call-in policy does not violate the FMLA. This Court finds *Callison* on point and persuasive. In *Callison*, the Third Circuit considered the employee-plaintiff's claim that the defendant-employer's call-in requirement in its sick leave policy should not have applied to him while he was on FMLA leave. The employee argued that his FMLA rights were interfered with because he was issued two suspensions while on FMLA leave for not abiding by the employer's call-in policy. The court held the purpose of the FMLA was not compromised by the city employer's policy because it "neither prevents employees from taking FMLA leave nor discourages employees from taking FMLA leave." *Id.* at 120. The court explained that the call-in procedure did "not serve as a pre-requisite to entitlement of FMLA leave. Rather, the procedure merely set[] forth obligations of employees who are on leave, regardless of whether the leave is pursuant to the FMLA." *Id.*

Like the policy at issue in *Callison*, the Division of Police's policy that is at issue here neither prevents employees from taking FMLA leave nor discourages employees from taking FMLA leave. And, also like the policy in *Callison*, the call-in procedure here does not serve as a pre-requisite to entitlement of FMLA leave. Indeed, Defendants provided Conley with the entitlements set forth in the FMLA regardless of the fact that she failed to follow the call-in procedure. The Directive merely sets forth obligations of employees who are on leave, regardless of whether the leave is pursuant to the FMLA. The FMLA does not prevent an employer from enforcing its lawful attendance polices. *Brenneman v. Med. Cent. Health Sys.*,

9

366 F. 3d 412 (6th Cir. 2004). Conley is simply "not entitled to special protection from Defendant's company rules merely because she invoked her FMLA rights." *Brock v. Honda of America*, No. 2:06-cv-257, 2007 U.S. Dist. LEXIS 92028, at *24 (S.D. Ohio 2007).

### c. Conclusion - FMLA interference claim

Based on the foregoing, the Court concludes that even when viewing the evidence in the light most favorable to Conley, no reasonable jury could return a verdict in her favor on her FMLA interference claim for relief. *See Anderson*, 477 U.S. at 248. Thus, the Court **GRANTS** Defendants' Motion on that claim.

### 2. Conley's FMLA claim based upon the retaliation theory

Only Defendants move for summary judgment on Conley's FMLA claim brought under the retaliation theory of recovery. Defendants argue that, under the *McDonnell Douglas* burden-shifting framework, Conley must set forth a *prima facie* case of FMLA retaliation, Defendants then have the burden of articulating a legitimate nondiscriminatory reason for the alleged adverse employment action, and the burden then shifts back to Conley to show that the relied upon nondiscriminatory reason was pretextual and that unlawful retaliation was the real reason for the adverse action. (Doc. # 135 at 21 of 33 citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). *See also Skrjanc v. Great Lakes Power Serv. Co.*, 272 F. 3d 309 (6th Cir. 2001) (holding that the *McDonnell Douglas* burden-shifting framework should be applied to FMLA retaliation claims that are based upon indirect evidence).

However, in her opposition memorandum, Conley argues that this Court should apply the mixed-motive analysis set forth by the United States Supreme Court in *Desert Palace v. Costa*, 539 U.S. 90 (2003) as opposed to the *McDonnell Douglas* burden-shifting analysis. (Doc. # 168

10

at 3-4 of 15.) A mixed-motive analysis permits a finding of liability where the employer's retaliatory action is motivated by both unlawful considerations and legitimate reasons. *See Desert Palace*, 539 U.S. at 101. A claim survives summary judgment in a mixed-motive analysis if "there are any genuine issues of material fact concerning the defendant's motivation for its adverse employment decision." *White v. Baxter Healthcare Corp.*, 533 F. 3d 381, 402 (6th Cir. 2008).

Conley argues that: "All federal circuits to consider the issue have adopted the mixed-motive analysis in FMLA retaliation. *See, e.g.*, *Colburn v. Parker*, 429 F. 3d 325, 335 (1st Cir. 2005)." (Doc. # 168 at 3 of 15.) Conley's assertion is incorrect. *Colburn* specifically declined to decide the issue stating: "Whether a mixed-motive analysis is available at all in an FMLA case for retaliation is an open question, and we do not resolve it here." *Id.* at 336, n.8 (indicating that the "issue has been adverted to but avoided by three circuits" including the Sixth Circuit in *Gibson v. City of Louisville*, 336 F.3d 511 (6th Cir. 2003)). However, whether Conley's case consists of direct or indirect evidence or some combination of the two is, for the reasons discussed below, ultimately irrelevant. Thus, the Court declines to opine on this issue.

In the Third Amended Complaint, Conley claims that Defendants retaliated against her by suspending her for 15 days because she opposed the unlawful practice of requiring disclosure of her medical condition to unauthorized persons. (Doc. # 109 ¶¶ 203-206.) However, Conley clearly testified that she did not state this opposition until after she was told that she was receiving the 15-day suspension. (Doc. 116-2 at 32, 43.) Consequently, Defendants could not have suspended her because of her opposition to the policy of requiring disclosure of medical conditions to unauthorized persons because Conley had not opposed that alleged unlawful

11

practice until after she received notice of the 15-day suspension.

Accordingly, like Conley's FMLA interference claim for relief, no reasonable jury could return a verdict in her favor on her FMLA retaliation claim. *See Anderson*, 477 U.S. at 248. Thus, the Court **GRANTS** Defendants summary judgment on Conley's FMLA retaliation claim for relief.

## B. The Rehabilitation Act

In her memorandum in opposition to Defendants' Motion, Conley specifically abandons her claim for relief under the Rehabilitation Act. Accordingly, the Court **GRANTS** Defendants' Motion as it relates to that claim.

## C. 42 U.S.C. § 1983

To state a claim under Section 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F. 3d 810, 814 (6th Cir. 1996). In the Third Amended Complaint, Conley alleges that Defendants violated her rights secured by the First, Fifth, and Fourteenth Amendments to the United States Constitution by "retaliating against her for opposing what she reasonable believed to be the unlawful practice of requiring disclosure of private medical information." This claim fails for two reasons.

First, as discussed above, Defendants did not, indeed could not have, retaliated against Conley because the 15-day suspension was given to Conley before Conley complained of the alleged unconstitutional practice.

Second, Conley has failed to meet her burden of setting "forth specific facts showing that

there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). Defendants have met their burden of informing the Court of the basis for their motion regarding Conley's Section 1983 claim for relief, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Once the burden of production has so shifted, Conley cannot rest on her "pleadings or merely reassert [her] previous allegations." *Glover v. Speedway Super Am. LLC*, 284 F. Supp. 2d 858, 862 (S.D. Ohio 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, Rule 56(e) "requires the nonmoving party to go beyond the pleadings"" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324. This Conley has failed to do. Indeed, in her memorandum in opposition to Defendants' Motion, Conley does not address her Section 1983 claim at all. This Court is not "obligated to wade through and search the entire record for some specific facts that might support" Conley's Section 1983 claim. *Glover*, 284 F. Supp.2d at 862.

Accordingly, the Court **GRANTS** Defendants' Motion as it relates to Conley's Section 1983 claim for relief.

### D. Conley's Request for Oral Argument

Pursuant to the Local Rules for the Southern District of Ohio, Conley has requested oral argument on Conley's Motion and on Defendants' Motion. (Doc. # 168 citing to S.D. Ohio Civ. R. 7.1(b)(2)). The Court concludes that oral argument is not "deemed to be essential to the fair resolution of the" motions before it, and therefore **DENIES** Conley's request.

### IV. Conclusion

Based on the foregoing, the Court **GRANTS** Defendants' Motion (Doc. # 135), **DENIES**

Conley's Motion (Doc. # 112), and **DENIES** Conley's Request for Oral Argument (Doc. # 168).

The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

    **IT IS SO ORDERED**.

                                          **/s/ Gregory L. Frost**
                                        **GREGORY L. FROST**
                                        **UNITED STATES DISTRICT JUDGE**