# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

LISA LEE, et al.,

        Plaintiff,                     **Case No. 2:07-cv-1230**
                                              **JUDGE GREGORY L. FROST**
        v.                        **Magistrate Judge Norah McCann King**

CITY OF COLUMBUS, et al.,

        Defendants.

## <u>OPINION AND ORDER</u>

This matter is before the Court for consideration of Plaintiff Lisa Lee's Motion for Partial Summary Judgment on her Family [and] Medical Leave Act Interference Claim and on her Defamation Claim ("Lee's Motion") (Doc. # 111), Defendants' Motion for Summary Judgment as to Plaintiff Lisa Lee ("Defendants' Motion") (Doc. # 134), Plaintiff Lisa Lee's request for oral argument on these motions ("Lee's Request for Oral Argument") (Doc. # 164), and Plaintiff Lisa Lee's Motion to Strike Affidavit of Pamela J. Gordon, Exhibits Attached Thereto, and Related Argument in Defendants' Reply to Plaintiff Lisa Lee's Memorandum Contra Defendants' Motion for Summary Judgment as to Plaintiff Lisa Lee [Doc. # 177] and Alternative Motion for Leave to File Sur-Reply ("Lee's Motion to Strike or to File Sur-Reply") (Doc. # 180). For the reasons that follow, the Court **DENIES** Lee's Motion, **GRANTS** Defendants' Motion, **DENIES** Lee's Request for Oral Argument, and **DENIES** as moot Lee's Motion to Strike or to File Sur-Reply.

## I. Background

Plaintiff Lisa Lee ("Lee") was employed as a communication technician in the Department of Public Safety, Division of Police, Communications Bureau from March 2000

through May 2006.  Lee alleges that she was constructively discharged on May 2, 2006.  Lee

filed this action on December 4, 2007, against her employer and numerous Division of Police

supervisors and employees ("Defendants").  Lee alleges claims for relief under the Family and

Medical Leave Act ("FMLA"), 29 U.S.C. 2601, *et. seq.*, the First, Fifth and Fourteenth

Amendments to the Constitution of the United States through 42 U.S.C. §1983 ("Section 1983"),

the Rehabilitation Act of 1973, as amended, 29 U.S.C. §790, *et. seq.*, Ohio Revised Code

Chapter 4112, and the common law of Ohio.  (Doc. # 109 ¶¶ 37-102, 239-253.)

On May 6, 2009, Lee filed Lee's Motion (Doc. # 111) and on June 1, 2009, Defendants

filed their memorandum in opposition to that motion (Doc. # 160).  On June 8, 2009, Lee filed

her reply brief in support of her motion (Doc. # 169).

On May 15, 2009, Defendants filed Defendants' Motion (Doc. # 134) and on June 8,

2009, Lee filed her memorandum in opposition to Defendants' Motion (Doc. # 164), in which

she requested oral argument.  In that memorandum, Lee also specifically abandoned her claim

for retaliation in violation of the Rehabilitation Act and her Section 1983 claim for retaliation in

violation of the First Amendment to the United States Constitution.  *Id.* at 10 of 64.[1]  On June 22,

2009Defendants filed their reply brief in support of their motion.  (Doc. # 177.)

On June 29, 2009, Lee filed Lee's Motion to Strike or File Sur-Reply (Doc. # 180) and

on July 8, 2009, Defendants filed their memorandum in opposition to that motion (Doc. # 182).

On July 28, 2009, Lee filed her reply brief in support of her motion.  (Doc. # 187.)

The pending motions are now ripe for review.

---

[1]In citing to the parties' briefing, the Court uses the page number assigned by the
electronic filing system (*e.g.*, "at 8 of 32").

2

## II.  Standard

Rule 56 of the Federal Rules of Civil Procedure provides for judgment as a matter of law if there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56(c).  In determining whether there is a genuine issue as to any material fact, the evidence "must be viewed in the light most favorable" to the nonmoving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

In ruling on a motion for summary judgment "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."  *Glover v. Speedway Super Am. LLC*, 284 F. Supp. 2d 858, 862 (S.D. Ohio 2003) (citing *InterRoyal Corp. v. Sponseller*, 889 F. 2d 108, 111 (6th Cir. 1989)).  Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties."  *Id.*; Fed. R. Civ. P. 56(c).

## III. Analysis

### A. The Rehabilitation Act

> To recover on a claim of discrimination under either the [Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA")][2] or the Rehabilitation Act, which in this circuit share the same substantive standard, "a plaintiff must show that: 1) he is an individual with a disability; 2) he is otherwise qualified to perform the job requirements, with or without reasonable accommodation; and 3) he was discharged solely by reason of his handicap."

*Jones v. Potter*, 488 F. 3d 397, 404 (6th Cir. 2007) (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996) and *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F. 3d 357, 363 n.2 (6th Cir. 2007)).

Lee first claims that Defendants discriminated against her by constructively discharging her based upon her degenerative spine condition. Lee next contends that Defendants discriminated against her by failing to accommodate her, which also led to her constructive discharge.

### 1. Disability Discrimination Based Upon Adverse Employment Action

Lee presents circumstantial, as opposed to direct, evidence of discrimination, and, as a result, the Court applies the familiar three step burden-shifting framework originally articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of*

---

[2]Lee argues that the ADA Amendments Act of 2008 ("ADAAA"), which took effect on January 1, 2009, Pub. L. No. 110-325, 122 Stat. 3553 (2008), is applicable to the instant action. (Doc. # 164 at 42 of 64.) Defendants, however, correctly contend that "[t]he amendments to the ADA are not retroactive and have no application to the case at bar." (Doc. # 177 at 5 of 22) (citing *Verhoff v. Time Warner Cable, Inc.*, 299 Fed. Appx. 488, 492 n.2 (6th Cir. 2008), *McDonald v. UPS*, No. 07-12022, 2009 U.S. Dist. LEXIS 47457, at *26 (E.D. Mich. June 5, 2009), and *Jones v. Wal-Mart Stores*, No.: 3:07-CV-461, 2009 U.S. Dist. LEXIS 47242, at *7-9 n.2 (E.D. Tenn. June 5, 2009) [(instructive analysis and gathering of cases)]. Consequently, the Court will not retroactively apply the ADAAA to this action.

*Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).  The initial burden rests with the plaintiff to establish a *prima facie* case of discrimination.  *Monette*, 90 F.3d at 1186.  If the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment decision.  *Burdine*, 450 U.S. at 253.  Should the employer carry this burden, then the burden returns to the plaintiff to prove by a preponderance of the evidence that the employer's proffered reason was in fact a pretext designed to mask illegal discrimination.  *See id.*  "[The plaintiff] can defeat summary judgment only if his evidence is sufficient to 'create a genuine dispute at each stage of the *McDonnell Douglas* inquiry.' "  *Jones v. Potter*, 488 F. 3d at 404 (citing *Macy*, 484 F.3d at 364).

   To establish a *prima facie* case of disability-based discrimination under the Rehabilitation Act, a plaintiff must establish each of the following five elements:

> (1) that he is disabled, (2) that he is otherwise qualified for the job, with or without reasonable accommodation, (3) that he suffered an adverse employment action, (4) that his employer knew or had reason to know of his disability, and (5) that, following the adverse employment action, either he was replaced by a nondisabled person or his position remained open.

*Jones*, 488 F. 3d at 404 (citing *Timm v. Wright State Univ.*, 375 F.3d 418, 423 (6th Cir. 2004) and *Monette*, 90 F. 3d at 1185 (setting forth the same *prima facie* elements under the ADA)). The final element "may also be satisfied by showing that similarly situated non-protected employees were treated more favorably."  *Id.* (citing *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995)).

   With regard to the first element of the *prima facie* case, the parties dispute whether Lee was disabled at the time of her alleged constructive discharge.  To be considered disabled under the Rehabilitation Act, an individual must (1) have a physical or mental impairment that

"substantially limits" him or her in at least one "major life activity," (2) have a record of such an impairment, or (3) be regarded as having such an impairment. *DiCarlo v. Potter*, 358 F. 3d 408, 418 (6th Cir. 2004) (quoting *Mahon v. Crowell*, 295 F. 3d 585, 589 (6th Cir. 2002), which cited to 29 U.S.C. § 705(20)(B) (Rehabilitation Act definition) and 42 U.S.C. § 12102(2) (ADA definition)). The first and third categories of disabilities are at issue in the present case.

### a. *Category (1): actually disabled*

There is no dispute that Lee's back condition qualifies as a physical impairment. Nor do Defendants dispute that the activities about which Lee alleges substantial limitation qualify as major life activities, *i.e.*, sitting, standing, lifting, walking, performing manual tasks, sleeping, and working. The parties disagree, however, as to whether Lee's back condition substantially limits one or more of these major life activities.

Substantially limits means that an individual is unable to perform a major life activity that the average person in the general population can perform; or is significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. *See* 29 C.F.R. § 1630.2(j)(1); *Penny v. United Parcel Serv.*, 128 F.3d 408, 414 (6th Cir. 1997). " 'Substantially limits' is difficult to define, but in the Supreme Court's words, 'substantially in the phrase substantially limits suggests considerable or to a large degree.' " *Mahon*, 295 F. 3d at 590 (citing *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002)).[3]

---

[3]This case was superseded in part by the ADAAA; however, as discussed *supra*, the ADAAA is inapplicable to this case.

With regard to the major life activities to which Lee claims substantial limitation, " 'working' is problematic." *Mahon*, at 295 F. 3d at 590 ("[T]here may be some conceptual difficulty in defining 'major life activities' to include work." citing *Sutton v. United Air Lines Inc.*, 527 U.S. 471, 492 (1999)[4]). "Because of the problems surrounding 'working,' [the court] shall treat it as suggested by the E[qual] E[mployment] O[pportunity] C[ommission], as a residual category resorted to only when a complainant cannot show she or he is substantially impaired in any other, more concrete major life activity." *Id.* (citing *Sutton*, 527 U.S. at 492, 29 C.F.R.§ 1630.2(j), and *Henderson v. Ardco, Inc.*, 247 F.3d 645, 650 (6th Cir. 2001)).

To support her claim of substantial limitation in the major life activities of sitting, standing, lifting, walking, performing manual tasks, and sleeping, Lee submits a letter from James J. Heaton, D.C. and her own deposition testimony. Dr. Heaton's report specifically states that at the relevant time period, Lee "was suffering" from back, shoulder, neck, and leg pain and that she, "will always, in [his] professional opinion, have difficulties sitting, standing, walking, or laying in one position (e.g. sleeping) for any prolonged time [and that] [s]he will always have difficulty bending and lifting, especially heavier objects." (Doc. # 171 at 152 of 162.) Lee also testified that during 2005 and 2006, if she sat for 45 minutes to an hour, she experienced "pain and numbness" in the right side of her back extending down her right leg. *Id.* at 12 of 162. The pain, she avers, was exacerbated during work. *Id.* During Lee's final months of employment she did not report to work; however, Lee applied for short term disability during that time period for stress and depression–not her back condition.

---

[4]This case was superseded in part by the ADAAA; however, as discussed above, the ADAAA is inapplicable to this case

This evidence is insufficient to show that Lee's back impairment considerably or to a large degree limited her ability to sit, stand, lift, walk, perform manual tasks, and sleep. Having "difficulty" performing major life activities is not the same as being substantially limited in those activities. Moreover, contrary to Lee's legal argument, "[a]ny impairment that only moderately or intermittently prevents an individual from performing major life activities is not a substantial limitation under the Act." *DiCarlo*, 358 F.3d 408 (citing *Mahon*, 295 F.3d at 591). Lee's condition is similar to the condition of the plaintiff in *Mahon*, in which the Sixth Circuit concluded that, although the plaintiff suffered a back impairment that "caused him distress and limited him in performing some activities," the evidence he presented did not demonstrate that he was severely restricted in any major life activities. *Mahon*, 295 F.3d at 591). Here, Lee too certainly suffers from a back impairment and that impairment limited her ability to perform some activities; however, it hardly significantly restricted her from engaging in the major life activities of sitting, standing, lifting, walking, performing manual tasks, and sleeping, and no evidence was submitted demonstrating otherwise.

Turning to Lee's alleged substantial limitation in her ability to work, the Sixth Circuit instructs that she must be limited not just from her particular job, but from a substantial class or broad range of jobs:

> To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Mahon*, 295 F. 3d at 591 (quoting *Sutton*, 527 U.S. at 492). Further, the court explained:

> To determine if the claimant is precluded from a substantial class or broad range

of jobs, we compare his access to jobs to the access available to a non-injured individual with similar training and experience, looking specifically to the labor market in the claimant's geographic vicinity.

*Id.* (citing *Sutton*, 527 U.S. 491-92 and *Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247, 253-54 (6th Cir. 2000)).

In the case *sub judice*, Lee asserts that her back condition precludes her from a substantial class of jobs, but it is not clear from what class she believes herself excluded. At one point she refers to " 'heavy lifting jobs' and 'jobs that involve manual labor' – neither of which [Lee] is now able to do." (Doc. # 164 at 47 of 64 citing 29 C.F.R. §1630.2.) However, the majority of Lee's argument is in regards to her inability to perform sedentary work. With regard to that class of jobs, apart from her own testimony, Lee offers the opinion of her chiropractor, Dr. Heaton, whose report indicates:

> In my professional opinion and due to her [back] condition, the type of work best suited for Ms. Lee is sedentary work, such as dispatching or other administrative work. It has been my experience with other patients with her condition that work involving repetitive activities or any type of lifting would immediately aggravate their conditions. Unfortunately, in order for her to be able to perform even sedentary work without an exacerbation, some reasonable accommodations would have to be made. It was obvious to me that she was aggravating her condition whenever she had to work over an eight hour shift or more than five days in a row.

(Doc. # 171 at 152 of 162.)

This opinion and her own self assessment, however, is simply insufficient to show preclusion from the class of jobs involving sedentary work. Even if Lee is similar to the other patients Dr. Heaton has treated and even if her work involving repetitive activities or any type of lifting would immediately aggravate her back condition, that does not mean that she is precluded from a substantial class or a broad range of jobs. *See Mahon*, 295 F. 3d at 591. Nor does the

opinion that working overtime aggravates Lee's back condition suggest that she was precluded from a substantial class or a broad range of jobs. *cf. Doren v. Battle Creek Health Sys.*, 187 F. 3d 595, 599 (6th Cir. 1999) (the inability to work in excess of eight hours per day does not constitute a disability). More importantly, Lee has presented no evidence to allow the Court to "compare h[er] access to jobs to the access available to a non-injured individual with similar training and experience, looking specifically to the labor market in the [her] geographic vicinity." *Id.* at 598 (no genuine issue of material fact raised because the plaintiff "failed to produce any evidence regarding the number of pediatrics nursing jobs from which she is excluded or the availability of pediatric nursing positions for which she is qualified"). Thus, Lee has failed to show that she is substantially limited in the major life activity of working.

The Court concludes that, even when viewing the evidence in the light most favorable to Lee, she has failed to show that she is substantially limited in any major life activity. Consequently, Lee cannot show that she is disabled under the Rehabilitation Act, which prevents her from setting forth *a prima facie* case of disability discrimination. Accordingly, the Court **GRANTS** Defendants' Motion as it relates to Lee's claim of disability discrimination based upon any alleged adverse actions.

### b. *Category (3): Being regarded as disabled*

Lee also asserts that Defendants regarded her as disabled. "This part of the [Rehabilitation] Act is intended to allow individuals to be judged according to their actual capacities, rather than through a scrim of 'myths, fears, and stereotypes' accruing around a perceived impairment." *Mahon*, 295 F. 3d at 592 (citing *Sutton*, 527 U.S. at 489-90).

To determine whether an individual is "regarded as disabled," we apply the test laid out in *Sutton*:

> There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.

527 U.S. at 489. To run afoul of the act, then, a covered entity must hold a mistaken belief that a claimant is disabled within the meaning of the [the Rehabilitation Act or the ADA]. *See Ross* [*v. Campbell Soup Co.,*] 237 F.3d [701,] 709 (6th Cir. 2001).

*Mahon*, 295 F. 3d at 592.

In the instant action, Lee argues that because Supervisor Crabtree gave Lee a "performance write-down" as a rusult of her back condition and because she took FMLA leave, the evidence "leads to the reasonable conclusion that the City regarded her as disabled." (Doc. # 164 at 48 of 64.) Even if this statement were true, which is not shown by the evidence submitted by Lee, it still does not indicate that Defendants regarded her as disabled under the Rehabilitation Act because Lee has not shown that Defendants held any mistaken belief about her. *See id.* ("Mahon has not shown that TVA regarded him as disabled under the [Rehabilitation Act] because he has not shown that TVA held any *mistaken* belief about him.") (emphasis in the original).

Thus, the Court concludes that, even when viewing the evidence in the light most favorable to Lee, she has failed to show that Defendants regarded her as disabled under the Rehabilitation Act, which prevents her from setting forth *a prima facie* case of disability discrimination. Accordingly, the Court **GRANTS** Defendants' Motion as it relates to Lee's claim of "regarded as" disability discrimination.

### 2. Disability Discrimination Based Upon Failure To Accommodate

> In order for a plaintiff to prevail on an allegation of handicap discrimination based on failure to accommodate, he must first establish a *prima facie* case by showing that: (1) he is an individual with a handicap . . . ; (2) he is qualified for the position . . . ; (3) the agency was aware of his disability; (4) an accommodation was needed, *i.e.*, a causal relationship existed between the disability and the request for accommodation; and (5) the agency failed to provide the necessary accommodation. Once the plaintiff has presented a *prima facie* case, the burden shifts to the employer to demonstrate that the employee cannot reasonably be accommodated, because the accommodation would impose an undue hardship on the operation of its programs. *Gaines v. Runyon*, 107 F. 3d 1171, 1175-76 (6th Cir. 1997) (citations omitted).

*DiCarlo*, 358 F. 3d at 419.

Here, the Court already determined that Lee cannot establish that she is an individual with a disability. This determination also prevents Lee from maintaining an action for failure to accommodate her for her disability. *See id.* Accordingly, the Court **GRANTS** Defendants' Motion as it relates to Lee's claim of disability discrimination for failure to accommodate.

### B. The Family Medical Leave Act[5]

"The FMLA entitles qualifying employees to take up to twelve weeks of unpaid leave, without fear of termination, when the leave is taken for, *inter alia*, 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.' " *Wysong v. Dow Chem. Co.*, 503 F. 3d 441, 446 (6th Cir. 2007) (citing 29 U.S.C. §§ 2612(a)(1)(D), 2614(a)(1)). There are two recovery theories available under the FMLA: the interference theory, pursuant to 29 U.S.C. § 2615(a)(1), and the retaliation theory, pursuant to 29 U.S.C. § 2615(a)(2). *Id.* (citing *Edgar v. JAC Prods., Inc.*, 443 F. 3d 501, 507 (6th Cir. 2006)).

---

[5]The Court notes it considered the supplemental authority Lee submitted in support of her arguments related to her FMLA claims. (*See* Doc. # 187.)

Here, Lee alleges claims for relief under both theories.

### 1. FMLA Claim Based Upon The Interference Theory

Both Lee and Defendants move for summary judgment on Lee's FMLA claim brought under the interference theory of recovery.

> The FMLA prohibits qualifying employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under th[e] [FMLA]." 29 U.S.C. § 2615(a)(1). To prevail under the interference theory, the employee must establish the following:
>
> > (1) he is an "[e]ligible employee," 29 U.S.C. § 2611(2); (2) the defendant is an "[e]mployer," 29 U.S.C. § 2611(4); (3) the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1); (4) the employee gave the employer notice of his intention to take leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee FMLA benefits to which he was entitled.
>
> *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). The employee must establish these elements by a preponderance of the evidence. *Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 335 (6th Cir. 2005).

*Wysong*, 503 F. 3d at 447. The fifth element can be met by showing that the taking of FMLA leave was a "negative factor" in any adverse employment action by the employer. *Id.* (citing *Pharakone v. Nissan N. Am. Inc.*, 324 F. 3d 405, 408 (6th Cir. 2003)). In the instant action, the parties dispute only the fifth element of the above test.

### a. *Post-termination actions*

On November 26, 2006, Defendant Lieutenant Frances Graumlich responded to an inquiry from Trooper Appleman of the Ohio State Highway Patrol concerning Lee's application for employment with them. Lee states that during this conversation, "Lt. Graumlich conveyed a host of negative information, including that Lee had 'received discipline for her excessive abuse of sick leave and FMLA.' " (Doc. # 111 at 10 of 19 citing Graumlich Depositon) Lee alleges

that this conversation prevented her from obtaining employment with the Highway Patrol. Lee argues that, Graumlich's action is sufficient to meet the fifth element of the test for FMLA interference because it was a negative factor in an adverse employment action. This Court disagrees.

First, Lee's citation to Graumlich's deposition is misleading. Graumlich does not testify that he told Trooper Appleman that Lee received discipline for her excessive abuse of sick leave and FMLA. During the deposition, Graumlich was asked to review the Ohio State Highway Patrol's Background Investigation Report on Lee, which stated that the "applicant has received discipline for excessive abuse of sick leave and FMLA." (Doc. # 113-4 at 86 of 132.) When asked about his conversation with Appleman, Graumlich testified that he did not "know where [Trooper Appleman]'s getting the FMLA" and that he did not tell Appleman that Lee was disciplined for taking FMLA leave. *Id.* Graumlich explained that he believes that the FMLA was only discussed with Appleman in the context of a discipline that was given to Lee for dishonesty. With regard to that incident, Graumlich told Appleman that Lee was disciplined for informing the information desk that she was calling off on FMLA because of her FMLA qualifying back problem and then called her supervisor and indicated that she was taking off work because of a migraine. *Id.* It is clear from the deposition that Graumlich did not testify that he informed the Highway Patrol that Lee was disciplined for abuse of FMLA.

Second, regardless of Graumlich's actions or testimony related to those actions, Lee still cannot establish the fifth element of an FMLA interference claim based upon the Highway Patrol's failure to hire her for allegedly abusing or using FMLA leave. Lee relies upon *Duckworth v. Pratt & Whitney*, 152 F.3d 1, 8-10 (1st Cir. 1998), arguing that "[b]lacklisting an

individual who has used FMLA in the past is a violation of the Act's noninterference provision." Lee's assessment of *Duckworth*, however, is incorrect. In *Duckworth*, the employer was the entity that "blacklisted" the employee for taking FMLA leave and the entity who relied upon this blacklisting to deny re-hire to the employee. In other words, the employer was the entity that took the adverse employment action, *i.e.*, denial of re-hire. Thus, the *Duckworth* employer used the taking of FMLA leave as a negative factor in the adverse employment action. That situation is not analogous to the one before this Court.

### b. *Constructive discharge*

Only Defendants move for summary judgment on Lee's FMLA interference claim based upon Lee's alleged constructive discharge. Defendants argue that Lee "cannot establish that she was constructively discharged under the FMLA" because "it is undisputed that Plaintiff had exhausted all of her FMLA leave time by the date of her resignation, May 2, 2006 and had received all the leave to which she was entitled." (Doc. # 177 at 2 of 22.) Defendants argue that this fact prevents Lee from establishing the fifth element of an interference claim, *i.e.*, "the employer denied the employee FMLA benefits to which [s]he was entitled." *See Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d at 719. Defendants, however, are mistaken. As the Court set forth *supra*, this element can be met by showing that the taking of FMLA leave was a negative factor in any adverse employment action by the employer. *See Wysong*, 503 F.3d at 447. Here, Lee argues that the taking of FMLA leave was a negative factor in her constructive discharge.

> To demonstrate a constructive discharge, Plaintiff must adduce evidence to show that 1) the employer . . . deliberately created intolerable working conditions, as perceived by a reasonable person, and 2) the employer did so with the intention of forcing the employee to quit. . . . To determine if there is a constructive discharge, both the employer's intent and the employee's objective feelings must be examined.

15

*Logan v. Denny's, Inc.*, 259 F.3d 558, 568-69 (6th Cir. 2001). Lee, referring to herself as Lisa, argues that Defendants constructively discharged her by

> (1) using protected FMLA leave to keep Lisa on the sick leave abuse list throughout 2005; (2) writing down Lisa's performance evaluation because she used FMLA; (3) papering Lisa's file with a sham "oral reprimand"; (4) surveilling and monitoring Lisa's activities; and (5) delaying the possibility of any relief by letting Lisa's grievance languish for a year without a hearing, Defendants' actions created an intolerable workplace for Lisa.

(Doc. # 164 at 31 of 64.) Lee's argument is not well taken.

First, Lee's contentions that her file was papered with a sham oral reprimand, that she was monitored, and that her grievance over these behaviors languished for a year without a hearing are not supported by the evidence before the Court. These allegations concern an oral reprimand given to Lee for dishonesty related to her marking off work on February 22, 2005. Lee was disciplined with the reprimand for informing the information desk that she was calling off because of her FMLA qualifying back problem and then telling her supervisor that she was taking off work because of a migraine. Lee argues that her supervisor "only learned that [she] had marked off FMLA with the information desk because Supervisor Hornung pulled the 'audio log' of the call," that Lee "was not required to tell a supervisor a reason for the mark off," and the only reason Lee told her was because the supervisor demanded an explanation. (Doc. # 164 at 15 of 64.) However, these explanations do nothing to change the fact that Lee was dishonest to her employer and was disciplined for that dishonesty. Further, there is no evidence that the grievance languished for a year with no resolution. Even Lee admits that the grievance was heard and ultimately denied on October 21, 2005, eight months after the incident. *See id.* Thus, contrary to Lee's assertions, the evidence before the Court indicates that Lee's supervisor suspected Lee of lying so she reviewed a telephone call of Lee calling off sick, that Lee was in

16

fact found to have lied, that Lee was given an oral reprimand for dishonesty, and that Lee's grievance on the issue was heard and denied.

Second, Lee's assertion that "writing down Lisa's performance evaluation because she used FMLA" was a negative factor in her alleged constructive discharge, is also not supported by the evidence before the Court. On the evaluation to which Lee refers, Lee was given two "development needed" marks; one in the category "Acceptance of Responsibility" and one in the category "Economy of Work Performance." (Doc. # 113-4 at 66 of 132.) The rating choices on the evaluation were: "unacceptable," "development needed," "fully competent," and "exceeds expectations." *Id.* Apparently, Lee had never previously received a "development needed" rating, which is why she refers to the rating as "writing down" her performance. However, the evaluation clearly states why Lee was given the ratings and it does not indicate that it was because of any medical condition or because of her FMLA absences. Specifically, in the category of "Acceptance of Responsibility" the rating was explained by relying upon a written reprimand Lee had received for a 20 minute personal phone call while dispatching and for an oral reprimand for lying. *Id.* In the "Economy of Work Performance" category, her rating was based upon a charge for absence without leave and for an oral reprimand for loss of division property. *Id.* Lee attempts to negate this evidence with her self-serving deposition testimony that Supervisor Crabtree, who gave the evaluation, told her that she was getting "written down" because Lee had "an FMLA situation and a medical situation because of [her] back." (Doc. # 113-3 at 103 of 107.) This testimony, which contradicts the written evidence before the Court, at most constitutes a scintilla of evidence insufficient to defeat a properly supported summary judgment motion. Moreover, even if the Court accepts as true Lee's assertion of Crabtree's

statement, and finds it to be more than a scintilla of evidence, that combined with the only other remaining allegation, discussed next, is insufficient to constitute constructive discharge.

Finally, Lee argues, and Defendants admit, that she was kept on the sick leave abuse list in 2005 based upon FMLA approved absences. Being on the list required Lee to bring in doctor's excuses for all non-FMLA qualifying leave and to be subjected to home visits. Defendants discontinued their policy of relying on FMLA approved leave to place or keep employees on the sick leave abuse list a few years ago, sometime after Lee's last evaluation of her sick leave abuse list placement. Certainly being placed on a sick leave abuse list could in some circumstances constitute an adverse employment action, for example when the placement leads to demotion, suspension, or termination. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998) ("An adverse employment action is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.' ")). In the instant action, however, Lee's employment status in no way changed based upon her placement on the sick leave abuse list, nor was her use of FMLA leave hindered, which is evidenced by the fact that Lee used all available FMLA leave while on the sick leave abuse list. The adverse action upon which Lee relies, however, is constructive discharge, which, unlike the more common adverse actions, requires proof of intolerable working conditions and proof of the employer's intention to force resignation. *See Logan*, 259 F.3d at 568-69. Being kept on the sick leave abuse list, which did not prevent Lee from using all of the available FMLA leave, falls far short of showing intolerable working conditions and does nothing to support the alleged intention of Defendants to force Lee to resign.

Even when considering the allegation that Supervisor Crabtree told Lee that she was given a lower evaluation in two categories of a performance evaluation because of her use of FMLA leave and Lee's placement on the sick leave abuse list, the Court concludes that no reasonable person would perceive these as constituting intolerable working conditions. Thus, even when viewing the evidence in the light most favorable to Lee, she has failed to show that Defendants actions were a negative factor in her alleged constructive discharge or that she was constructively discharged and, consequently, Lee cannot establish the fifth element of her FMLA interference claim. *See Wysong*, 503 F.3d at 447. Accordingly, the Court **GRANTS** Defendants' Motion as it relates to that claim for relief.

### 2. Lee's FMLA Claim Based Upon The Retaliation Theory

Only Defendants move for summary judgment on Lee's FMLA claim brought under the retaliation theory of recovery. Defendants argue that the *McDonnell Douglas* burden-shifting framework is applicable to that claim. (Doc. # 134 at 21 of 33 citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). *See also Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309 (6th Cir. 2001) (holding that the *McDonnell Douglas* burden-shifting framework should be applied to FMLA retaliation claims that are based upon indirect evidence). However, in her opposition memorandum, Lee argues that this Court should apply the mixed-motive analysis set forth by the United States Supreme Court in *Desert Palace v. Costa*, 539 U.S. 90 (2003) as opposed to the *McDonnell Douglas* burden-shifting analysis. (Doc. # 164 at 2-4 of 64.) A mixed-motive analysis permits a finding of liability where the employer's retaliatory action is motivated by both unlawful considerations and legitimate reasons. *See Desert Palace*, 539 U.S. at 101. A claim survives summary judgment in a mixed-motive analysis if "there are any

genuine issues of material fact concerning the defendant's motivation for its adverse employment decision." *Baxter Healthcare Corp.*, 533 F.3d at 402.

Lee argues that: "All federal circuits to consider the issue have adopted the mixed-motive analysis in FMLA retaliation. *See, e.g.*, *Colburn v. Parker*, 429 F.3d 325, 335 (1st Cir. 2005)." (Doc. # 168 at 3 of 15.) Lee's assertion is incorrect. *Colburn* specifically declined to decide the issue stating: "Whether a mixed-motive analysis is available at all in an FMLA case for retaliation is an open question, and we do not resolve it here." *Id.* at 336, n.8 (indicating that the "issue has been adverted to but avoided by three circuits" including the Sixth Circuit). However, whether Lee's case is viewed under a mixed-motive or a burden-shifting analysis is, for the reasons discussed below, ultimately irrelevant, because in either analysis there must be an adverse employment action, which is missing here.

Lee relies upon the following to constitute adverse actions:

> Here, the evidence shows that the Defendants were engaged in a practice of papering L[ee]'s file with negative and false information, monitoring her, and denying her accommodations because she had sought FMLA protection.

(Doc. # 164 at 39 of 64.)

With regard to the alleged papering of Lee's file and monitoring her, the only evidence before the Court is the evidence of the oral reprimand for dishonesty related to Lee marking off work on February 22, 2005. However, the Court already considered that evidence and found it to be reflective of a reprimand for dishonesty–not unwarranted "papering" of Lee's employment file. Lee also claims that she was watched when she left her desk at work to go to the bathroom. This behavior, even if directed only at Lee, and even if Lee could somehow showed that it was a result of her taking FMLA leave, is *de minimus* and cannot constitute retaliation.

With regard to Lee's claim that she was denied disability accommodation because of engaging in the protected activity of taking FMLA leave, that claim too fails. As the Court concluded above, Lee was not entitled to disability accommodation. Thus, Defendants had no duty to accommodate Lee and their denial to do so cannot constitute an adverse employment action here. Lee presents no evidence that she was treated differently than other non-disabled individuals with regard to non-required accommodation offers.

The Court concludes that even under a mixed-motive analysis, Lee's FMLA retaliation claim fails because Lee has identified no adverse employment action that was motivated, at least in part, by a retaliatory motive. *See Desert Palace*, 539 U.S. at 101; *Baxter Healthcare Corp.*, 533 F. 3d at 402. Thus, even when viewing the evidence in the light most favorable to Lee, no reasonable jury could return a verdict in her favor on this claim for relief. Accordingly, the Court **GRANTS** Defendants' Motion on Lee's FMLA retaliation claim for relief.

## C. 42 U.S.C. § 1983

To state a claim under Section 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A municipality, may be held liable under Section 1983 only when the municipality itself causes the alleged constitutional violation. *Monell v. Dep't of Social Servs. Of City of New York*,

436 U.S. 658, 694 (1978). The doctrine of *respondeat superior* does not apply; a governmental

entity cannot be held liable under Section 1983 based solely upon allegations that an employee

or agent inflicted an injury. *Id.* at 691. "Instead, it is when execution of a government's policy

or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

represent official policy, inflicts the injury that the government as an entity is responsible under

§ 1983." *Id.* at 694. The Sixth Circuit has held that "to satisfy the *Monell* requirements a

plaintiff must identify the policy, connect the policy to the City itself and show that particular

injury incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.

3d 358, 364 (6th Cir. 1993) (citations omitted).

Here, Lee alleges that she was denied her constitutional rights to substantive and

procedural due process and that her liberty interests were infringed upon. Defendants move for

summary judgment on all three of Lee's Section 1983 claims for relief.

**1. Procedural Due Process**

Lee argues that she was denied procedural due process in violation of the Fifth and

Fourteenth Amendments to the United States Constitution. Specifically, Lee asserts that agents

of the Division of Police lied to her and told her she would be "in good standing" when she

submitted her resignation and that Defendants created records that identified her as an abuser of

sick leave and designated her termination in bad standing. Further, Lee alleges that she was

constructively discharged, which denied her constitutional due process.

Lee has failed to identify any official policy or custom of the City of Columbus, Division

of Police upon which the constitutional due process claim is based. Moreover, as the Court

concluded above, Lee was not constructively discharged, which prevents Lee from showing a

constitutional deprivation.  That is, due process must only be afforded before taking a person's property.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, (1985); *Board of Regents v. Roth*, 408 U.S. 564, 577, (1972).  Here, there was no taking of Lee's job because she voluntarily resigned.

The Court concludes that there are no genuine issues of material fact as to Lee's Section 1983 claim based upon alleged violations of procedural due process.  Accordingly, the Court **GRANTS** Defendants' Motion as to that claim for relief.

### 2.  Substantive Due Process

Lee argues that she was denied substantive due process in violation of the Fifth and Fourteenth Amendments  to the United States Constitution based upon her constructive discharge and being placed on the sick leave abuse list.  This claim too fails because Lee has not identified any official policy or custom of the City of Columbus, Division of Police upon which the constitutional due process claim is based.

Further, the claim fails because Lee cannot set forth a constitutional deprivation.  "The doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed has come to be known as substantive due process."  *Pearson v. City of Grand Blanc*, 961 F. 2d 1211, 1216 (6th Cir. 1992) (citations omitted).  "Substantive due process claims may be loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.' "  *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F. 3d 1220, 1228 (6th Cir. 1997) (citations omitted).

With regard to the first category, Lee relies upon her alleged deprivation of employment

as the particular constitutional guarantee at issue. The Sixth Circuit, however, has rejected attempts to expand substantive due process protection to claims involving property interests in employment. *See Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1350 (6th Cir. 1992).

As to the second category, there is simply nothing in this case that shocks the conscience.

The Court concludes that there are no genuine issues of material fact as to Lee's Section 1983 claim based upon substantive due process. Accordingly, the Court **GRANTS** Defendants' Motion as to that claim for relief.

### 3. Liberty Interests

Lee argues that she was denied her right to liberty under the Fifth and Fourteenth Amendments to the United States Constitution based upon her alleged constructive discharge and Defendants' actions in "making [a] public record which impairs her from working in her profession." (Doc. # 109 at ¶ 80.) "[A] person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the fourteenth amendment." *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002) (quoting *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989)). However, defamation alone is not enough to invoke due process concerns. *Id.* (citing *Paul v. Davis*, 424 U.S. 693, 711 (1976)). "Some alteration of a right or status 'previously recognized by state law,' such as employment, must accompany the damage to reputation. *Id.* at 319-20 (quoting *Davis*, 424 U.S. at 711-12). "Consequently, when a 'nontenured employee shows that he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name.' " *Id.* at 320.

> [The Sixth Circuit] has identified five factors that a plaintiff must show in order to
> establish that he was deprived of a liberty interest and entitled to a name-clearing

hearing.

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment. . . . Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance. . . . Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.

*Id.* (quoting *Brown v. City of Niota*, 214 F.3d 718, 722-23 (6th Cir. 2000))

"Once a plaintiff has established the existence of all five elements, he is entitled to a name-clearing hearing if he requests one." *Brown*, 214 F.3d at 723 (citation omitted).

> It is the denial of the name-clearing hearing that causes the deprivation of the liberty interest without due process. *Brown*, 214 F.3d at 723. Thus, the public employer deprives an employee of his liberty interest without due process, if upon request for a name-clearing hearing, the employee is denied. *Brown*, 214 F.3d at 723.

*Quinn*, 293 F. 3d at 320.

In the instant action, Lee cannot establish that she was deprived of a liberty interest because she cannot show that the alleged stigmatizing statements were made in conjunction with her termination from employment, because Lee resigned. Further, there is no evidence before the Court showing that the information in Lee's file was false. Finally, even if Lee could establish that she was deprived of a liberty interest, due process was not denied because Lee never requested a name-clearing hearing.

Accordingly, as with Lee's previous two Section 1983 claims, the Court concludes that there are no genuine issues of material fact based upon her constitutional liberty interests. Accordingly, the Court **GRANTS** Defendants' Motion as to that claim for relief.

## D. Claims Under Ohio Law

"Having so dismissed [Lee's] federal claims, this Court presumptively should not address any state law claim." *See Jackson v. Heh*, 215 F.3d 1326, 2000 WL 761807, at *8 (6th Cir. 2000) (unpublished table decision) (referencing 28 U.S.C. § 1367 and stating that "[w]here, as here, a federal court has properly dismissed a plaintiff's federal claims, there is a 'strong presumption' in favor of dismissing any remaining state claims unless the plaintiff can establish an alternate basis for federal jurisdiction." (citing *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1998))). Lee has failed to suggest any justification or alternative basis for exercising jurisdiction over her remaining state law claims should the Court dismiss her federal claims.

The Court, therefore, in its discretion declines to exercise federal jurisdiction over Lee's remaining state law claims for defamation, tortious interference, and disability discrimination. Accordingly, the Court **DISMISSES** without prejudice Lee's remaining state law claims for relief.

## E. Lee's Motion to Strike or to File Sur-Reply

In Lee's Motion to Strike or to File Sur-Reply, she requests that the Court strike the portions of Defendants' reply brief and the declaration submitted in its support of that brief. Those documents and sections of documents refer to alleged admissions by Lee to the two employers with which she was employed after her resignation from the Division of Police. Defendants, however, argue that the evidence and arguments to which Lee refers are in response to arguments made by Lee in her memorandum in opposition to Defendants' Motion.

After review of the material, the Court concludes that it is questionable whether the

documents can be considered to be in response to arguments made in Lee's memorandum in opposition. However, the alleged admissions to her subsequent employers were irrelevant to this Court's analysis of whether Lee was disabled at the time Defendants took the alleged adverse employment actions. Thus, because the Court has not relied upon the evidence in any way, Lee's request to strike or alternatively to file a sur-reply it is rendered moot. Accordingly, the Court **DENIES** as moot Lee's Motion to Strike or to File Sur-Reply.

## F. Oral Argument

With regard to Lee's Request for Oral Argument, the Court concludes that oral argument is not "deemed to be essential to the fair resolution of the" motions before it, and therefore **DENIES** Lee's request. S.D. Ohio Civ. R. 7.1(b)(2).

## IV. Conclusion

Based on the foregoing, the Court **DENIES** Lee's Motion (Doc. # 111), **GRANTS** Defendants' Motion (Doc. # 134), **DENIES** Lee's Request for Oral Argument (Doc. # 134), **DENIES** as moot Lee's Motion to Strike or to File Sur-Reply (Doc. # 180), and **DISMISSES** without prejudice Lee's state law claims for relief. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

**IT IS SO ORDERED**.

_____/s/ Gregory L. Frost_____
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**