# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

LISA LEE, et al.,

        **Plaintiff,**                    **Case No. 2:07-cv-1230**
                                                **JUDGE GREGORY L. FROST**
      **v.**                                **Magistrate Judge Norah McCann King**

CITY OF COLUMBUS, et al.,

        **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment as to the

Individual Claims of Plaintiff Cheri Bowman ("Defendants' Motion") (Doc. # 138), Plaintiff

Cheri Bowman's Memorandum *Contra* Defendants' Motion (Doc. # 166), in which Bowman

requests oral argument on Defendants' Motion ("Bowman's Request for Oral Argument"), and

Defendants' Reply to Plaintiff Cheri Bowman's Memorandum *Contra* Defendants' Motion (Doc.

# 176).  For the reasons that follow, the Court **GRANTS** Defendants' Motion and **DENIES**

Bowman's Request for Oral Argument.

## I.  Background

Plaintiff Cheri Bowman ("Bowman") began her employment with the City of Columbus,

Department of Public Safety, Division of Police, Bureau of Communications in November

2000.  Throughout her employment, she worked in the radio room as a communications

technician.  Communications technicians are civilians and are members of the American

Federation of State, County and Municipal Employees, Ohio Council 8, Local 1632

("AFSCME").  The terms and conditions of their employment are governed by the collective

bargaining agreement ("CBA") negotiated between AFSCME and the City.  (Doc. # 138, Ex. B).

The CBA provides benefits including vacation, sick leave, injury leave, short term disability leave, and health insurance. Communication technicians may receive up to twenty-six weeks of paid short term disability leave per calendar year. The Division of Police pays short term disability benefits, but employs a third party vendor to act as a fiduciary in administering the benefits. As of 2007, Aetna was administering short term disability leave for the Division of Police.

The radio room incorporates ten dispatcher consoles and eighteen telephone call taking positions. There is a supervisor's console and five main zone dispatching consoles from which requests for police service, including "911" emergency calls are dispatched to police patrol units. There are two dispatching consoles that can be activated for tactical situations as well as service functions. There are two other dispatcher consoles, "the back channel," that handle alarms, wreckers, and service requests from officers, as well as monitoring the security camera and alarm systems for the building. Communication technicians "work and make decisions under what can be very high pressure of life and death situations." (Doc. # 138-6 Affidavit of Larry Yates.[1]) .

In September 2003, Bowman applied for intermittent leave under the Family and Medical Leave Act ("FMLA"). In the initial FMLA application, Bowman's physician, Charmaine Blair, M.D., indicated that Bowman suffered from "severe migraines" of "indefinite" duration, as well as "associated nausea and dizziness." (Doc. # 171-5 at 65-68 of 128.) In April 2004, June 2004, April 2005, and October 2006, Dr. Blair re-certified that Bowman continued to suffer from severe migraines and continued to need intermittent leave, and the Division of Police approved

---

[1]Mr. Yates is the Administrative Lieutenant in the radio room.

the FMLA leave.

Bowman testified in her deposition that she initiated a conversation with her supervisors, Mark Valentino, Edwina Hornung, and Peg Winter, sometime in late 2006 or in 2007 about her migraine headaches, telling them she felt uncomfortable working the main dispatching channels when her migraines occurred. Bowman was placed on the back channel, which she believes was less stressful and involved "less phones" and "computer work" than the main channel. (Doc. # 115 at 18 of 20.) Bowman avers that her migraine headaches progressively worsened during this time period.

On April 18, 2007, Bowman saw Mazen K. Eldadah, M.D. to discuss disability leave. On May 9, 2007, Bowman submitted paperwork requesting short term disability leave. Included in her application was Dr. Eldadah's April 30, 2007 statement, which indicated that Bowman was suffering from "intractable headaches, subjective photophobia, phonophobia." Dr. Eldadah opined that Bowman "might benefit from a job that is less stressful." (Doc. # 138 Affidavit of Linda Guyton,[2] Ex. 4.)

The Division of Police's Human Resources Offices includes an Employee Benefits Unit ("EBU"). EBU submitted Bowman's short term disability paperwork to Aetna, which processed the application for benefits. Bowman's last day of work was May 13, 2007. Pursuant to Bowman's application and the two week waiting period requirement, Aetna approved Bowman's short term disability leave, with certification starting May 14, 2007 and benefits beginning effective May 28, 2007.

On May 23, 2007, Dr. Eldadah sent a letter to Ms. Guyton at the Division of Police,

---

[2]Ms. Guyton is the Human Resource Manager for the Division of Police.

stating as follows:

> I saw Cheri Bowman in my office on April 18, 2007. I was given disability
> paperwork to fill out due to her chronic headaches/migraines. I request that she's
> on disability for three months from April 18, 2007 until July 18, 2007. After her
> disability, I will reevaluate her and then decide whether she is able to return to
> work with any restrictions.

Guyton Affidavit, Ex. 3. Subsequently, Dr. Eldadah requested an extension of short term

disability for Bowman, and Aetna certified her short term disability leave through November 25,

2007.

On October 31, 2007, prior to the expiration of her short term disability leave, Bowman

submitted an Employee Accommodation Request form and Documentation of Disability form to

EBU. According to Bowman's statement, she was seeking an accommodation for "intractable

migraine headaches and photophobia." *Id.*, Ex. 7. She requested to be placed in a position

where her "phone responsibilities [we]re limited and that [her] computer use is of a minimum."

*Id.* According to the attached statement from Lee's neurologist, Hakim Hussein, M.D., Bowman

could not work on computers more than two hours per day or be on the phone continuously for

two hours or more or do prolonged standing, sitting, or bending or lifting over thirty pounds.

On November 9, 2007, Bowman met with Linda Guyton and Brooke Carnevale[3] to

review various different job descriptions for the purpose of finding one that was available that

Bowman could perform. All agree that they discussed the Office Assistant II ("OAII") position,

that Dr. Hussein approved that position, and that the Division of Police subsequently indicated

that the position was eliminated because of budget cuts and, therefore, not available as a

---

[3]Ms. Carnevale is the Human Resources Officer for the Department of Public Safety for
the City of Columbus.

potential position for Bowman. The parties disagree, however, as to whether the remainder of the positions available were offered to Bowman.

Bowman's short term disability benefits ended in November 2007. Pursuant to the CBA provisions, on December 4, 2007, Bowman was given a fitness for duty hearing. Bowman was not released by her treating physician to return to her job as a communication technician. Bowman filed with the Ohio Public Employees Retirement System ("OPERS") for disability retirement in December 2007.

In May 2008, Bowman sent a "Letter of Separation" to Ms. Guyton, indicating that on April 16, 2008, she was approved for disability retirement benefits, which she was accepting. (Doc. # 138-2 at 6 of 21.) Bowman then stated: "Please accept this letter of (separation) resignation as of this date." *Id.* Bowman contends that she was constructively discharged on April 16, 2008, based upon her contention that the Division of Police, and numerous Division of Police supervisors and employees ("Defendants") forced her to take disability retirement and, before that, forced her to take short term disability leave.

During the time that Bowman was on FMLA leave, short term disability leave, and disability retirement, she maintained a second job as a contractually paid softball and volleyball coach for Marion Franklin High School. Defendants contend that they were unaware of Bowman's employment with Marion Franklin until it was disclosed through discovery in the course of the instant litigation. Bowman, however, contends that Defendants were aware of her second job throughout her employment with the Division of Police. However, in Bowman's application for short term disability benefits she indicated that she was not receiving any income other than from the Division of Police.

In her 2009 deposition, Bowman testified as to her coaching responsibilities. (*See* Doc. # 115-2 at 6-13 of 20.) Bowman testified that she is and has been the head coach for the girls varsity softball team since 2003, and that they practice and play games from late February through June. During the season, four days of the week, she goes to Marion Franklin High School where she instructs the girls in softball, demonstrating how to catch, hit, and throw. She coaches home games and away games, traveling with the team by bus to away games. There are typically two to three games a week, lasting approximately one and one-half hours. She attends practice, meetings, sports banquets, and tournament games as well as tryouts.

Bowman further testified that for the past six years she has also been the girls' volleyball coach at Marion Franklin High School, the first five years of which she was the varsity coach and since last year, 2008, she moved to the junior varsity coach because of her migraine headaches. Volleyball season starts in August and lasts for three months. During volleyball season, Bowman coaches during the practices, instructing and demonstrating bumping, setting, spiking, and serving the volleyball. Volleyball practices last about one and one-half hours, four days a week. The volleyball games last about one and one-half hours. Bowman travels with the team to games on the school bus and attends meetings and tournaments.

Bowman has also been a volunteer basketball coach at the Barnett Recreation Center for about six years on Saturdays, which takes up about two hours of her time on Saturday mornings.

On December 4, 2007, Bowman filed this action alleging claims for relief under the FMLA, 29 U.S.C. 2601, *et. seq.*, the First, Fifth and Fourteenth Amendments to the Constitution of the United States through 42 U.S.C. §1983 ("Section 1983"), the Rehabilitation Act of 1973, as amended, 29 U.S.C. §790, *et. seq.*, and the Ohio Revised Code Chapter 4112. (Doc. # 109 ¶¶

169-198, 234-249.)

On May 15, 2009, Defendants filed Defendants' Motion (Doc. # 138), moving for summary judgment on all Lee's claims for relief. In Bowman's memorandum in opposition to Defendants' Motion, she specifically withdrew her claims for relief brought under the FMLA and under Section 1983. (Doc. # 166.) Defendants' Motion is now ripe for review.

## II. Standard

Rule 56 of the Federal Rules of Civil Procedure provides for judgment as a matter of law if there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue as to any material fact, the evidence "must be viewed in the light most favorable" to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

In ruling on a motion for summary judgment "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Glover v. Speedway Super Am. LLC*, 284 F. Supp. 2d 858, 862 (S.D. Ohio 2003) (citing *InterRoyal Corp. v. Sponseller*, 889 F. 2d 108, 111 (6th Cir. 1989)). Instead,

a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Id.*; Fed. R. Civ. P. 56(c).

### III. Analysis

### A. The Rehabilitation Act

> To recover on a claim of discrimination under either the [Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA")] or the Rehabilitation Act, which in this circuit share the same substantive standard, "a plaintiff must show that: 1) he is an individual with a disability; 2) he is otherwise qualified to perform the job requirements, with or without reasonable accommodation; and 3) he was discharged solely by reason of his handicap."

*Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007) (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996) and *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 363 n.2 (6th Cir. 2007)).

Bowman first claims that Defendants discriminated against her by constructively discharging her based upon her migraine headaches, which she claims is a disability under the Rehabilitation Act. Bowman next contends that Defendants discriminated against her by failing to accommodate her or to engage in the interactive process of attempting to find accommodation for her.

### 1. Disability Discrimination Based Upon Adverse Employment Action

Bowman presents circumstantial, as opposed to direct, evidence of discrimination, and, as a result, the Court applies the familiar three step burden-shifting framework originally articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). The initial burden rests with the plaintiff to

establish a *prima facie* case of discrimination. *Monette*, 90 F.3d at 1186. If the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment decision. *Burdine*, 450 U.S. at 253. Should the employer carry this burden, then the burden returns to the plaintiff to prove by a preponderance of the evidence that the employer's proffered reason was in fact a pretext designed to mask illegal discrimination. *See id.* "[The plaintiff] can defeat summary judgment only if his evidence is sufficient to 'create a genuine dispute at each stage of the *McDonnell Douglas* inquiry.' " *Jones v. Potter*, 488 F.3d at 404 (citing *Macy*, 484 F.3d at 364).

To establish a *prima facie* case of disability-based discrimination under the Rehabilitation Act, a plaintiff must establish each of the following five elements:

> (1) that he is disabled, (2) that he is otherwise qualified for the job, with or without reasonable accommodation, (3) that he suffered an adverse employment action, (4) that his employer knew or had reason to know of his disability, and (5) that, following the adverse employment action, either he was replaced by a nondisabled person or his position remained open.

*Jones*, 488 F.3d at 404 (citing *Timm v. Wright State Univ.*, 375 F.3d 418, 423 (6th Cir. 2004) and *Monette*, 90 F.3d at 1185 (setting forth the same *prima facie* elements under the ADA)). The final element "may also be satisfied by showing that similarly situated non-protected employees were treated more favorably." *Id.* (citing *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995)).

With regard to the first element of the *prima facie* case, the parties dispute whether Bowman was disabled at the time of her alleged constructive discharge. To be considered disabled under the Rehabilitation Act, an individual must (1) have a physical or mental impairment that "substantially limits" him or her in at least one "major life activity," (2) have a

record of such an impairment, or (3) be regarded as having such an impairment.  *DiCarlo v. Potter*, 358 F.3d 408, 418 (6th Cir. 2004) (quoting *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002), which cited to 29 U.S.C. § 705(20)(B) (Rehabilitation Act definition) and 42 U.S.C. § 12102(2) (ADA definition)).  The first and third categories of disabilities are at issue in the present case.

### a. *Category (1): actually disabled*

There is no dispute that Bowman's migraine headache condition qualifies as a physical impairment.  Defendants also do not dispute that the activities about which Bowman alleges substantial limitation qualify as major life activities, *i.e.*, sleeping, thinking, concentrating, caring for herself, and working.  The issue left before the Court is whether Bowman's migraine headache condition substantially limits Bowman's ability to engage in these major life activities.

Substantially limits means that an individual is unable to perform a major life activity that the average person in the general population can perform; or is significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  *See* 29 C.F.R. § 1630.2(j)(1); *Penny v. United Parcel Serv.*, 128 F.3d 408, 414 (6th Cir. 1997).  Factors that should be considered in determining if a plaintiff qualifies as substantially limited in the relevant major life activities include:

1. the nature and severity of the impairment;

2. the duration or expected duration of the impairment; and

3. the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).

Working is to be treated "as a residual category resorted to only when a complainant cannot show she or he is substantially impaired in any other, more concrete major life activity." " *Mahon*, at 295 F.3d at 590 (citing *Sutton v. United Air Lines Inc.*, 527 U.S. 471, 492 (1999),[4] 29 C.F.R.§ 1630.2(j), and *Henderson v. Ardco, Inc.*, 247 F.3d 645, 650 (6th Cir. 2001)).

To support her claim of substantial limitation in the major life activities of sleeping, concentrating, thinking, and caring for herself, Bowman submits a document that was given to OPERS in December 2007 in support of Bowman's request for disability retirement, in which her treating physician, Dr. Hussein, indicates that Bowman's diagnosis as to her headaches was:

> Chronic daily resistant headache/dizziness/migraine headache. Supra orbital neuralgia/chronic nausea & photophobia.

(Doc. # 171-5 at 119 of 128.) As to Bowman's subjective complaints, Dr. Hussein wrote:

> Headaches of different types, 24 h. per day that is [*sic*] moderate to severe, made worse by excessive or routine daily activities in addition to associated symptoms of dizziness, sensitivity to light, nausea & slow thinking.

*Id.* at 120 of 128. The doctor indicated that he expected Bowman to be able to return to work on November, 19, 2008, one year following the date that he believed the condition became permanently disabling to Bowman, and eleven months after the date of the writing of the evaluation. *See id.* Finally, with regard to restrictions, Dr. Hussein indicated that Bowman had

---

[4]This case was superseded in part by the ADA Amendments Act of 2008 ("ADAAA"), which took effect on January 1, 2009, Pub. L. No. 110-325, 122 Stat. 3553 (2008). However, the ADAAA is not to be applied retroactively and, thus, has no application to the case at bar. *See Verhoff v. Time Warner Cable, Inc.*, 299 Fed. Appx. 488, 492 n.2 (6th Cir. 2008), *McDonald v. UPS*, No. 07-12022, 2009 U.S. Dist. LEXIS 47457, at *26 (E.D. Mich. June 5, 2009), and *Jones v. Wal-Mart Stores*, No.: 3:07-CV-461, 2009 U.S. Dist. LEXIS 47242, at *7-9 n.2 (E.D. Tenn. June 5, 2009) (instructive analysis and gathering of cases).

restrictions with regard to the use of "computers/phones." *Id.* In Bowman's request for accommodation, when asked to "identify the employee's physical or mental impairment," Dr. Hussein wrote: "No physical impairments." *Id.* at 26 of 128. The doctor also indicated that the activities that were impacted by Bowman's condition were bright light, noisy atmosphere, and excessive work on computers and phones. *See id.*

Bowman also offers her own declaration testimony in support of her contention that she was substantially limited in her ability to sleep, think, concentrate, and care for herself:

> [D]uring 2006 and 2007, there was not a single day that I was able to attend work without being affected by the pain, fatigue, photophobia, and a difficulty concentrating and thinking that was part of my headaches, their aftereffects, or the effects of the medications I was taking. I was only able to get 1½ to 2 hours of uninterrupted sleep per night before I would wake up with a headache. While I was experiencing a headache, or for hours after, because of the effects of the medications and aftereffects of the headaches, I was unable to do any kind of daily activity, such as cleaning, caring for myself, shopping, or housework. I could not write a check, balance my checkbook, or have conversations in person or on the phone. I could not lead a normal life as I had before my headaches became so severe and frequent.

(Doc. # 171-5 at 20 of 128.)

In Bowman's deposition testimony, she stated that she suffered headaches daily but that the more debilitating migraines, causing dizziness and nausea and requiring Bowman to have to lie down in a dark and quiet atmosphere and take medicine, occur "two to three" times per week. (Doc. # 115-3 at 6 of 20.)

The Court finds that the evidence offered is insufficient to show that Bowman's migraine headache impairment substantially limited her ability to sleep, think, concentrate, or to care for herself. *See McDonald v. Potter*, No. 1:06-CV-1, 2007 U.S. Dist. LEXIS 57983, at *96 (E.D. Tenn. Aug. 7, 2007) *aff'd* 285 Fed. Appx. 260 (6th Cir. 2008) (the plaintiff's major life activities

of seeing, thinking, concentrating, interacting with others, and working were not substantially limited by her "recurrent" and "incapacitating" migraines that occurred two to three times per week and that caused light sensitivity, dizziness, and nausea and required the plaintiff to lay down in the dark). Bowman's testimony indicates that she was unable to do these things intermittently, two to three times per week, while she was experiencing the migraine and for several hours afterward; but that alone is not sufficient. *See id.*; *See also DiCarlo*, 358 F.3d 408 (citing *Mahon*, 295 F.3d at 591) (impairment that "intermittently prevents an individual from performing major life activities is not a substantial limitation"); 29 C.F.R § 1630.2(j).

Further, Bowman has presented no medical evidence that supports her claim of substantial impairment in her ability to sleep, think, concentrate, or care for herself. Indeed, the only medical opinion presented supports the Court's conclusion. That is, Dr. Hussein refers to Bowman's condition as "episodic migraine headaches." (Doc. # 171-5 at 23 of 128.) Further, the doctor indicates that Bowman has "no physical impairments" and that the only work restrictions necessary are less time on computers and phones and less stress. This evidence does not support a finding that the nature and severity of Bowman's migraine headaches substantially impairs any major life activity.

Specifically, with regard to sleeping, a panel of the Sixth Circuit has held that "[g]etting between two and four hours of sleep a night, while inconvenient, simply lacks the kind of severity we require of an ailment before we will say that the ailment qualifies as a substantial limitation under the ADA." *Boerst v. Gen. Mills Operations*, 25 F. App'x. 403, 407 (6th Cir. 2002). *See also Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 316 (6th Cir. 2001) ("While less than five hours sleep is not optimal, it is not significantly restricted in comparison to the average

person in the general population."); *Verhoff v. Time Warner Cable, Inc.*, 299 F. App'x 488, 492 (6th Cir. 2008) (holding that less than five hours of "not restful" sleep is insufficient to constitute substantial impairment). Here, Bowman's sleep was interrupted every one and one-half to two hours, which could cause unrestful sleep, but is a far cry from a substantial limitation in the ability to sleep. The Court concludes that waking up three to five times per night simply lacks the kind of severity necessary to qualify as a substantially limiting condition.

With regard to thinking and concentrating, in an unpublished case the Sixth Circuit rejected a plaintiff's contention that her migraines limited her major life activity of concentration stating that "[c]oncentration may be a significant and necessary component of a major life activity, such as working, learning, or speaking, but it is not an 'activity' itself." *Linser v. State of Ohio, Dep't of Mental Health*, No. 99-3887, 2000 U.S. App. LEXIS 25644, 2000 WL 1529809 (6th Cir. Oct. 6, 2000) (holding "concentrating is not a major life activity"). This Court, however, need not decide whether concentration is a major life activity because Bowman has not shown substantial limitation in her ability to concentrate or to think. That is, the evidence indicates that during the most severe of her headaches, the ones that cause her two or three times a week to be required to lay down in a dark and quiet atmosphere, Bowman may have been substantially impaired in her ability to think or concentrate. However, the duration of this impairment, as well as its permanent or long term impact, prevents it from constituting a substantially limiting in Bowman's ability to think or concentrate. *See Mahon*, 295 F.3d at 591 (impairment that "intermittently prevents an individual from performing major life activities is not a substantial limitation"). Bowman testified that the majority of the time is was "difficult" to think or concentrate. However, having difficulty doing something is not equivalent to being

substantially limited.  *See Satterly v. Borden Chem.*, Inc., 24 F. App'x. 471, 471 (6th Cir. 2001) ("Although Satterly has difficulty walking and may walk at a slower pace than others, he failed to establish that his ability to walk is substantially impaired.").

As to Bowman's ability to care for herself, the Court finds telling the fact that Bowman was a softball and volleyball coach throughout the time that she has been effected by the migraine headaches.  Being a coach required her to demonstrate sporting activities such as throwing, catching, and hitting softballs and bumping, setting, spiking, and serving volleyballs with high school students.  (*See* Doc. # 115-2 at 6-13 of 20.)  These coaching activities averaged at least four days per week during the seasons, and required from one to two hours for practices and substantially more time depending upon the location of the games.  The ability to engage in these types of activities is in sharp contrast to conditions that the Sixth Circuit has found to be substantially limiting in the ability to care for one's self.  For example, when determining that a plaintiff's psoriasis substantially limited her ability to care for herself, the circuit court found important the fact that the disorder effected the plaintiff on a constant basis.  *See Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 781 (6th Cir. ) (finding an issue of fact as to whether the plaintiff was substantially impaired in her ability to care for herself "[b]ecause the psoriasis causes persistent skin irritations, Cehrs is constantly afraid of other people's reactions to her condition. . . . [h]er entire appearance, including the clothes she wears, is dictated by her psoriasis").  Here, Bowman is affected only sporadically and intermittently, nothing near to a constant basis.  Thus, Bowman has failed to show that she is substantially limited in the alleged major life activities of thinking and concentrating.

Turning to Bowman's alleged substantial limitation in her ability to work, the Sixth

Circuit instructs that she must be limited not just from her particular job, but from a substantial class or broad range of jobs:

> To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Mahon*, 295 F.3d at 591 (quoting *Sutton*, 527 U.S. at 492). Further, the court explained:

> To determine if the claimant is precluded from a substantial class or broad range of jobs, we compare his access to jobs to the access available to a non-injured individual with similar training and experience, looking specifically to the labor market in the claimant's geographic vicinity.

*Id.* (citing *Sutton*, 527 U.S. 491-92 and *Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247, 253-54 (6th Cir. 2000)).

In the case *sub judice*, Bowman's testimony and the evidence submitted by Dr. Hussein make clear that Bowman was not precluded from a substantial class or broad range of jobs. Indeed, Dr. Hussein and Bowman both agree that she is qualified to perform the AOII position. However, even if Bowman were to be considered precluded from a substantial class or broad range of jobs, she has presented no evidence to allow the Court to "compare h[er] access to jobs to the access available to a non-injured individual with similar training and experience, looking specifically to the labor market in the [her] geographic vicinity." *Id.* at 598 (no genuine issue of material fact raised because the plaintiff "failed to produce any evidence regarding the number of pediatrics nursing jobs from which she is excluded or the availability of pediatric nursing positions for which she is qualified"). Thus, Bowman has failed to show that she is substantially limited in the major life activity of working.

The Court concludes that, even when viewing the evidence in the light most favorable to Bowman, she has failed to raise any genuine issue of material fact as to whether she is substantially limited in any major life activity. Consequently, Bowman cannot show that she is disabled under the Rehabilitation Act, which prevents her from setting forth *a prima facie* case of disability discrimination. Accordingly, the Court **GRANTS** Defendants' Motion as it relates to Bowman's claim of disability discrimination based upon any alleged adverse actions.

**b. *Category (3): Being regarded as disabled***

Bowman also asserts that Defendants regarded her as disabled from her ability to work. "This part of the [Rehabilitation] Act is intended to allow individuals to be judged according to their actual capacities, rather than through a scrim of 'myths, fears, and stereotypes' accruing around a perceived impairment." *Mahon*, 295 F.3d at 592 (citing *Sutton*, 527 U.S. at 489-90).

> To determine whether an individual is "regarded as disabled," we apply the test laid out in *Sutton*:
>
>> There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.
>
> 527 U.S. at 489. To run afoul of the act, then, a covered entity must hold a mistaken belief that a claimant is disabled within the meaning of the [the Rehabilitation Act or the ADA]. *See Ross* [*v. Campbell Soup Co.,*] 237 F.3d [701,] 709 (6th Cir. 2001).

*Mahon*, 295 F.3d at 592.

In a "regarded as" disability discrimination claim that relies upon the major life activity of working, a plaintiff need only show that she is regarded as disabled from her general type of work in that general geographic area. *Moorer v. Baptist Mem'l Health Ctr.*, 398 F.3d 469, 484

17

(6th Cir. 2005).

In the instant action, Bowman contends that there is a genuine issue of material fact as to whether Defendants mistakenly regarded her as disabled from a broad range of jobs. As support for this argument, Bowman testifies that on two separate occasions she was told that she would not be permitted to return to work in the radio room with any medical restrictions. Bowman argues that Defendants' insistence that she be "100% healed" before being allowed to return to her communications technician job is persuasive evidence that Defendants regarded her as being disabled from performing any job. (Doc. # 166 at 21 of 31.) Bowman relies upon *Henderson v. Ardco, Inc.*, 247 F.3d 645, 651-52 (6th Cir. 2001) to support this proposition. However, Bowman's reliance is misplaced. In *Henderson*, a welder on an assembly line injured her back and was restricted from stooping, bending, and lifting. Company policy prohibited the employee from returning to work unless she was "100% healed" and the company's plant manager testified that there would not be one job at the plant that the plaintiff's medical restrictions would not "bump into." *Id.* at 651. The Court held that, "Ardco's 100%-healed rule, may, for purposes of summary judgment, be interpreted as treating Henderson as incapable of work in a manufacturing operation." *Id.* at 652.

The only similarity between the instant action and *Henderson* is that both employers required 100% restriction free status before returning to work. However, in *Henderson*, the employer indicated that there was no job in the entire plant that could be done by the plaintiff. The court determined that this position raised an issue of material fact as to whether the plaintiff was unable to perform the manual tasks associated with any assembly line work–a large class of jobs. *Id.* at 651-52. Here, Bowman's testimony makes clear that Defendants told her that she

had to be free of restrictions before she could return to her specific job as a communication technician–not to any administrative job available.  Indeed, Bowman, her treating physician, and Defendants all agree that Bowman was capable of performing the OAII job.

The OAII position requires "performing complex or specialized clerical functions" such as: answering complex questions from internal and external customers; scheduling activities; composing letters and memoranda; taking minutes at meetings and conferences; dictation; preparing agendas; maintaining confidential files; administration of customer complaints; researching problems regarding administrative functions; processing confidential paperwork; contacting outside sources; assisting customers with questions concerning licencing, zoning, and contracts; operating and managing complex databases, spreadsheets, and other software; using the Internet and other resources to perform advanced searches; and possible supervisory duties such as training, reviewing work, and scheduling.  (Doc. # 113 of 128.)  "The [OAII] typically performs work requiring considerable depth and is often viewed as a clerical specialist."  *Id.*  The Court concludes that this position easily represents a substantial class of jobs.  Therefore, Defendants' requirement that Bowman be restriction free to return to her particular job is not, in these circumstances, indicative of Defendants regarding her as disabled.  There is simply no evidence tending to indicate Defendants were viewing Bowman "through a scrim of 'myths, fears, and stereotypes' accruing around a perceived impairment."  *Mahon*, 295 F.3d at 592 (citing *Sutton*, 527 U.S. at 489-90).

Thus, the Court concludes that, even when viewing the evidence in the light most favorable to Bowman, she has failed to raise any genuine issue of material fact as to whether Defendants regarded her as disabled under the Rehabilitation Act, which prevents her from

setting forth *a prima facie* case of disability discrimination.  Accordingly, the Court **GRANTS**

Defendants' Motion as it relates to Bowman's claim of "regarded as" disability discrimination.

### 2.  Disability Discrimination Based Upon Failure To Accommodate

> In order for a plaintiff to prevail on an allegation of handicap discrimination
> based on failure to accommodate, he must first establish a *prima facie* case by
> showing that: (1) he is an individual with a handicap . . . ; (2) he is qualified for
> the position . . . ; (3) the agency was aware of his disability; (4) an
> accommodation was needed, *i.e.*, a causal relationship existed between the
> disability and the request for accommodation; and (5) the agency failed to provide
> the necessary accommodation.  Once the plaintiff has presented a *prima facie*
> case, the burden shifts to the employer to demonstrate that the employee cannot
> reasonably be accommodated, because the accommodation would impose an
> undue hardship on the operation of its programs.  *Gaines v. Runyon*, 107 F.3d
> 1171, 1175-76 (6th Cir. 1997) (citations omitted).

*DiCarlo*, 358 F.3d at 419.

Here, the Court already determined that Bowman cannot establish that she is an

individual with a disability.  This determination also prevents Bowman from maintaining an

action for failure to accommodate her for her disability.  *See id.*  Accordingly, the Court

**GRANTS** Defendants' Motion as it relates to Bowman's claim of disability discrimination for

failure to accommodate.

### B.  State Law Disability Claim

 "Having so dismissed [Bowman's] federal claims, this Court presumptively should not

address any state law claim."  *See Jackson v. Heh*, 215 F.3d 1326, 2000 WL 761807, at *8 (6th

Cir. 2000) (unpublished table decision) (referencing 28 U.S.C. § 1367 and stating that "[w]here,

as here, a federal court has properly dismissed a plaintiff's federal claims, there is a 'strong

presumption' in favor of dismissing any remaining state claims unless the plaintiff can establish

an alternate basis for federal jurisdiction." (citing *Musson Theatrical, Inc. v. Fed. Express Corp.*,

89 F.3d 1244, 1255 (6th Cir. 1998))).  Bowman has failed to suggest any justification or alternative basis for exercising jurisdiction over her remaining state law claims should the Court dismiss her federal claims.

The Court, therefore, in its discretion declines to exercise federal jurisdiction over Bowman's remaining state law claim for disability discrimination.  Accordingly, the Court **DISMISSES** without prejudice Bowman's remaining state law claim for relief.

## C.  Oral Argument

With regard to Bowman's Request for Oral Argument, the Court concludes that oral argument is not "deemed to be essential to the fair resolution of the" motions before it, and therefore **DENIES** Bowman's request.  S.D. Ohio Civ. R. 7.1(b)(2).

## IV.  Conclusion

For the reasons set forth above, the Court **GRANTS** Defendants' Motion (Doc. # 138), **DENIES** Bowman's Request for Oral Argument (Doc. # 166), and **DISMISSES** without prejudice Bowman's state law claim for relief.  The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

IT IS SO ORDERED.

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE