# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

LISA LEE, et al.,

      **Plaintiff,**                        **Case No. 2:07-cv-1230**
                                                    **JUDGE GREGORY L. FROST**
      **v.**                              **Magistrate Judge Norah McCann King**

CITY OF COLUMBUS, et al.,

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment as to the Individual Claims of Plaintiff Paula Lee ("Defendants' Motion") (Doc. # 139), Plaintiff Paula Lee's Memorandum *Contra* Defendants' Motion (Doc. # 165), in which Lee requests oral argument on Defendants' Motion ("Lee's Request for Oral Argument"), and Defendants' Reply to Plaintiff Paula Lee's Memorandum *Contra* Defendants' Motion (Doc. # 175). For the reasons that follow, the Court **GRANTS** Defendants' Motion.

## I. Background

Plaintiff Paula Lee ("Lee") began her employment with Defendant City of Columbus in the Department of Public Safety, Division of Police, Bureau of Communications in 1997. Throughout her employment, Lee held the position of a communications technician. Communications technicians are civilians and are members of the American Federation of State, County and Municipal Employees, Ohio Council 8, Local 1632 ("AFSCME"). The terms and conditions of their employment are governed by the collective bargaining agreement negotiated between AFSCME and the City of Columbus. (Doc. # 139, Ex. B). The CBA provides benefits including vacation, sick leave, injury leave, short term disability leave, and health insurance.

Communication technicians may receive up to twenty-six weeks of paid short term disability leave per calendar year. The Division of Police pays short term disability benefits, but employs a third party vendor to act as a fiduciary in administering the benefits. As of 2007, Aetna was administering short term disability leave for the Division of Police.

From 2003 forward, in response to Lee's application and her physician's statement, the City of Columbus had certified her migraine headaches as a condition qualifying for approved leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. 2601, *et. seq.* Lee continued to utilize FMLA leave and her provided sick leave throughout the remainder of her employment to take time off because of her migraine headaches. During 2006, Lee exhausted all of her available leave, receiving 191.7 hours of paid leave (sick leave or paid FMLA/vacation or FMLA/sick leave) and 145.3 hours of FMLA leave without pay. (Doc. # 175, Ex. C, Second Affidavit of Linda Guyton[1] ("Second Guyton Aff.") ¶ 6.)

The Division of Police employees are considered absent without leave ("AWOL") when they mark off sick from work but have no available leave to cover the absence. (Doc. # 138, Ex. A, First Affidavit of Linda Guyton ("First Guyton Aff.") ¶ 9). Lee received disciplinary charges for marking off sick and being in an AWOL status on April 1 through 3, 2006 for 22 hours. She was charged with marking off and being in an AWOL status on April 13 through 14, 2006 for 16 hours. Lee was charged with failing to follow procedure regarding a time trade while being marked off sick on May 13, 2006. She was charged with marking off sick for a posted overtime shift and being AWOL for four hours on May 2, 2006. She was charged with marking off sick and being AWOL for four hours on May 8, 2006. And, Lee was charged with marking off sick

---

[1]Ms. Guyton is the Human Resource Manager for the Division of Police.

and being AWOL for four hours on May 20, 2006.  (First Guyton Aff., Exs. 2-7.)

In connection with the consolidation of all of these disciplinary charges, Lee entered into a settlement with the Division of Police on June 20, 2006, which provided that Lee plead guilty to the multiple attendance violations, that she was doing so with union representation and was offered the right to consult an attorney, that she waived her right to file a grievance relating to the charges or to appeal to any other body or tribunal, that she was not pressured or coerced into admitting the charges, and that all parties agreed that the settlement was not to be introduced into any other forum or tribunal except as necessary to enforce it or to demonstrate Lee's disciplinary record.  (Doc. # 118,  Deposition of Paula Lee ("Lee Dep."), Ex. B.)

On June 29, 2006, Lee was charged with marking off sick and being AWOL for 16 hours on June 2 and 3, 2006.  On July 18, 2006, Lee was charged with marking off sick and being in an AWOL status on June 12 through June 16, 2006.  (First Guyton Aff., Exs. 8, 9.) Lee initiated a disability retirement application with the Ohio Public Employees Retirement System ("OPERS") and on August 16, 2006 received approval of her request.  (First Guyton Aff. ¶ 12, Ex. 1.)  Lee had pending disciplinary charges at the time she resigned to take disability retirement.  Pursuant to the City of Columbus' policy Lee's separation was indicated as "not in good standing."  (First Guyton Aff. ¶ 13.)

Lee is currently receiving disability retirement benefits through OPERS.  (Lee Dep. 29.) On August 19, 2006, Lee notified the Division of Police in a one line letter that she was "submitting [her] resignation effective August 31, 2006 at 2:30 p.m. due to the approval of her long term disability effective September 1, 2006."  (First Guyton Aff., Ex. 1.)  Lee contends that she was forced to apply for disability retirement benefits because Defendants would not

accommodate her disability, *i.e.*, her migraine headache condition. Once the disability retirement benefits were approved, Lee accepted them and resigned, which she argues constituted a constructive discharge.

In her Third Amended Complaint, Lee brings claims for relief under the First, Fifth and Fourteenth Amendments to the Constitution of the United States through 42 U.S.C. §1983 ("Section 1983"), the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 790, *et. seq.*, and the Ohio Revised Code Chapter 4112. (Doc. # 109 ¶¶ 103-134, 223-238.) In Lee's memorandum in opposition, she specifically withdraws her Section 1983 claim based upon Defendants' alleged violation of her constitutional liberty interests. (Doc. # 165 at 6 of 38.)

## II.  Standard

Rule 56 of the Federal Rules of Civil Procedure provides for judgment as a matter of law if there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue as to any material fact, the evidence "must be viewed in the light most favorable" to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

In ruling on a motion for summary judgment "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Glover v. Speedway Super Am. LLC*, 284 F. Supp. 2d 858, 862 (S.D. Ohio 2003) (citing *InterRoyal Corp. v. Sponseller*, 889 F. 2d 108, 111 (6th Cir. 1989)). Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Id.*; Fed. R. Civ. P. 56(c).

## III. Analysis

### A. The Rehabilitation Act – Discrimination

> To recover on a claim of discrimination under either the [Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA")[2]] or the Rehabilitation Act, which in this circuit share the same substantive standard, "a plaintiff must show that: 1) he is an individual with a disability; 2) he is otherwise qualified to perform the job requirements, with or without reasonable accommodation; and 3) he was discharged solely by reason of his handicap."

*Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007) (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996) and *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 363 n.2 (6th Cir. 2007)).

Lee first claims that Defendants discriminated against her by constructively discharging

---

[2]Lee argues that the ADA Amendments Act of 2008 ("ADAAA"), which took effect on January 1, 2009, Pub. L. No. 110-325, 122 Stat. 3553 (2008), is applicable to the instant action. Defendants, however, correctly contend that the amendments to the ADA are not retroactive and have no application to the case at bar. *See Verhoff v. Time Warner Cable, Inc.*, 299 F. App'x. 488, 492 n.2 (6th Cir. 2008), *McDonald v. UPS*, No. 07-12022, 2009 U.S. Dist. LEXIS 47457, at *26 (E.D. Mich. June 5, 2009), and *Jones v. Wal-Mart Stores*, No.: 3:07-CV-461, 2009 U.S. Dist. LEXIS 47242, at *7-9 n.2 (E.D. Tenn. June 5, 2009) (instructive analysis and gathering of cases). Consequently, the Court will not retroactively apply the ADAAA to this action.

her based upon her migraine headaches.  Lee next contends that Defendants discriminated against her by failing to accommodate her or to engage in the interactive process of attempting to find accommodation for her.

### 1. Disability Discrimination Based Upon Adverse Employment Action

Lee presents circumstantial, as opposed to direct, evidence of discrimination, and, as a result, the Court applies the familiar three step burden-shifting framework originally articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).  The initial burden rests with the plaintiff to establish a *prima facie* case of discrimination.  *Monette*, 90 F.3d at 1186.  If the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment decision.  *Burdine*, 450 U.S. at 253.  Should the employer carry this burden, the burden returns to the plaintiff to prove by a preponderance of the evidence that the employer's proffered reason was in fact a pretext designed to mask illegal discrimination.  *See id.*  "[The plaintiff] can defeat summary judgment only if his evidence is sufficient to 'create a genuine dispute at each stage of the *McDonnell Douglas* inquiry.' "  *Jones v. Potter*, 488 F.3d at 404 (citing *Macy*, 484 F.3d at 364).

To establish a *prima facie* case of disability-based discrimination under the Rehabilitation Act, a plaintiff must establish each of the following five elements:

> (1) that he is disabled, (2) that he is otherwise qualified for the job, with or without reasonable accommodation, (3) that he suffered an adverse employment action, (4) that his employer knew or had reason to know of his disability, and (5) that, following the adverse employment action, either he was replaced by a nondisabled person or his position remained open.

*Jones*, 488 F.3d at 404 (citing *Timm v. Wright State Univ.*, 375 F.3d 418, 423 (6th Cir. 2004) and

*Monette*, 90 F.3d at 1185 (setting forth the same *prima facie* elements under the ADA)).  The

final element "may also be satisfied by showing that similarly situated non-protected employees

were treated more favorably."  *Id.* (citing *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246

(6th Cir. 1995)).

With regard to the first element of the *prima facie* case, the parties dispute whether Lee

was disabled at the time of her alleged constructive discharge.  To be considered disabled under

the Rehabilitation Act, an individual must (1) have a physical or mental impairment that

"substantially limits" him or her in at least one "major life activity," (2) have a record of such an

impairment, or (3) be regarded as having such an impairment.  *DiCarlo v. Potter*, 358 F.3d 408,

418 (6th Cir. 2004) (quoting *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002), which cited

to 29 U.S.C. § 705(20)(B) (Rehabilitation Act definition) and 42 U.S.C. § 12102(2) (ADA

definition)).  The first and third categories of disabilities are at issue in the present case.

### a.  *Category (1): actually disabled*

There is no dispute that Lee's migraine headache condition qualifies as a physical

impairment.  Defendants also do not dispute that the activities about which Lee alleges

substantial limitation qualify as major life activities, *i.e.*, sleeping, thinking, concentrating,

caring for herself, and working.  However, with regard to concentrating, in an unpublished

decision the Sixth Circuit rejected a plaintiff's contention that her migraine headaches limited

the major life activity of concentrating stating that "[c]oncentration may be a significant and

necessary component of a major life activity, such as working, learning, or speaking, but it is not

an 'activity' itself."  *Linser v. State of Ohio, Dep't of Mental Health*, No. 99-3887, 2000 U.S.

App. LEXIS 25644, 2000 WL 1529809 (6th Cir. Oct. 6, 2000).  Thus, this Court will not

evaluate whether Lee was substantially limited in her ability the concentrate.

The issue left before the Court then, is whether Lee's migraine headache condition substantially limited Lee's ability to engage in the major life activities of sleeping, thinking, caring for herself, and working. Working is to be treated "as a residual category resorted to only when a complainant cannot show she or he is substantially impaired in any other, more concrete major life activity." *Mahon*, at 295 F.3d at 590 (citing *Sutton v. United Air Lines Inc.*, 527 U.S. 471, 492 (1999),[3] 29 C.F.R.§ 1630.2(j), and *Henderson v. Ardco, Inc.*, 247 F.3d 645, 650 (6th Cir. 2001)).

Substantially limits means that an individual is unable to perform a major life activity that the average person in the general population can perform; or is significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. *See* 29 C.F.R. § 1630.2(j)(1); *Penny v. United Parcel Serv.*, 128 F.3d 408, 414 (6th Cir. 1997). Factors that should be considered in determining if a plaintiff qualifies as substantially limited in the relevant major life activity include:

    1. the nature and severity of the impairment;

    2. the duration or expected duration of the impairment; and

    3. the permanent or long term impact, or the expected permanent or long term
    impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).

---

[3]This case was superseded in part by the ADAAA.

i.  Sleeping

To support her claim of substantial limitation in the major life activity of sleeping, Lee

argues the following:

> Paula's migraines were so serious leading up to her separation that she "was
> unable to get any kind of sleep at nights."  She states, "I would get virtually no
> sleep during a migraine. . . .  I was in a constant state of fatigue."  Not only are
> Paula's migraines affecting her ability to sleep, but Paula also suffers from Sleep
> Apnea.

(Doc. # 165 at 22, 24 of 38 citing to Doc. # 132, Second Declaration of Paula Lee ("Second Lee

Decl.") ¶14; Doc. # 171-3 at 3 of 142, Declaration of Galen Davis, M.D. ¶4; Doc. # 171-4 at 17

of 73, Ex. 19a.)   Lee also submits the declaration of her treating neurologist, Jean E. Cibula,

M.D., which avers:

> Paula reported to me that she was suffering from insomnia during the time I was
> treating her.  Sleep disruption is associated with migraine, and Paula frequently
> suffered from sleep disruption during the latter years of my care for her.

(Doc. # 171-3 at 33 of 142, Declaration of Jean E. Cibula M.D. ("Cibula Decl.") ¶ 12.)

This evidence is insufficient to show substantial impairment of the major life activity of

sleeping.  The Sixth Circuit has held that "[g]etting between two and four hours of sleep a night,

while inconvenient, simply lacks the kind of severity we require of an ailment before we will say

that the ailment qualifies as a substantial limitation under the ADA."  *Boerst v. Gen. Mills*

*Operations*, 25 F. App'x. 403, 407 (6th Cir. 2002).  *See also Swanson v. Univ. of Cincinnati*, 268

F.3d 307, 316 (6th Cir. 2001) ("While less than five hours sleep is not optimal, it is not

significantly restricted in comparison to the average person in the general population."); *Verhoff*

*v. Time Warner Cable, Inc.*, 299 F. App'x 488, 492 (6th Cir. 2008) (holding that less than five

hours of "not restful" sleep is insufficient to constitute substantial impairment).  Here, Lee was

unable to sleep during a migraine; however, there is no evidence before the Court showing how often Lee suffered migraines during her sleep. Moreover, there is no evidence as to the duration of the night migraines. Thus, the Court concludes that, even when viewing the evidence in the light most favorable to Lee, she has failed to raise a genuine issue of material fact as to whether she was substantially limited in the major life activity of sleeping.

ii. Thinking and caring for herself

With regard to thinking and caring for herself, Lee submits her testimony that: "With the headaches, I suffered from vertigo, had great difficulty focusing and thinking at all. The multiple medications I was taking – including the pain medications – affected me by knocking me out." (Second Lee Decl. ¶12.)

Lee also submits Dr. Cibula's declaration:

> To amplify my earlier letters, one who suffers from severe migraines, as Paula does, will experience difficulty in thought processing and focus not only during the headache itself, but for some period of time after medication takes effect. This can also be true of the effects of vertigo, photophobia and fatigue resulting from the headache. There are side effects from the medications, particularly analgesics, which can cause drowsiness, lack of focus and concentration following administration of the medication.

(Cibula Decl. ¶ 11.) Dr. Cibula also stated that Lee's migraine condition is "certainly permanent." (*Id.* ¶ 10.)

Finally, in her deposition testimony, Lee stated that by the end of 2005 and throughout 2006 she experienced migraines every day. (Lee Dep. at 146.) Lee also testified that during migraines she was required to stay in bed, could not care for herself at all, could not think or concentrate, could not walk or go down stairs, and could not focus to use the telephone.

Viewing this evidence in the light most favorable to Lee, the Court concludes that the

evidence is sufficient to raise a genuine issue of material fact as to whether Lee was substantially

limited in her ability to think or to care for herself.  The evidence indicates that Lee suffered

from daily migraines, that the migraine condition was permanent, that Lee could not think or

care for herself during the migraine itself, after the migraine, and even after taking medication

for the migraine because the medication caused Lee difficulty in concentration and focus or

"knocked her out."   Under these circumstances, "what is necessary to 'control' the condition

may be part of what makes the person disabled.' "  *Cehrs v. Northeast Ohio Alzheimer's*

*Research Ctr.*, 155 F.3d 775, 781 (6th Cir. 1998) (citation omitted).

### iii.  Working

Turning to Lee's alleged substantial limitation in her ability to work, the Sixth Circuit

instructs that she must be limited not just from her particular job, but from a substantial class or

broad range of jobs:

> To be substantially limited in the major life activity of working, then, one must be
> precluded from more than one type of job, a specialized job, or a particular job of
> choice.  If jobs utilizing an individual's skills (but perhaps not his or her unique
> talents) are available, one is not precluded from a substantial class of jobs.
> Similarly, if a host of different types of jobs are available, one is not precluded
> from a broad range of jobs.

*Mahon*, 295 F.3d at 591 (quoting *Sutton*, 527 U.S. at 492).  Further, the court explained:

> To determine if the claimant is precluded from a substantial class or broad range
> of jobs, we compare his access to jobs to the access available to a non-injured
> individual with similar training and experience, looking specifically to the labor
> market in the claimant's geographic vicinity.

*Id.* (citing *Sutton*, 527 U.S. 491-92 and *Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247,

253-54 (6th Cir. 2000)).

In the instant action, Lee presents no evidence to allow the Court to "compare h[er]

access to jobs to the access available to a non-injured individual with similar training and experience, looking specifically to the labor market in the [her] geographic vicinity." *Id.* at 598 (no genuine issue of material fact raised because the plaintiff "failed to produce any evidence regarding the number of pediatrics nursing jobs from which she is excluded or the availability of pediatric nursing positions for which she is qualified"). Consequently, the Court concludes that Lee has failed to raise a genuine issue of material fact as to whether she was substantially impaired from the major life activity of working.

iv. Conclusion of actually disabled category

Based on the foregoing, the Court concludes that Lee has failed to raise a genuine issue of material fact as to whether her migraine headache impairment substantially limited her ability to sleep or to work. Thus, Lee cannot establish the first element of her *prima facie* case based upon these major life activities and Defendants' Motion is **GRANTED** in that regard. However, the Court concludes that Lee has raised a genuine issue of material fact as to whether her migraine headache impairment substantially limited her ability to think and to care for herself. Therefore, Lee has established the first element of her *prima facie* case of disability discrimination based upon these two major life activities. Consequently, the Court must now determine whether Lee can establish the remaining elements of the *prima facie* case with regard to this disability.        **b.  *Otherwise qualified***

To satisfy the second element of the *prima facie* standard, Lee must show that she was "otherwise qualified" to perform the communications technician job. *Jones*, 488 F.3d at 404. "An 'otherwise qualified' individual is one who, 'with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or

desires.' " *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 632 (6th Cir. 1999) (citing *Brickers v. Cleveland Bd. of Ed.*, 145 F.3d 846, 849 (6th Cir. 1998) and 42 U.S.C. § 12111(8)).

Defendants argue that they provided Lee with accommodations for her migraine headache disorder in the form of medical leaves of absence and that she was still unable to perform the essential functions of her employment condition. *See Walsh v. United Parcel Serv.*, 201 F.3d 718, 726 (6th Cir. 2000) ("Plaintiff is also correct that this Circuit has recognized that a medical leave of absence can constitute a reasonable accommodation under appropriate circumstances."); *Cehrs*, 155 F.3d 775, 782 (6th Cir. 1998) (finding a genuine issue of material fact as to whether an eight-week leave of absence followed by a request for an additional one-month leave was a reasonable accommodation under the ADA). Lee, however, exhausted all available FMLA and medical leaves of absence provided by the Division of Police. She argues that she should have been further accommodated with relief from mandatory overtime. In that regard, Defendants contend that they were not required to grant Lee's request because working overtime is an essential function of the communications technician position and elimination of essential job functions is not required as a form of reasonable accommodation. *Bratten*, 185 F.3d at 632 (6th Cir. 1999) (an accommodation of job restructuring "only pertains to the restructuring of non-essential duties or marginal functions of a job"). In response to this argument, Lee contends that mandatory overtime is not an essential job function. The Court, however, finds it unnecessary to determine whether overtime is an essential job function because the evidence before it shows that Lee could not perform the communications technician job even if she had been given the accommodation she requested. That is, in her third declaration that she executed to support her memorandum in opposition to Defendants' Motion, Lee avers that her

13

request to be relieved from overtime did not mean that she believed she could work a forty hour week without accommodation.

> My request to be relieved of overtime did not mean that I believed, or ever told anyone at the City, that I could work a 40 hour week without some form of accommodation. In fact, I knew that I would need accommodation even working a 40 hour week because of the frequency and severity of my migraines, as well as the unpredictability of when my migraines would hit. At the time I was making this request, my goal was first to stop the accumulation of unexcused absences resulting because of my inability to work overtime. Second, I was hopeful that the City would work with me and Dr. Cibula to establish some form of accommodation; the City never did.

(Doc. # 171-3 at 1-2 of 142, Third Declaration of Paula Lee ¶2.)

Thus, Lee's argument is that she could not have worked her job as a communications technician without the requested accommodation of being excused from overtime and also without some other form of accommodation – one that she never requested. It was, however, Lee's burden to articulate a reasonable accommodation. This Sixth Circuit directs that:

> To satisfy the second element of the *prima facie* standard, an employee "must establish that a 'reasonable' accommodation is possible, and bears a traditional burden of proof that she is qualified for the position with such reasonable accommodation." *Monette*, 90 F.3d at 1186 n.12. The employee's initial burden of articulating a reasonable accommodation need not be onerous. For the purposes of a *prima facie* showing, the plaintiff must merely "suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131, 138 (2d Cir. 1995). As the Second Circuit recently noted, "the regulations define reasonable accommodation only by example." *Id.* at 136. The examples include "job restructuring, part-time or modified work schedules, . . . and other similar actions." 34 C.F.R. § 104.12(b)(2).

*Cehrs*, 155 F.3d at 781.

Lee failed to meet her initial burden of articulating a reasonable accommodation that would make it possible for her to work at her position. Indeed, by her own testimony, she only requested to be accommodated by being exempted from the mandatory overtime requirements of

the communications technician position. (*See* Third Amended Complaint ¶ 114; Lee Dep. at 70-71, 75, 83-84 (confirming three times during her deposition that the accommodation she requested was no overtime).) However, if Lee had been given the requested accommodation of exemption from overtime, she still would not have been able to perform her job as a communications technician. Lee failed to articulate to Defendants, or to this Court, what type of reasonable accommodation would have allowed her to perform her job. Defendants cannot be held liable for failing to provide an accommodation that was not requested. In this regard, the Court notes that not only did Lee not informally request accommodation, similar to her requests for exemption from overtime, she also failed to utilize the Division of Police's standardized request procedure, by completing the form: "Procedures for Requesting a Reasonable Accommodation." (Second Guyton Aff. ¶ 2.)

Based on the evidence before it, and even when construing that evidence in the light most favorable to Lee, the Court concludes that Lee has failed to raise a genuine issue of material fact as to whether she was an 'otherwise qualified' individual is one who, 'with or without reasonable accommodation, could perform the essential functions of the communications technician employment position. Accordingly, the Court **GRANTS** Defendants' Motion on Lee's claim of disability discrimination based upon her alleged constructive discharge.

**c. *Category (3): Being regarded as disabled***

Lee asserts that Defendants regarded her as disabled from her ability to work. "This part of the [Rehabilitation] Act is intended to allow individuals to be judged according to their actual capacities, rather than through a scrim of 'myths, fears, and stereotypes' accruing around a perceived impairment." *Mahon*, 295 F.3d at 592 (citing *Sutton*, 527 U.S. at 489-90).

To determine whether an individual is "regarded as disabled," we apply the test laid out in *Sutton*:

> There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.

> 527 U.S. at 489. To run afoul of the act, then, a covered entity must hold a mistaken belief that a claimant is disabled within the meaning of the [the Rehabilitation Act or the ADA]. *See Ross* [*v. Campbell Soup Co.,*] 237 F.3d [701,] 709 (6th Cir. 2001).

*Mahon*, 295 F.3d at 592.

In a "regarded as" disability discrimination claim that relies upon the major life activity of working, a plaintiff need only show that she is regarded as disabled from her general type of work in that general geographic area. *Moorer v. Baptist Mem'l Health Ctr.*, 398 F.3d 469, 484 (6th Cir. 2005).

In the case *sub judice*, Lee contends that there is a genuine issue of material fact as to whether Defendants mistakenly regarded her as disabled from her general type of work in the relevant general geographic area. As support for this argument, Lee relies upon the fact that Defendants "facilitated" her application for short term disability and for disability retirement "by cooperating by providing information to Aetna and to OPERS and in not objecting to the applications." (Doc. # 165 at 28 of 38.) Further, Lee relies upon her allegation that Defendants refused to engage in the accommodation process, which she argues indicates that they regarded her as disabled. Finally, Lee avers that Defendant Larry Yates informed her that she had "too many medical issues," during a conversation Lee had with Yates, in which Lee requested that she be allowed to mark off from overtime so that she could visit a cardiologist. (Second Lee

Decl. ¶ 20.)  Lee's arguments are not well taken.

First, simply because Defendants supplied Aetna and OPERS with requested information and did not object to Lee's applications for disability benefits does not indicate that Defendants regarded Lee as disabled.  As a judge of this District explained in *Dabney v. Ohio Dep't. of Admin. Serv.*, No. 2:04-CV-528, 2006 U.S. Dist. LEXIS 23435 (Mar. 22, 2006):

> That an employer believes that an employee may qualify for disability benefits under a standard that is narrower than the Rehabilitation Act's definition of "disability" is not evidence that the employee is "regarded as disabled" under the Act.  *Hoskins v. Oakland County Sheriff's Dep't*, 44 F. Supp.2d 882, 891 (E.D. Mich. 1999), *aff'd*, 227 F.3d 719 (6th Cir. 2000).  The standards for disability benefits are that the employee cannot perform the essential functions of her job -- not a broad range of jobs.  *See* Ohio Admin. Code §§ 123:1-33-02; 123:1-33-12(C).

> Given the disparity between the definition of disabled for purposes of state disability benefits and the definition of disabled for purposes of the Rehabilitation Act, defendant's suggestion that plaintiff was qualified for state disability benefits because she was unable to perform the essential functions of a particular job does not show that defendants regarded plaintiff as disabled within the meaning of the Rehabilitation Act.

*Id.* at * 29-30; *see also Daugherty v. Sajar Plastics*, 544 F.3d 696, 704 (6th Cir. 2008).

Second, Lee's argument that Defendants' refusal to accommodate her shows that Defendants believed that Lee was incapable of performing any work, is unpersuasive.  Lee relies upon an incident in which she brought a doctor's note to her supervisor in an effort to be relieved from her scheduled overtime.  Lee avers that her supervisor refused to accept the note, stating: "Unfortunately, medical excuses are not acceptable for getting out of overtime."  (Second Lee Decl.  ¶¶ 18-19.)  This incident in no way indicates that Lee's supervisor regarded her as disabled.

Third, the comment made by Yates that Lee had "too many medical issues," is an isolated

remark, made well over a year before Lee took disability retirement, that is simply insufficient to show that Defendants regarded Lee as disabled from a the major life activity of working.  *See Rosso v. A.I. Root Co.*, 97 F. App'x. 517, 521 (6th Cir. 2004) (employer's remarks that employee was "old" and "had severe memory loss" that appeared to be "early Alzheimer's disease" were found to be "isolated and abstract since [the employee] was discharged six and one-half months after the November meeting [where the comments were made]").

Finally, Lee has utterly failed to present evidence that she was regarded as "disabled from her general type of work in that general geographic area."  *Moorer*, 398 F.3d at 484, or that Defendants held any mistaken belief about her.  *See Mahon*, 295 F. 3d at 592 ("Mahon has not shown that TVA regarded him as disabled under the [Rehabilitation Act] because he has not shown that TVA held any *mistaken* belief about him." ) (emphasis in the original).

Accordingly, the Court concludes that Lee has failed to raise a genuine issue of material fact as to whether Defendants regarded her as disabled, and therefore, Defendants' Motion on that claim is **GRANTED**.

### 2.  Disability Discrimination Based Upon Failure To Accommodate

> In order for a plaintiff to prevail on an allegation of handicap discrimination based on failure to accommodate, he must first establish a *prima facie* case by showing that: (1) he is an individual with a handicap . . . ; (2) he is qualified for the position [with or without reasonable accommodation] . . . ; (3) the agency was aware of his disability; (4) an accommodation was needed, *i.e.*, a causal relationship existed between the disability and the request for accommodation; and (5) the agency failed to provide the necessary accommodation.  Once the plaintiff has presented a *prima facie* case, the burden shifts to the employer to demonstrate that the employee cannot reasonably be accommodated, because the accommodation would impose an undue hardship on the operation of its programs.  *Gaines v. Runyon*, 107 F.3d 1171, 1175-76 (6th Cir. 1997) (citations omitted).

*DiCarlo*, 358 F.3d at 419.

Here, the Court already determined that, based on the evidence in the record, Lee cannot

establish that she was qualified for the position of communications technician. This

determination also prevents Lee from maintaining an action for failure to accommodate her for

her disability. *See id.* Accordingly, the Court **GRANTS** Defendants' Motion as it relates to

Lee's claim of disability discrimination for failure to accommodate.

## B. The Rehabilitation Act – Retaliation

The Rehabilitation Act prohibits retaliation against an employee because he or she

engaged in a statutorily protected activity. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir.

2001). A plaintiff "need not show that she is under a 'disability' to maintain a claim under the

Rehabilitation Act based on the theory that her employer retaliated against her because she

engaged in legally protected activities." *Ferrero v. Henderson*, 341 F. Supp.2d 873, 887 (S.D.

Ohio 2004) (citing *Davis v. Flexman*, 109 F. Supp.2d 776, 801-02 (S.D. Ohio 1999) and *Barrett*

*v. Lucent Technologies, Inc.*, 36 F. App'x. 835, 840 (6th Cir. 2002)). Lee relies upon

circumstantial evidence of retaliation, and thus the *McDonnell Douglas/Burdine* analytical

framework applies. *Gribcheck*, 245 F.3d at 550 (citing *McDonnell Douglas Corp.*, 411 U.S. at

802; *Burdine*, 450 U.S. at 253).

> A *prima facie* case of retaliation has four elements: 1) the plaintiff engaged in
> legally protected activity; 2) the defendant knew about the plaintiff's exercise of
> this right; 3) the defendant then took an employment action adverse to the
> plaintiff; and 4) the protected activity and the adverse employment action are
> causally connected.

*Id.* (citing *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987)). Defendants here do not dispute

the second element.

With regard to the first element of the *prima facie* case, Lee argues that she was

constructively discharged in retaliation for complaining about an unlawful policy that required her to produce confidential medical information. Specifically, Columbus Police Division Directive ("Directive") 3.07 § III(H)(1)(c) required employees who were returning from sick leave to regular duty to provide a note from his or her attending physician to his or her immediate supervisor. On July 15, 2009, this Court issued an Opinion and Order in which it declared that Directive 3.07 § III(H)(1)(c) violates the Rehabilitation Act and Section 1983 and permanently enjoined Defendant the City of Columbus from enforcing it. (Doc. # 183.) Lee contends that her complaints to her employer about Directive 3.07 § III(H)(1)(c) satisfy the first element of her *prima facie* case. The Court agrees that complaints, or opposition to, Directive 3.07 § III(H)(1)(c) is a legally protected activity. *See Johnson v. University of Cincinnati*, 215 F.3d 561, 579-80 (6th Cir. 2000) (employee must have reasonable and good faith belief that he is opposing an act or practice that violated ADA). Thus, Lee has established the first element of her *prima facie* case.

With regard to the third element of the *prima facie* case, Lee contends Defendants failed to accommodate her disability and instead continued to bring disciplinary charges against her for missing work due to her disability, which forced her to apply for and accept disability retirement. Thus, Lee contends that her resignation to take disability retirement was actually a constructive discharge.

> To constitute a constructive discharge, the employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit and the employee must actually quit. To determine if there is a constructive discharge, both the employer's intent and the employee's objective feelings must be examined. *E.g., Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir. 1982). Intent can be shown by demonstrating that quitting was a foreseeable consequence of the employer's actions.

*Moore v. Kuka Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999).

From April 2006 through July 2006, the Division of Police brought seven disciplinary charges against Lee for being AWOL. It is not disputed that Lee was absent on each of these occasions due to her migraine headache disability. Lee was given a ten day suspension and testified that she was told by her supervisor that she would continue to receive progressive discipline for any medical absences since she had already exhausted all of the available medical disability leave. The Sixth Circuit has "held that an employee was constructively discharged when he reasonably believed his termination or demotion was imminent, *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 554(6th Cir. 2002) (termination); *Saroli v. Automation and Modular Components, Inc.*, 405 F.3d 446, 452(6th Cir. 2005) (demotion)." *Plautz v. Potter*, 156 F. App'x. 812, 818 (6th Cir. 2005). This element presents a close question; however, the Court finds that the evidence is sufficient for a jury to find that a reasonable person in Lee's position would have felt compelled to resign and that Lee's resignation was a foreseeable consequence of the imposition of discipline in these circumstances. Thus, Lee has established the third element of her *prima facie* case.

With regard to the causal connection, the Sixth Circuit instructs that a "plaintiff may demonstrate the causal connection by the proximity of the adverse employment action to the protected activity." *Gribcheck*, 245 F.3d at 551 (citing *Wrenn*, 808 F.2d at 501). Thus, all that is necessary to establish this element of the *prima facie* case is to show that Lee's opposition was ongoing at the time of the discipline charges that resulted in the alleged constructive discharge. *See id.* ("Gribcheck showed that his litigation was ongoing at the time of his suspension, thereby establishing the fourth prong of his *prima facie* case."). Here, Lee has met that burden,

submitting her testimony that at some time during 2006 "she began to question supervisors about [the requirement to provide confidential medical information] and object to it." (Second Lee Decl. ¶ 9.) This was the same time period during which Lee received the numerous disciplinary charges that she claims resulted in her constructive discharge. Consequently, Lee has established the fourth element of her *prima facie* case.

Accordingly, Lee has met her burden of establishing a *prima facie* case of retaliation under the Rehabilitation Act. The burden of production now shifts to Defendants "to 'articulate some legitimate, non[retaliatory] reason' for its decision" to deny Lee the accommodation she requested and to issue disciplinary charges. *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 253; *Wrenn v. Gould*, 808 F.2d 493, 501 (6th Cir. 1987). "Once defendant articulates the non[retaliatory] reasons, the *Burdine* presumption of discrimination flowing from the *prima facie* case automatically drops out of the case." *Wrenn*, 808 f.2d at 501 (citing *Weems v. Ball Metal & Chemical Div., Inc.*, 753 F.2d 527, 529 n.2 (6th Cir. 1985)).

Here, Defendants have met their burden by articulating a legitimate reason for denying Lee's requested accommodation of exemption from overtime, *i.e.*, that the Division of Police consider working mandatory overtime an essential job function of the communications technician position and, therefore, not subject to modification based on disability accommodation. Further, Defendants state that the legitimate reason they disciplined Lee was because she was AWOL, not in retaliation for opposing Directive 3.07 § III(H)(1)(c). Therefore, Lee must answer Defendants' nonretaliatory reasons by demonstrating that a reasonable jury could find by a preponderance of the evidence that the defendant's stated reasons are pretextual. *Gribcheck*, 245 F.3d at 552. "Even though the burden of going forward with evidence to answer

[the] *prima facie* case . . . moved to the [defendant], the ultimate burden of persuasion never shifted from the plaintiff." *Wrenn*, 808 F.2d at 501.

Lee fails this last step of the *McDonnell Douglas/Burdine* framework, *i.e.*, "to prove by a preponderance of the evidence that the employer's proffered reason was in fact a pretext designed to mask illegal [retaliation]." *Burdine*, 450 U.S. at 253. With regard to Defendants' stated reason for disciplining Lee, Lee does not dispute that she violated the attendance work rules by marking off for her migraine headaches when she had no available leave to cover the absence, in other words she admits she was AWOL. Lee fails to provide any evidence that, although she violated the work rules, she was disciplined not because of these violations, but instead because she had complained about being required to provide confidential medical information.

With regard to Defendants' assertion that Lee was not accommodated because Defendants considered overtime an essential function of the communications technician position, Lee disagrees that overtime is an essential function. However, the relevant inquiry is not whether overtime was an essential function of the job, but rather whether Defendants' stated reason was a pretext for what was really retaliation against Lee for complaining about being required to provide confidential medical information. In that context, simply disputing why Defendants failed to accommodate Lee is not sufficient. "Disputation of the facts underlying [the defendant's] legitimate business reason . . . is not sufficient to carry [the plaintiff's] burden" to show pretext. *Gribcheck*, 245 F.3d at 552 (quoting *Irvin v. Airco Carbide*, 837 F.2d 724, 726 (6th Cir. 1987). "A 'blanket denial [of] the employer's articulated reasons . . . is not enough; a plaintiff must take the extra step of presenting evidence to show that the reasons given are an

attempt to cover up the employer's alleged real [retaliatory] motive.' " *Id.* (quoting *Irvin*, *supra*). Here, Lee has failed to present evidence to show that the reasons Defendants have given are an attempt to cover up the employer's real alleged motive of retaliating against Lee for opposing the policy of being required to provide confidential medical information.

Consequently, even taking all of Lee's evidence in the light most favorable to her, she "still cannot show that a reasonable jury could find by a preponderance of the evidence that Defendants' stated reasons for [her disciplinary charges] are pretextual." *Id.* at 553. "The burden of proof lies with [Lee], and [s]he has failed to meet its requirements." *Id.* Accordingly, the Court **GRANTS** Defendants' Motion as it relates to Lee's retaliation claim.

## C. 42 U.S.C. § 1983

To state a claim under Section 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). A municipality, may be held liable under Section 1983 only when the municipality itself causes the alleged constitutional violation. *Monell v. Dep't of Social Servs. Of City of New York*, 436 U.S. 658, 694 (1978). The doctrine of *respondeat superior* does not apply; a governmental entity cannot be held liable under Section 1983 based solely upon allegations that an employee or agent inflicted an injury. *Id.* at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. The Sixth Circuit has held that "to satisfy the *Monell* requirements a plaintiff must 'identify the policy,

connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.' " *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993) (citations omitted).

Here, Lee alleges that she was denied her constitutional rights to substantive and procedural due process.

### 1. Procedural Due Process

The Fourteenth Amendment prohibits the deprivation of "life, liberty, or property" without due process of law. The Court must undertake a two-step analysis when considering claims for the violation of due process rights. *Mitchell v. Fankhauser*, 375 F.3d 477, 480 (6th Cir. 2004) (citing *Leary v. Daeschner*, 228 F.3d 729, 741-42 (6th Cir. 2000)). First, it must determine whether the plaintiff has a property interest entitled to due process protection. *See id.* If she has such a protected property interest, then the Court must determine what process is due. *See id.*

In the instant action, there is no dispute that Lee had a constitutionally protected property interest in her employment. *See also Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir. 1997) ("Government employment amounts to a protected property interest when the employee is entitled to continued employment."). Lee argues that she was deprived of that property without due process when the Division of Police accepted her resignation without giving her any other option and remaining silent on the fact that if Lee resigned her separation from employment would be not in "good standing," per the policy of the Division.

With regard to the first prong of the analysis, the Sixth Circuit has explained:

A constructive discharge may constitute a deprivation of property within the meaning of the Fourteenth Amendment. *See, e.g., Parker* [*v. Bd. of Regents of*

*Tulsa Jr. Coll.*], 981 F.2d [1159,] 1162 [(10the Cir. 1992)] ("If, however, her resignation was so involuntary it amounted to a constructive discharge, defendants did deprive her of her property interest without due process."); *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 167, 173 (4th Cir. 1988) ("If, on the other hand, Stone's resignation was so involuntary that it amounted to a constructive discharge, it must be considered a deprivation by state action triggering the protections of the due process clause."); *Findeisen v. North East Indep. Sch. Dist.*, 749 F.2d 234, 236-39 (5th Cir. 1984) (holding that constructive discharge claim set forth the type of deprivation of property for which due process required a predeprivation hearing); *Parrett v. Connersville*, 737 F.2d 690, 694 (7th Cir. 1984) (holding that if the plaintiff was constructively discharged, he was deprived of property within the meaning of the Fourteenth Amendment). *See also Burt v. Board of Educ.*, 35 F.3d 565 (6th Cir. 1994) (unpublished) (suggesting that a § 1983 procedural due process claim can be based on a constructive discharge).

*Nunn v. Lynch*, 113 F. App'x. 55, 59 (6th Cir.  2004).

Thus, based on the Court's conclusion *supra*, that Lee has raised a genuine issue of material fact as to whether her resignation was a constructive discharge, the first prong of her due process claim is met.  Now, Lee "must also show that the deprivation was accomplished without the process that was due under the law."  *Id.* at 60 (citing *Mitchell*, 375 F.2d at 480 and *Parrett*, 737 F.2d at 694 (holding that if the plaintiff was constructively discharged, "the only question would then be whether he was given due process of law.")).

There is no dispute that Lee was not given, nor did she request, a pre-deprivation hearing or a post-deprivation hearing.  As the *Nunn* court explained:

Because Nunn was not terminated, suspended, or demoted, he did not have a right to a pre-deprivation hearing under the municipality's civil service rules.  The rules do not provide for a hearing when an employee resigns.  Even if the employee can later show that his resignation was not voluntary, the employer cannot be required to give notice before an employee takes what appears to be a voluntary act.   Moreover, the Supreme Court has noted that "when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply impracticable since the state cannot know when such deprivations will occur."  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

> On the other hand, if Nunn's resignation was a constructive discharge, he arguably had a right to a post-deprivation hearing. However, Nunn has not alleged that the City denied a request for a post-deprivation hearing. He has not alleged that he ever requested a hearing.

*Id.* at 60-61.

Like the plaintiff in *Nunn*, Lee here failed to request a post-deprivation hearing, and

therefore, cannot meet the second prong of the denial of due process test. Moreover, again like

the *Nunn* court explained, even if Lee had been denied a post-deprivation hearing, she "has still

failed to state a deprivation of due process because he has not alleged the inadequacy of state

post-deprivation remedies." *Id.* at 61.

> The Supreme Court has held that the "unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful [state] postdeprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533. "If satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury." *Jefferson v. Jefferson County Pub. Sch. Sys.*, 360 F.3d 583, 587-88 (6th Cir. 2004). Accordingly, in order to state a procedural due process claim under section 1983 "the plaintiff must attack the state's corrective procedure as well as the substantive wrong." *Meyers v. City of Cincinnati*, 934 F.2d 726, 731 (6th Cir. 1991) (quoting *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983)). A plaintiff "may not seek relief under Section 1983 without first pleading and proving the inadequacy of state or administrative processes and remedies to redress her due process violations." *Jefferson*, 360 F.3d at 588. *See also Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988) ("Although one need not exhaust state remedies before bringing a Section 1983 action claiming a violation of procedural due process, one must nevertheless prove as an element of that claim that state procedural remedies are inadequate.").

> A municipality's refusal to provide a post-termination hearing does not constitute a due process violation where an adequate state corrective judicial process exists. *Meyers*, 934 F.2d at 731. In *Meyers* a municipal civil service commission refused to allow an employee to be heard because it interpreted the employee's retirement as voluntary. We held that the plaintiff had not shown a procedural due process violation where the plaintiff attacked the municipal administrative hearing process, but not the state's judicial process for the correction of errors by administrative agencies. *Id.* Nunn has not alleged the inadequacy of the state's

judicial process for the correction of errors by administrative agencies.
Accordingly, Nunn has failed to allege a constitutional due process claim.

*Id.*  Like the plaintiff in *Nunn*, Lee here has failed to attack the inadequacy of Defendants post-deprivation processes, and therefore, has failed to allege a constitutional due process claim.

Based on the foregoing, there are no genuine issues of material fact as to Lee's Section 1983 claim based upon alleged violations of procedural due process.  Accordingly, the Court **GRANTS** Defendants' Motion as to that claim for relief.

### 2. Substantive Due Process

Lee argues that she was denied substantive due process in violation of the Fifth and Fourteenth Amendments to the United States Constitution based upon her constructive discharge.  This claim too fails because Lee has not identified any official policy or custom of the City of Columbus, Division of Police upon which the constitutional due process claim is based.

Further, the claim fails because Lee cannot set forth a constitutional deprivation.  "The doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed has come to be known as substantive due process."  *Pearson v. City of Grand Blanc*, 961 F. 2d 1211, 1216 (6th Cir. 1992) (citations omitted).  "Substantive due process claims may be loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.' "  *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F. 3d 1220, 1228 (6th Cir. 1997) (citations omitted).

With regard to the first category, Lee relies upon her alleged deprivation of employment as the particular constitutional guarantee at issue.  The Sixth Circuit, however, has rejected

attempts to expand substantive due process protection to claims involving property interests in employment. *See Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1350 (6th Cir. 1992).

As to the second category, there is simply nothing in this case that shocks the conscience.

The Court concludes that there are no genuine issues of material fact as to Lee's Section 1983 claim based upon substantive due process. Accordingly, the Court **GRANTS** Defendants' Motion as to that claim for relief.

## D. State Law Claims

"Having so dismissed [Lee's] federal claims, this Court presumptively should not address any state law claim." *See Jackson v. Heh*, 215 F.3d 1326, 2000 WL 761807, at *8 (6th Cir. 2000) (unpublished table decision) (referencing 28 U.S.C. § 1367 and stating that "[w]here, as here, a federal court has properly dismissed a plaintiff's federal claims, there is a 'strong presumption' in favor of dismissing any remaining state claims unless the plaintiff can establish an alternate basis for federal jurisdiction." (citing *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1998))). Lee has failed to suggest any justification or alternative basis for exercising jurisdiction over her remaining state law claims should the Court dismiss her federal claims.

The Court, therefore, in its discretion declines to exercise federal jurisdiction over Lee's remaining state law claim for disability discrimination. Accordingly, the Court **DISMISSES** without prejudice Lee's remaining state law claim for relief.

## E. Oral Argument

With regard to Lee's Request for Oral Argument, the Court concludes that oral argument is not "deemed to be essential to the fair resolution of the" motions before it, and therefore

**DENIES** Lee's request.  S.D. Ohio Civ. R. 7.1(b)(2).

## IV.  Conclusion

For the reasons set forth above, the Court **GRANTS** Defendants' Motion (Doc. # 139), **DENIES** Lee's Request for Oral Argument (Doc. # 165), and **DISMISSES** without prejudice Lee's state law claims for relief.  The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

<u>**/s/ Gregory L. Frost**</u>
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**