# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

LISA LEE, et al.,

      Plaintiff,

v.

CITY OF COLUMBUS, et al.,

      Defendants.

Case No. 2:07-cv-1230
JUDGE GREGORY L. FROST
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter is before the Court on the Motion of Plaintiffs Representing Class I for Order Appointing Special Master to Determine Issue of Damages ("Plaintiffs' Motion to Appoint Special Master") (Doc. # 184), Defendant City's Memorandum in Opposition to Motion of Class I Plaintiffs for Order Appointing Special Master and Motion to Strike Affidavit of Vivian Fisher ("Defendant's Motion to Strike") (Doc. # 197), and the Reply of Class I Representatives to Defendant City's Memorandum in Opposition to Plaintiffs' Motion to Appoint Special Master and Defendant's Motion to Strike (Doc. # 204). For the reasons that follow, the Court **GRANTS in part and DENIES in part** Plaintiff's Motion to Appoint Special Master (Doc. # 184) and **DENIES** Defendants' Motion to Strike (Doc. # 197).

## I. Background

On December 4, 2007, several individual employees and previous employees of the City of Columbus, Ohio, Department of Public Safety, Division of Police filed this action. The individual employees moved on behalf of themselves and a purported class, alleging that Columbus Police Division Directive ("Directive") 3.07 § III(H)(1)(c) violated the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 790, *et. seq.* ("the Rehabilitation Act") and the privacy

provisions of the First, Fifth, and Fourteenth Amendments to the Constitution of the United States through 42 U.S.C. § 1983 ("Section 1983"). Directive 3.07 § III(H)(1)(c) required employees who were returning from sick leave to regular duty to provide a note from his or her attending physician to his or her immediate supervisor indicating the nature of the illness that caused the employee's absence.

On March 27, 2008, two of the individually named plaintiffs filed a motion requesting a preliminary injunction prohibiting the City of Columbus from enforcing Directive 3.07 § III(H)(1)(c) against them. (Doc. # 7.) On June 24, 2008, this Court granted these two plaintiffs' motions and issued a preliminary injunction. (Doc. # 32.)

On May 21, 2008, Plaintiffs filed a motion to certify two plaintiff classes. (Doc. # 26.) That motion was fully briefed and on August 22, 2008, this Court granted class certification. (Doc. # 39.) Defendants subsequently filed a motion to modify the definition of one of the classes, which this Court granted. (Docs. # 59, 66.) The classes are defined as follows:

> CLASS I [certified under Fed. R. Civ. P. 23(b)(2) and (b)(3)]
>
> All employees of the City of Columbus, Division of Police, subject to the enforcement of Division Directive 3.07, who, since December 4, 2005 through present, pursuant to the Directive, have been required to disclose confidential medical information to supervisory personnel.
>
> CLASS II [certified under Fed. R. Civ. P. 23(b)(2)]
>
> All current employees of the City of Columbus, Division of Police, subject to the enforcement of Division Directive 3.07.

(Doc. # 66 at 1, 6.)

On September 9, 2009, Plaintiffs filed a motion requesting that the preliminary injunction be extended to all members of Class II. (Doc. # 40.) The Court granted that motion on October

8, 2008. (Doc. # 48.)

On March 31, 2009, Plaintiffs filed a motion for partial summary judgment, requesting that this Court find that Directive 3.07 § III(H)(1)(c) violated the Rehabilitation Act and Section 1983, and that the City of Columbus "violated each individual Plaintiff's and each Class Member's" constitutional rights and their rights under the Rehabilitation Act when these individuals were required to provide a note from his or her attending physician to his or her immediate supervisor indicating the nature of the illness that caused the absence. Plaintiffs also requested that the Court issue a permanent injunction against the enforcement of the Directive. (Doc. # 103.) On May 15, 2009, Defendants filed their motion for summary judgment as to the class claims on this same issue. (Doc. # 142.)

On July 15, 2009, this Court issued its Opinion and Order on these motions, holding that Directive 3.07 § III(H)(1)(c) violated the Rehabilitation Act and that it violated the City's employees' constitutional privacy rights enforced through Section 1983, and therefore, granted Plaintiffs motion for summary judgment as to the liability of the City of Columbus. (Doc. # 183.) The Court then issued a permanent injunction against the City's enforcement of Directive 3.07 § III(H)(1)(c). *See id.*

On July 24, 2009, Defendants appealed to the United States Court of Appeals for the Sixth Circuit this Court's decision granting Plaintiffs' motion for summary judgment and issuing the permanent injunction. (Doc. # 186.)

Plaintiffs have now filed a motion to appoint a special master and to determine damages and Defendants have filed a motion to strike the affidavit Plaintiffs' filed in support of their motion. Those two motions are now ripe for review.

## II. Analysis

### A. Plaintiffs' Motion to Appoint Special Master

In their motion, Plaintiffs ask this Court to appoint a special master to determine appropriate aggregated damages on a class-wide basis for Class I by using representative class members as opposed to each individual class member damages determinations. In opposition to that motion, Defendants contend that this Court has not issued a ruling as to their liability and therefore, appointing a special master to ascertain damages is premature. The Court will first address the liability issue and then the request for an appointment of a special master.

#### 1. Liability

Defendants argue that, in the Opinion and Order that issued the permanent injunction against enforcement of Directive § 3.07 III(H)(1)(c), "the Court sustained Plaintiffs' motion for injunctive relief based on the Court's assessment of the Directive's potential to lead to a violation of either the Rehabilitation Act or a deprivation of a Constitutional right to privacy in medical information." Defendants, however, are mistaken.

In their motion for summary judgment, Plaintiffs asked for a determination as to Defendant the City of Columbus' liability for requiring its employees to abide by Directive § 3.07 III(H)(1)(c). Plaintiffs stated specifically that they sought summary judgment on the "(1) class and individual allegations under the Rehabilitation Act . . . ; and (2) class and individual allegations under the First, Fifth, and Fourteenth Amendments to the Constitution . . . . [because] the City violated each individual Plaintiff's and each Class Member's . . . rights by forcing them to disclose confidential information regarding the state of each person's health." (Doc. # 103 at 4.) This Court granted Plaintiffs' motion for summary judgment as to Defendants' liability. In

that same decision the Court issued a declaratory judgment as to the legality of that Directive:

> The Court therefore **DECLARES** that Directive 3.07 § III(H)(1)(c) violates the Rehabilitation Act and Section 1983.

(Doc. # 183 at 30.) The Court then issued a permanent injunction against the enforcement of that Directive. *See id.*

The City's assessment of this Court's holding as one that found that the City's enforcement of Directive § III(H)(1)(c) against the Class I members could potentially lead to a violation of the Rehabilitation Act or Section 1983 borders on insincerity. No reading of this Court's opinion supports the City's claim. That being said, the Court will briefly indicate to the City why its arguments in its opposition memorandum fail.

First, the City attempts to resurrect an argument it made in its memorandum in opposition to Plaintiffs' motion for summary judgment (Doc. # 127) and in its own motion for summary judgment (Doc. # 142), that no claim is viable under the Rehabilitation Act in the absence of each plaintiff proving that he or she is "disabled" as that term is defined under the Rehabilitation Act and each plaintiff establishing proof of "intentional discrimination," based on those disabilities. This Court rejected the City's argument, stating in the section titled "Directive 3.07 § III(H)(1)(c) violates the Rehabilitation Act":

> [A] plaintiff need not prove that he or she has a disability in order to challenge Directive 3.07 § III(H)(1)(c)'s medical disclosure requirement under 42 U.S.C. § 12112(d)(4)(A). Thus, the Court **DENIES** Defendant's request for summary judgment based on Plaintiff Classes failure to show that any of the class members are individuals with disabilities.

(Doc. # 183 at 19.)

With regard to the City's liability under Section 1983, the City argues that in its Opinion and Order this Court held that there was a "constitutional right to privacy when medical

information regarding select private matters were involved" and that, in the instant action, "the requirement to submit a doctor's note to a supervisor may have entailed disclosures that the Sixth Circuit would deem permissible." (Doc. # 197 at 4) (emphasis in original). Defendants then conclude that Class I members are each required to prove that each doctor's note he or she provided to his or her supervisor included "select" private matters that warrant protection. Defendants argument is based on an inaccurate reading of this Court's Opinion and Order.

That is, in its decision, this Court explained that the Americans with Disabilities Act, 42 U.S.C. § 12112(d) *et seq.* ("ADA")[1] permits disclosure of confidential medical information to a supervisor "only in select circumstances" and that those select circumstance are not present in the instant action. Those circumstances, as indicated by the Court in its decision, are found in 42 U.S.C. § 12112(d)(3)(B)(i), and are that "supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations." This Court explained:

> The ADA and its implementing rules explicitly provide for disclosure of such medical information to a supervisor only in select circumstances, and by so expressly limiting disclosure, the statutory scheme implicitly forecloses disclosure to supervisors for purposes that fall outside those narrow and specific purposes. If the ADA were intended to allow full disclosure to a supervisor in all instances, then there would be no need for the specific disclosure to a supervisor language. *See, e.g.,* 42 U.S.C. § 12112(d)(3)(B)(i).

(Doc. # 183 at 17.)

The Court in no way left open the issue of whether the inclusion of the nature of the illness of the employee on the note submitted by Class I members to their immediate supervisors

---

[1] This Court held that the Rehabilitation Act incorporates the limitations on disclosure of medical information contained within the ADA. (Doc. # 32 at 10-13.)

violated the constitutional privacy interests of the class members–it did. Directive 3.07 § III(H)(1)(c) did not simply require information regarding necessary restrictions on the work or duties of the employee and necessary accommodations to be included as is permitted by the ADA. The notes required to be provided by Class I members to their immediate supervisors fall outside those narrow and specific select circumstances provided for by the ADA. Thus, it was the submission of the nature of the illness confidential medical information to the employee's immediate supervisor that was itself the violation.

### 2. Special master

Plaintiffs request that this Court appoint a special master to determine the amount of damages due to Class I members. Plaintiffs also request that the Court direct the damages determinations to proceed on an aggregate, class-wide basis by utilizing representative class members as opposed to resorting to individual trials on each class member's claim. Plaintiffs contend that it is unnecessary to make individual damages determinations because the damages for each violation is the same for each member of the class. Consequently, Plaintiffs argue, once an amount is determined appropriate for a violation, that amount can be awarded to each member of the class for each violation to which he or she was subjected. Plaintiffs assert that "the law provides that this Court may fashion a means other than conducting hundreds of trials to determine damages in a case where each individual is subjected to the same blanket policy." (Doc. # 204 at 3.) For the most part, this Court finds Plaintiffs' arguments well taken.

The law is indeed clear that this Court has broad discretion in managing a class action. *See Califano v. Yamasaki*, 442 U.S. 682, 703 (1979). With regard to utilizing representative class members to determine class-wide damages, the authors of one noted treatise have stated:

7

> In situations when aggregate proof of damages is sought to be proved on behalf of a class, no special or unique rules of evidence are involved; nor are any special substantive principles invoked; nor is defendant's monetary liability increased at all from what it would be if all class members individually proved their monetary claims.

3 Newberg on Class Actions §10:2 (4th ed. 2002).

In the instant action, allowing proof of aggregate damages would be beneficial to the Court and the parties in that it would conserve their resources and allow a more timely and efficient conclusion to this action. Further, Defendant's monetary liability will not be increased at all from what it would be if all class members individually proved their monetary claims.

In *In re Nassau County Strip Search Cases*, No. 99-CV-4238, 2008 U.S. Dist. LEXIS 29083 (E.D. N.Y. March 27, 2008), a case this Court finds well reasoned and instructive, the plaintiffs sought Rule 23(b)(3) class certification after each was arrested for misdemeanor offenses, transported to jail, and then strip searched under a blanket policy that lacked a basis in reasonable suspicion. The district court denied the motion to certify the class, but on appeal the Second Circuit reversed. *Augustin v. Jablonsky (In re Nassau County Strip Search Cases)*, 461 F.3d 219, 223 (2nd Cir. 2006). After addressing class certification issues, the Second Circuit ordered the class certified and instructed the district court to explore the management tools available to address damages issues. *Id.* at 231.

On remand, the district court explained:

> The Second Circuit has recognized, for example, that class-wide rather than individual assessments of monetary relief may sometimes be appropriate in class discrimination cases. *See Robinson v. Metro-North*, 267 F.3d 147, 161 n. 6 (2d Cir. 2001). . . . Moreover, "[p]roof of aggregate monetary relief for [a] class is feasible and reasonable under various circumstances." Newburg on Class Actions § 10:2. . . .
>
> "Courts have approved various methods of discovery and determining damages in

8

> class actions on the basis of classwide, rather than individualized proof of
> damages and the use of statistics and representative samples are one such
> method." *Id.* Finally, the Second Circuit has noted that those cases in which
> plaintiffs are "aggrieved by a single policy of the defendants" and there is a
> "strong commonality of the violation and the harm" are "precisely the type of
> situation[s] for which the class action device is suited." *In re Visa
> Check[/MasterMoney Antitrust Litig.*], 280 F.3d [124, ]146 [(2d Cir. 2001)].
>
> Here, class members were aggrieved by a single, admittedly unlawful policy and
> there is a strong commonality between the strip search violation and the harm.
> There is no reason that a jury in this case, hearing the procedures used by
> Defendants for strip searches together with the testimony of a number of class
> members as to the circumstance of actual searches, could not determine an
> amount of general damages awardable to each member of the class. Concededly,
> care would have to be taken to ensure that the amount awarded for general
> damages excludes all elements of special damages that individual class member
> might then pursue. But the task, albeit difficult, is doable.

*In re Nassau County Strip Search Cases*, 2008 U.S. Dist. LEXIS 29083, at *17-19.

Like the class in *In re Nassau County Strip Search Cases*, the instant action is appropriate for a jury to hear "the testimony of a number of class members as to the circumstance of [the actual disclosure of the personal medical information and to], determine an amount of general damages awardable to each member of the class." *Id.* Indeed, this case is even more amenable to this procedure in that not only did each violation result from the City of Columbus' enforcement of an unlawful blanket policy, with each violation being identical, here, unlike the class members in *In re Naussau County Strip Search Cases*, no class member is seeking special damages.

Thus, the Court **GRANTS** Plaintiffs' motion as to its request that the damages determinations for Class I be based upon the assessment of harm to representative members of that class. However, the Court **DENIES** Plaintiffs' motion as to its request for the appointment of a special master to determine the class-wide aggregate damages and will allow that

9

determination to be made by a jury.

With regard to the City's argument that there are those employees who had no objection to disclosing medical information as required by Directive § 3.07 III(H)(1)(c), the burden shifts to the City to establish that any individual instance is not encompassed within the class. *See, e.g, Blihovde v. St. Croix County*, 219 F.R.D. 607, 622 (W.D. Wis. 2003); *Mack v. Suffolk County*, 191 F.R.D. 16, 19 (D. Mass. 2000). Thus, in the determination of aggregate damages, the City will have the opportunity to present facts regarding those individuals who they claim should be excluded from the damages class.

**B. Defendant's Motion to Strike**

In its Motion to Strike, the City asks this Court to strike the affidavit that was attached as support to Plaintiffs' Motion to Appoint Special Master. This Court, however, did not rely in any way on the affidavit and, therefore **DENIES** the City's request as **MOOT**. (Doc. # 197.)

### III. Conclusion

For the reasons that set forth above, the Court **GRANTS in part and DENIES in part** Plaintiff's Motion to Appoint Special Master. (Doc. # 184.) Specifically, the Court **DENIES** Plaintiffs' request to appoint a special master and **GRANTS** Plaintiffs' request to have damages determined in the aggregate by representatives of Class I. The damages will be determined by a jury. Further, the Court **DENIES as MOOT** Defendants' Motion to Strike. (Doc. # 197.)

**IT IS SO ORDERED.**

                **/s/ Gregory L. Frost**
                **GREGORY L. FROST**
                **UNITED STATES DISTRICT JUDGE**