IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


LISA LEE, et al.,

      Plaintiffs,                                Case No. 2:07-cv-1230
                                               JUDGE GREGORY L. FROST
      v.                                          Magistrate Judge Norah McCann King

THE CITY OF COLUMBUS, OHIO, et al.,

      Defendants.


**OPINION AND ORDER**

      This matter is before the Court on Defendant's Motion *In Limine* to Exclude Evidence of the Court's July 15, 2009 Opinion Finding Directive 3.07(H)(1)(c) to be in Violation of the Rehabilitation Act ("the City's Motion *in Limine*") (Doc. # 261), Plaintiff Teresa Ruby's Motion *In Limine* Regarding the Admissibility of Evidence as to the City's Retaliation, Enforcement of the Directive, Drs. Clary and Fathman, and Officer John Sprague ("Ruby's Motion *in Limine*") (Doc. # 260), and the City's Response in Opposition to Ruby's Motion *In Limine* (Doc. # 273). For the reasons that follow, the Court **DENIES** the City's Motion *in Limine* and **DENIES** in part and **GRANTS** in part Ruby's Motion *in Limine*.

**A. The City's Motion *in Limine***

      In its motion, the City moves to exclude any evidence, testimonial or otherwise, that this Court has ruled Division Directive 3.07 § III(H)(1)(c) violates the Rehabilitation Act. The City argues that the Court's determination as to the legality of the Directive is not relevant, has no probative value, and is prejudicial to the City and is likely to confuse the jury. The City

1

contends that because "Ruby can establish that at the time she submitted her resignation she had a good faith belief she was opposing a practice unlawful under the Rehabilitation Act," it is not necessary to show that the practice she opposed was in fact illegal. The City's argument is not well taken.

While the City's statement of the law is accurate, *i.e.*, to establish a retaliation claim an employee may oppose a practice that is actually illegal or have a good faith belief that the practice is illegal, it does not follow that a plaintiff must be prevented from informing a jury as to whether the practice she opposed was indeed illegal. The facts in this action are that Ruby allegedly opposed Directive 3.07(H)(1)(c) because she believed it was an illegal practice and it was, indeed, an illegal practice. That information is certainly relevant. Further, the Court disagrees that it is unfairly prejudicial or that it will confuse the jury.

Accordingly, the Court **DENIES** the City's Motion *In Limine*.

## B. Ruby's Motion *in Limine*

In Ruby's motion, she requests rulings on three separate evidentiary issues.

### 1. Evidence of retaliation

In her motion, Ruby requests that this Court prohibit the introduction of evidence related to any of the elements of her retaliation claim except for the adverse action element. Ruby first sets forth the law with regard to her retaliation claim, contending that: "Proof of actionable retaliation under the Rehabilitation Act requires evidence of (1) an unlawful practice, (2) opposition by the plaintiff, and (3) adverse employment action(s) taken against the plaintiff because of his or her opposition." (Doc. # 260 at 1.) Ruby continues, asserting that "the law does not require a plaintiff to prove that there was any retaliatory intent beyond the taking of the

adverse employment action itself." *Id.* Ruby contends that the only issue remaining for trial is whether the third prong of the retaliation claim has been met, *i.e.*, whether or not the actions of the City rose to the level of constructive discharge.

Ruby states the fact that this Court entered judgment against the City as to the unlawfulness of the Division Directive at issue. She then argues that the "City's records show that Plaintiff Teresa Ruby opposed the Directive and that, as a result, the City subjected her to repeated instances of discipline because of that opposition." *Id.* Ruby concludes that "[t]he record thus establishes that there was an unlawful practice, that Ruby opposed that unlawful practice, and that the City disciplined Ruby because of her opposition." *Id.* Ruby requests that the Court prohibit the introduction of "any evidence offered by the City in an attempt to justify its actions" because that evidence is "is both irrelevant and inadmissible." *Id.* at 1-2.

In opposition, the City first argues that Ruby incorrectly states the elements of her retaliatory constructive discharge claim. Defendant contends that to establish such a claim Ruby "must show that [1] she engaged in protected activity under the Rehabilitation Act, [2] which activity was known to her employer; [3] an adverse action; and a [4] causal connection between the protected activity and the adverse action. *Gribcheck v. Runyon*, 245 F.3d 547 (6th Cir. 2001)." (Doc. # 273 at 1.) This Court agrees.

Next, the City argues that its intent is at issue with regard to the adverse action element because here the adverse action is an alleged constructive discharge. The City claims that it is entitled to put forth evidence "to demonstrate it had no intention to force Plaintiff to quit." *Id.* at 2. The City then asserts that it should be entitled to introduce evidence that it "was working with Plaintiff to resolve her request for FMLA and was engaged with Plaintiff pursuant to the

3

collective bargaining agreement process[,]" because it is relevant to show its intent. *Id.* Defendants are partially correct.

The Sixth Circuit is clear that evidence of an employer's intent is an element of the adverse action of constructive discharge:

> To constitute a constructive discharge, the employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit and the employee must actually quit. To determine if there is a constructive discharge, both the employer's intent and the employee's objective feelings must be examined. *E.g., Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir. 1982). Intent can be shown by demonstrating that quitting was a foreseeable consequence of the employer's actions.

*Moore v. Kuka Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999); *see also Logan v. Denny's, Inc.*, 259 F.3d 558, 568-69 (6th Cir. 2001).

However, with regard to the evidence the City intends to introduce to show intent, *i.e.*, "working with Plaintiff to resolve her request for FMLA and was engaged with Plaintiff pursuant to the collective bargaining agreement process," the Court is less convinced. That is, the fact that the City "worked with" Plaintiff for her benefit could be a reflection of its intent related to Plaintiff's continued employment. Yet, the actual processes involved in certification of FMLA leave (*e.g.*, a doctor's medical report on the certification of a serious medical condition) is not relevant or admissible to show the City's intent.

Finally, the City disagrees with Ruby's contention that "[t]he record thus establishes that there was an unlawful practice, that Ruby opposed that unlawful practice, and that the City disciplined Ruby because of her opposition." The City contends that the only ruling from this Court regarding the remaining three elements of her case is that "opposing the requirement to include the nature of the illness on a doctor's note provided to a supervisor . . . is protected

4

activity under the Rehabilitation Act." (Doc. # 279 at 8.) This Court agrees.

The remaining three elements of Ruby's claims for relief require her to show (1) that she engaged in protected activity under the Rehabilitation Act, *i.e.*, Ruby refused to submit doctor's notes that included the nature of her illness because she believed it was illegal or that she opposed the Directive in some other way; (2) that the activity was known to her employer; and (3) that there was a causal connection between the opposition and the constructive discharge.

Accordingly, the Court **DENIES** Ruby's Motion *in Limine* as it relates to evidence of retaliation. The City may introduce evidence to defend against Plaintiff's claim of retaliation in accordance with the parameters set forth above.

**2. Dr. Richard Clary and Dr. Robert Fathman**

Ruby argues that the testimony of Dr. Richard Clary, a psychiatrist, and Dr. Robert Fathman, a psychologist, is irrelevant. During 2005, Ruby was in a dispute with the City about the City's failure to approve her certification of a "serious health condition" under the FMLA. As part of this FMLA process, the City hired Drs. Clary and Fathman to examine Ruby and her medical records for the purpose of FMLA certification. Neither doctor was retained until late 2005. Ruby argues that the testimony and reports of these two doctors are irrelevant because, as their reports show, they were hired to address only the question of whether or not the Ruby suffered from a "serious health condition" that would qualify her for FMLA coverage. Ruby contends that, whether or not the Ruby suffered from a "serious health condition" is not at issue in this trial and, therefore, any testimony from Drs. Clary and Fathman is irrelevant. Moreover, Ruby asserts, Drs. Clary's and Fathman's reports were not generated until after the City issued its last charge against Ruby on November 4, 2005. Their reports, therefore, could not have been

5

relied upon by the City's agents in issuing charges or in the other actions taken against Ruby.

In opposition, the City argues that these two doctors are relevant witnesses. The City makes that same argument the Court addressed above related to showing the City's intent. Specifically here, that "the doctors' testimony and reports are relevant to demonstrate what information the City had in connection with its ongoing efforts to work with Plaintiff through December 2005 and to fulfill its obligations to follow the process for addressing Plaintiff's request for FMLA leave." (Doc. # 273 at 4) ("Plaintiff's efforts to be relieved of overtime requirements and the City's cooperation with her in connection with her FMLA request are indisputably relevant to the City's intent concerning Plaintiff's continued employment."). This Court disagrees with the City, for the reasons expressed above. The Court particularly notes that the reports of these two doctors specifically state that they were made to ascertain whether Ruby suffered from a serious health condition as that term is defined under the FMLA. The content of these reports are not relevant to the City's intent regarding Plaintiff's continued employment.

The City also argues that these doctors' "testimony can also serve to impeach and/or rebut Plaintiff's evidence. Impeachment testimony is always admissible. However, the Court will be vigilant to prevent testimony from the doctors that is not truly impeachment testimony.

Accordingly, the Court **GRANTS** Ruby's Motion *in Limine* as it relates to the reports and testimony of Dr. Richard Clary and Dr. Robert Fathman.

### 3. Officer John Sprague

In Ruby's motion and the City's memorandum in opposition, the parties present arguments as to the admissibility of the testimony of Officer John Sprague. Officer Sprague worked in the Research and Development Unit of the Division of Police and worked on draft

6

revisions of Directive 3.07. The City argues that Sprague's testimony is not relevant, is confusing and "a waste of time." (Doc. # 273 at 4.) The City contends that Sprague has no knowledge of the conditions of Ruby's employment, any alleged retaliation against Ruby, nor any knowledge of federal law and the legality of Directive 3.07.

Ruby argues that Sprague's testimony is relevant because it indicates that the City had knowledge that employees were complaining about the Directive's enforcement. Ruby asserts that this evidence is relevant to show that well before Plaintiff resigned, the individuals who were enforcing the Directive against Plaintiff were well-aware that its provisions might violate the law and, nonetheless, these individuals continued to charge Ruby with offenses. Ruby concludes that this evidence is central to the constructive discharge issue because she must establish, by direct or circumstantial evidence, that the individuals who were enforcing the policy intended to drive her out of the City's employ. Evidence that these persons were aware that the Directive might well violate federal law and that they still went forward with their actions against Ruby aids in establishing the element of "intent." This Court agrees.

Accordingly, the Court **GRANTS** Ruby's Motion *in Limine* as it relates to the testimony of Officer Sprague.

## C. Conclusion

Based on the foregoing, the Court **DENIES** the City's Motion *In Limine* (Doc. # 261) and **GRANTS** in part and **DENIES** in part Ruby's Motion *in Limine* (Doc. # 260). As with all *in limine* decisions, these rulings are subject to modification should the facts or circumstances at trial differ from that which has been presented in the pre-trial motion and memoranda.

7

**IT IS SO ORDERED.**

                                             <u>/s/ Gregory L. Frost</u>
                                             GREGORY L. FROST
                                             UNITED STATES DISTRICT JUDGE